Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
Email: jpafiti@pomlaw.com

Marc I. Gross
Jeremy A. Lieberman
Matthew L. Tuccillo
J. Alexander Hood II
Marc Gorrie
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*
[Additional Counsel Listed On Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE KALOBIOS PHARMACEUTICALS, INC. SECURITIES LITIGATION _____ THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:15-cv-05841-EJD <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** <br><br> Date:  **January 19, 2017** <br> Time:  9:00 a.m. <br> Courtroom:  4 – 5th Floor <br> Judge: Hon. Edward J. Davila |

## **TABLE OF CONTENTS**

I.   INTRODUCTION, PROCEDURAL HISTORY, AND OVERVIEW OF THE PARTIAL
     SETTLEMENT AND HOW IT WAS ACHIEVED ........................................................ 2

II.  PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS WARRANTED ........ 7

     A.   Preliminary Approval Standards ........................................................... 7

     B.   The Partial Settlement Resulted from Arm's Length Negotiations ........................... 8

     C.   The Partial Settlement Has No Obvious Deficiencies and Falls Within the Range
          for Approval ........................................................................... 10

     D.   The Risk, Expense and Complexity of the Action ....................................... 12

     E.   The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of
          the Partial Settlement ................................................................ 13

III. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........................... 14

     A.   The Proposed Partial Settlement Class Meets The Prerequisites For Class
          Certification Under Rule 23 ........................................................... 14

          1.   Numerosity ...................................................................... 16

          2.   Commonality ..................................................................... 17

          3.   Typicality ...................................................................... 18

          4.   Adequacy ........................................................................ 19

          5.   Common Questions of Law Predominate and a Class Action Is the
               Superior Method of Adjudication ................................................ 20

     B.   The Proposed Plan and Method for Notice Meets All Requirements ....................... 22

     C.   Proposed Schedule for Final Approval .................................................. 24

IV.  CONCLUSION .............................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

3   <u>Cases</u>                                                                                                    <u>Pages</u>

4   *Alfus v. Pyramid Tech. Corp.*,
        764 F. Supp. 598 (N.D. Cal. 1991) ........................................................................................ 18
5

6   *Amchem Prods., Inc. v. Windsor*,
        521 U.S. 591 (1997) ............................................................................................... 15, 18, 21

7
    *Athale v. Sinotech Energy Ltd.*, No. 11-CV-05831,
8       2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) ....................................................................... 13

9   *Blackie v. Barrack*,
        524 F.2d 891 (9th Cir. 1975) ....................................................................................... 15, 17
10

11  *Boyd v. Bechtel Corp.*,
        485 F. Supp. 610 (N.D. Cal. 1979) ......................................................................................... 9
12

13  *Churchill Vill., L.L.C. v. Gen. Elec.*,
        361 F.3d 566 (9th Cir. 2004) ................................................................................................ 12

14
    *Class Plaintiffs v. City of Seattle*,
15      955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 7

16  *Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
        258 F.R.D. 545 (N.D. Ga. 2007) .......................................................................................... 21
17

18  *Danis v. USN Commc'ns, Inc.*,
        189 F.R.D. 391 (N.D. Ill. 1999) ........................................................................................... 18
19

20  *Erica P. John Fund, Inc. v. Halliburton Co.*,
        563 U.S. 804, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011) ....................................................... 20

21  *Gittin v. KCI USA, Inc.*, No. 09-CV-05843 RS,
        2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ....................................................................... 22
22

23  *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ................................................................................... 7, 14, 19
24

25  *Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................................................. 18

26
    *Harris v. Palm Springs Alpine Estates, Inc.*,
27      329 F.2d 909 (9th Cir. 1964) ................................................................................................ 16

28

- ii -

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ...................................................................... 14, 19

*In re Adobe Sys., Inc. Sec. Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................... 14

*In re Apollo Group, Inc. Sec. Litig.*, No CV 04-2147-PHX,
  2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ............................................................. 12

*In re Apple Computer Sec. Litig.*, No. 84-20148-JW,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .......................................................... 12

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) .......................................................... 14, 19, 21, 22

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) .............................................................. 17, 19, 21

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901,
  1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................................... 9

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................................... 11

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) .............................................................................. 20

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) .......................................................................... 20

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ....................................................................... 20, 21

*In re Marsh & McLennan Sec. Litig.*, No. 04 Civ. 8144 (CM),
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................... 24

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................. 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. Jan. 11 2008) .................................................... 8, 11

*In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW,
  2007 WL 1991529 (N.D. Cal. June 30, 2007) ......................................................... 24

*In re Seagate Tech. II Sec. Litig.*,
  843 F. Supp. 1341 (N.D. Cal. 1994) ...................................................................... 14

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................. 9

*In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW,
  2010 WL 1945737 (N.D. Cal. May 12, 2010) ................................... 14, 16, 17, 18, 21

*In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270-JW,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) .................................................. 17, 18

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................ 8

*Knight v. Red Door Salons, Inc.*, No. 08-1520,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................................ 11, 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ................................................................................. 19

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................. 7

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................. 17

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) ........................................................................... 20

*O'Keefe v. Mercedes-Benz USA, LLC*,
  214 F.R.D. 266 (E.D. Pa. 2003) ........................................................................... 21

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................. 11

*Perez-Funez v. Dist. Dir., I.N.S.*,
  611 F. Supp. 990 (C.D. Cal. 1984) ........................................................................ 16

*Ramirez v. DeCoster*,
  203 F.R.D. 30 (D. Me. 2001) ................................................................................. 21

*Rosenburg v. Int'l Bus. Mach. Corp.*, No. CV 06-00430-PJH,
  2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ...................................................... 7, 23

*Satchell v. Fed. Express Corp.*, No. C-03-2878-SI,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................................ 7

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ................................................................................... 21

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ............................................................................. 16

*Vathana v. EverBank*, No. C-09-02338 RS,
   2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ............................................................ 20

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D. Cal. 1994) ............................................................................. 16

*West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS-GGH,
   2006 WL 1652598 (E.D. Cal. June 13, 2006) .......................................... 7, 10, 18, 24

*Yamner v. Boich*, No. C-92-20597 RPA,
   1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ........................................................... 16

*Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05 cv 2057-L(JMA),
   2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) ........................................................... 20

## Statutes

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 23

Bankruptcy Code § 1145 ................................................................................................ 2

## Rules

Fed. R. Civ. P. 23 ............................................................................................... *passim*

## Other Authorities

MANUAL FOR COMPLEX LITIGATION, Second § 30.44 (1985) ........................................... 7

4 NEWBERG ON CLASS ACTIONS § 13:18 (5th ed. 2012) ................................................. 15

NEWBERG ON CLASS ACTIONS, § 11.25 (1992) ................................................................ 7

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 19, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard, Lead Plaintiffs Kaniz Fatema, Zeke Ingram, Bhaskar R. Gudlavenkatasiva, and Abuhena M. Saifulislam (the "Lead Plaintiffs") and Plaintiff Austin Isensee (collectively the "Plaintiffs") will, and hereby do, move the Honorable Edward J. Davila, located in Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, CA 95113, for an order: (1) granting preliminary approval of the proposed partial settlement (the "Partial Settlement" or "Settlement"), which provides an aggregate recovery of one million five hundred thousand dollars ($1,500,000.00) in addition to three hundred thousand (300,000) shares of common stock of KaloBios Pharmaceuticals, Inc. ("KaloBios" or the "Company") as documented within the July 1, 2016 Stipulation and Agreement of Partial Settlement and exhibits thereto (collectively the "Stipulation"); [1] (2) preliminarily certifying the Settlement Class, appointing Plaintiffs as representatives of the Settlement Class (the "Class Representatives"), and appointing Lead Counsel as counsel for the Settlement Class ("Class Counsel"); (3) approving the form and manner of giving notice of the proposed Partial Settlement to the Settlement Class; and (4) setting a hearing date for final approval thereof (the "Settlement Hearing") and a schedule for various deadlines relevant thereto.

As demonstrated herein, Plaintiffs respectfully submit that the proposed Partial Settlement is an excellent result for the Settlement Class[2] under the circumstances, is fair, reasonable and

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation. A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Matthew L. Tuccillo in Support of Preliminary Approval of Partial Settlement (the "Tuccillo Decl.").

[2] The Settlement Class means all Persons, save for those expressly exempted as set forth in the

adequate under the governing standards within the Ninth Circuit, and warrants the approval of this Court.  In support of this Motion, Plaintiffs submit herewith the below Memorandum, the Tuccillo Declaration and exhibits thereto, including the proposed Order Granting Preliminary Approval of Partial Settlement (the "Preliminary Approval Order").

**MEMORANDUM**

**I.      INTRODUCTION, PROCEDURAL HISTORY, AND OVERVIEW OF THE PARTIAL SETTLEMENT AND HOW IT WAS ACHIEVED**

Plaintiffs respectfully submit this memorandum in support of their Motion for Preliminary Approval of Partial Settlement (the "Motion"). The proposed Partial Settlement, as embodied within the Stipulation, provides an aggregate recovery of one million five hundred thousand dollars ($1,500,000.00) in cash and three hundred thousand (300,000) shares of KaloBios stock as reorganized pursuant to the confirmed and effective Chapter 11 Plan of Reorganization, issued pursuant to the Plan of Reorganization and § 1145 of the Bankruptcy Code, and subject to exemption from registration under Section 3(a)(10) of the Securities Act of 1933, to resolve the claims in this action (the "Action") as to Defendants Kalobios, Ronald Martell ("Martell"), and Herb Cross ("Cross") (collectively the "Settling Defendants").[3]

The Partial Settlement, as detailed herein, is the product of extensive and intensive work by Plaintiffs' counsel, on compressed timeframes dictated by the fast pace and complexity of KaloBios's bankruptcy proceeding.

Such work began with investigation of the relevant claims asserted in the Action and the filing of multiple complaints, filed individually by Plaintiff Kang Li on December 18, 2015,

---

Stipulation, who purchased or otherwise acquired the Shares of KaloBios between November 18, 2015, and December 16, 2015, dates inclusive.

[3]  The litigation shall continue, unaffected by the Partial Settlement, against Defendant Martin Shkreli, who has not settled.

- 2 -

Plaintiff Matthew Sciabacucchi on December 23, 2015, and Plaintiff Isensee on December 31, 2015.

On December 30, 2015, KaloBios filed for Chapter 11 bankruptcy, its case proceeding as Case No. 15-12628 (LSS) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). KaloBios's emergence from Chapter 11 was contingent on the resolution of a host of complex issues, including satisfaction of contractual conditions precedent to its exit from bankruptcy protection by June 30, 2016 with a certain level of financing in place. At the same time, a separate group of plaintiffs pursuing claims related to an $8.2 million private placement financing that had closed on December 16, 2015, the day before Defendant Shkreli's arrest (the "PIPES plaintiffs"), were also seeking to negotiate a potential cash/stock settlement with KaloBios, effectively competing with Plaintiffs for the same limited resources of a bankrupt company, based on arguably a stronger legal claim with arguably better odds of surviving bankruptcy subordination. These and other realities in KaloBios's complex bankruptcy reorganization dictated tight deadlines and intensive work by Plaintiffs' counsel.

Thus, Lead Plaintiffs (even before their formal appointment) and Plaintiff Isensee moved quickly to protect the rights of the putative class. Lead Counsel filed a $20 million class proof of claim in the Bankruptcy Case on March 29, 2016, shortly before the bar date for filing such claims. Notably, by contrast, certain of the PIPES plaintiffs failed to file a bankruptcy proof of claim before the bar date, impairing their claim. Plaintiff Isensee, represented by Lead Counsel, also filed a detailed Amended Complaint, drawing upon statements by confidential witnesses, shifting the Class Period back by a day, and thereby adding Defendants Ronald Martell and Herb Cross. This Amended Complaint asserted claims under Sections 10(b) and 20(a) of the

Exchange Act and Rule 10b-5, arising from alleged misstatements and omissions between November 18, 2015 and December 16, 2015.  The Settling Defendants deny the allegations in this Amended Complaint.

On April 28, 2016, the Court formally appointed Lead Plaintiffs and their choice of counsel, Pomerantz LLP ("Pomerantz"), as Lead Counsel.

In the interest of securing a sound, well-considered recovery for the Settlement Class, Lead Counsel thereafter pursued a simultaneous, dual-track path of engaging in settlement discussions with the Settling Defendants while continuing to resolutely pursue its litigation and investigative efforts against Defendant Shkreli.  These efforts included, *inter alia*, the following:

• Lead Counsel engaged in resolution-oriented discussions and negotiations with litigation and/or bankruptcy counsel for Defendant KaloBios telephonically on March 24, 2016, on March 28, 2016, on April 6, 2016, and on April 14, 2016, and April 28, 2016.

• Lead Counsel engaged in face-to-face resolution-oriented meetings and negotiations with litigation and bankruptcy counsel for KaloBios on April 15, 2016 and April 19, 2016.

• On May 3, 2016, Lead Counsel continued resolution-oriented discussions and negotiations during full-day meetings with litigation and bankruptcy counsel for KaloBios, litigation counsel for Defendants Martell and Cross, and representatives from their insurance carriers including American International Group ("AIG").

• Lead Counsel continued telephonic resolution-oriented discussions and negotiations, with counsel for KaloBios serving as the primary point-of-contact, on May 3, 2016, on May 4, 2016, on May 16, 2016, and on May 18, 2016.

• A verbal agreement to partially settle the Action as against Settling Defendants KaloBios, Martell, and Cross was reached on May 18, 2016.

Thereafter, Lead Counsel, counsel for Defendant KaloBios, counsel for Defendants Martell and Cross, and representatives from AIG engaged in frequent telephonic discussions as they negotiated the terms of a Memorandum of Understanding, which they finalized and executed on June 2, 2016, and which was thereafter submitted to the Bankruptcy Court by counsel for KaloBios. The same day, Lead Counsel delivered alternative versions of the Class 6 bankruptcy ballot correlating to the $20 million proof of claim, one each indicating approval or rejection of KaloBios's bankruptcy exit plan, to bankruptcy counsel for KaloBios to hold in escrow pending the Bankruptcy Court's decision as to whether to approve or reject the Partial Settlement of the Action as set forth herein. If it had been rejected, then the ballot voting against the exit plan would have been submitted to the Bankruptcy Court.

On June 15, 2016, the Bankruptcy Court entered an order approving the Partial Settlement. *See In re KaloBios Pharmaceuticals, Inc.*, Case No. 15-12628-LSS (Bankr. D. Del.), Dkt. No. 570 (order approving the Partial Settlement), attached as Tuccillo Decl. Exhibit 2. At that point, bankruptcy counsel for KaloBios, pursuant to the terms of the escrow, released the version of Plaintiffs' Class 6 ballot voting in favor or its bankruptcy exit plan.

Lead Counsel, counsel for the Settling Defendants, and counsel for AIG thereafter negotiated the terms of the Stipulation, which was submitted to the Bankruptcy Court in draft form late in the drafting process. The Bankruptcy Court approved KaloBios's plan of reorganization and Chapter 11 exit plan, including this Partial Settlement. *See In re KaloBios Pharmaceuticals, Inc.*, Case No. 15-12628-LSS (Bankr. D. Del.), Dkt. No 581 (order approving

bankruptcy exit plan including the Partial Settlement), attached as Tuccillo Decl. Exhibit 3. KaloBios exited bankruptcy on June 30, 2016.

The Stipulation was finalized on July 1, 2016, and executed by Plaintiffs and the Settling Defendants that day.  Thereafter, pursuant to its terms, the Settlement Fund consideration was paid by Defendant KaloBios and by AIG into an Escrow Account established by Lead Counsel.

As a result of these efforts, Lead Counsel secured a Settlement fund of one million five hundred thousand dollars ($1,500,000.00) and three hundred thousand (300,000) shares of stock in the reorganized, post-exit KaloBios.  Significantly, this total includes two hundred fifty thousand dollars ($250,000.00) obtained from the bankrupt company – the same amount obtained by the PIPES plaintiffs, who also obtained a similar amount of company stock, despite having an arguably stronger claim.   In addition, Lead Counsel obtained important non-pecuniary concessions in the form of an agreement by Settling Defendants KaloBios, Martell, and Cross to preserve and produce relevant documents and to appear for deposition as if they were still parties to this litigation.  *See* Stipulation ¶65.  Plaintiffs secured the same agreement from non-party David Moradi, a member of Defendant Shkreli's investor group that gained control over KaloBios in November 2015 who later served as a KaloBios Director integral in steering it through bankruptcy.  *Id.*

At the same time, the litigation against Defendant Shkreli has continued.  Lead Plaintiffs, along with Plaintiff Isensee, filed their First Consolidated Amended Complaint on July 14, 2016 (Dkt. No. 55), which, among other things, draws upon more confidential witnesses, alleges more false and misleading statements by Shkreli, and includes substantially more details regarding his fraudulent and illegal misconduct at prior companies that rendered his Class Period statements

misleading and that gave rise to both the Securities and Exchange Commission complaint against him and the federal indictment that led to his arrest on December 17, 2015.

Defendant Shkreli's anticipated motion to dismiss is due by August 16, 2016.

## II.     PRELIMINARY APPROVAL OF THE PARTIAL SETTLEMENT IS WARRANTED

### A.     Preliminary Approval Standards

Fed. R. Civ. P. 23(e) requires Court approval for a class action settlement. The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)); *West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS-GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006).  Approval of a proposed class action settlement is within the broad scope of authority of the district court consistent with this long-standing policy favoring settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).   The class action settlement approval process involves two steps: first, preliminary approval, followed by notice to the class; and second, final approval.   The court in *West* explained the procedure as follows:

> If the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing…MANUAL FOR COMPLEX LITIGATION, Second § 30.44 (1985). In addition, '[t]he court may find the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid.'

*West*, 2006 WL 1652598, at *2 (quoting *NEWBERG ON CLASS ACTIONS*, § 11.25(1992)); *see also Rosenburg v. Int'l Bus. Mach. Corp.*, No. CV 06-00430-PJH, 2007 WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (preliminary approval granted where "[s]ettlement has no obvious defects and

is within the ranges of possible Settlement approval such that notice to the Class is appropriate");

*Satchell v. Fed. Express Corp.*, No. C-03-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (preliminarily approving non-collusive settlement that had no obvious defects and was within the range of fairness).

**B.     The Partial Settlement Resulted from Arm's Length Negotiations**

There is an initial presumption of fairness for a proposed settlement that results from arm's-length negotiations. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. Jan. 11 2008); *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). Here, the proposed Partial Settlement is the product of arm's length negotiations over a several-month period between Plaintiffs, through Lead Counsel, and the Settling Defendants, through their respective counsel and their insurer AIG.  As noted above, in an effort to reach a just and timely resolution for the putative class, and driven by the tight time pressures and economic realities of KaloBios's bankruptcy, Lead Counsel negotiated with counsel for one or more of the Settling Defendants on at least a dozen separate days during March-May 2016, either telephonically or in person, and after two prior face-to-face meetings, spent the entire day negotiating with all bankruptcy and litigation counsel for KaloBios, counsel for Defendants Martell and Cross, and representatives of insurance carriers including AIG on May 3, 2016.  As a result of these months of effort and discussion, Lead Counsel was able to negotiate a fair settlement, taking into account the costs and risks of continued litigation, including the substantial risk that the claims of Plaintiffs and the class against KaloBios would be subordinated and extinguished in its bankruptcy proceeding.

The settlement negotiations undertaken in connection with the Partial Settlement produced a result that the Settling Parties believe to be within their respective best interests.  Lead Counsel and the Settling Defendants' counsel believe that they have come to an agreement that will

- 8 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

protect the future of KaloBios after it emerges from Chapter 11 bankruptcy protection, thereby ensuring that the 300,000 shares received as consideration in the Partial Settlement will have value, and provides significant and appropriate compensation for the putative class, as well as an interest in the reorganized Company.   Counsel for the parties are highly experienced in this category of complex litigation, and the opinion of well-informed and experienced counsel in support of a class action settlement should be given significant weight. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (counsel's opinion favoring settlement is a compelling factor); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Plaintiffs and Lead Counsel believe their claims meritorious, but not without risk, concluding it was in the Settlement Class's best interests to settle with the Settling Defendants in light of these factors, among others: (1) the immediate benefits of the significant cash and stock consideration of the Partial Settlement; (2) the risks and uncertainties in complex litigation, particularly given the status of the bankruptcy proceedings as to KaloBios at the time the Partial Settlement was struck; (3) the cost and time necessary to prosecute the Action through trial and appeal, potentially before this Court, the Bankruptcy Court, and appellate court(s); (4) the challenges asserted by and available to the Settling Defendants that could reduce the claimed damages, including KaloBios's arguments as to the subordination and extinguishment of claims via its bankruptcy; (5) the continued litigation against Defendant Shkreli and the agreement of the Settling Defendants and David Moradi to participate in later discovery as if they remained as parties; (6) the avoidance of the uncertainties, burden, risk, and expense of further litigation as to the Settling Defendants; and (7) the outstanding value obtained for the Settlement Class.

C.    **The Partial Settlement Has No Obvious Deficiencies and Falls Within the Range for Approval**

"[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West*, 2006 WL 1652598, at *11 (citation omitted); J. Moore, et al., MOORE'S FED. PRAC., ¶23.8102-1, at 23-479 (2d ed. 1993). Under this Partial Settlement, the Settling Defendants will pay one million five hundred thousand dollars ($1,500,000.00) and provide the Settlement Class with three hundred thousand (300,000) shares of stock in the post-bankruptcy, reorganized KaloBios.   On May 18, 2016, the day Plaintiffs verbally agreed to the Partial Settlement, KaloBios's shares, which were trading Over-The-Counter, closed at $3.26, valuing the 300,000 shares, at that time, at nine hundred seventy-eight thousand dollars ($978,000.00).   In turn, the entire Partial Settlement would have been valued at two million four hundred seventy-eight thousand dollars ($2,478,000.00) that day.

It is difficult to compare the Partial Settlement to the theoretical amount that the Settlement Class could have potentially obtained from the Settling Defendants had it been totally successful in defeating the anticipated motions to dismiss and motions for summary judgment and in ultimately establishing liability at trial.   During the settlement negotiations, the Settling Defendants vehemently denied that they had made any material misstatement or omission of fact, that they did so with the intent to defraud or with extreme recklessness, that the price of KaloBios shares was artificially inflated due to any alleged material misrepresentation or omission, and that Settlement Class suffered any damages attributable to a materially false or misleading statement made by the Settling Defendants.   No doubt, the Settling Defendants would have raised such challenges at every opportunity, including in a motion to dismiss, in a motion for summary judgement, and at trial, making successful prosecution and recovery uncertain.

The immediate and certain recovery of $1,500,000.00 and 300,000 shares of KaloBios stock represents a significant benefit for the Settlement Class that both provides a short-term cash award along with a long-term benefit in the form of an interest in the rejuvenated and restructured post-bankruptcy KaloBios.   The post-exist Company has 14,903,022 shares outstanding (including 9,497,515 shares given to those entities that provided its debtor-in-possession and exit financing), such that the 300,000 shares obtained in the Partial Settlement represents 2.01% of KaloBios's outstanding stock.

In addition, as compared against the $20 million Proof of Claim submitted by the Plaintiffs in KaloBios's bankruptcy proceeding, the Partial Settlement (with the stock valued at the $3.26 per share price from May 18, 2016) represents a return of approximately 12.39% of estimated *total* damages at issue.  If the stock is instead assigned its current value, which is $3.80 per share based on its August 3, 2016 closing price, then the 300,000 shares are altogether worth one million one hundred forty thousand dollars ($1,140,000.00), which mean the full Partial Settlement, including both the stock and the $1,500,000.00 cash component, represents a return of approximately 13.2% of estimated *total* damages.  Either figure is an excellent result for the Settlement Class on its own two feet.  *See In re Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, No. 02–ML–1475 DT, 2005 WL 1594403, at *8-*9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair'); *Knight v. Red Door Salons, Inc.*, No. 08-1520, 2009 WL 248367, at *3

(N.D. Cal. Feb. 2, 2009) ("The immediacy and certainty of the settlement award justifies a recovery smaller than the Class Members could seek in the case").

Indeed, the Partial Settlement not only provides a sizeable and immediate recovery to the Settlement Class, it does so while preserving claims against Defendant Shkreli, from which Plaintiffs and the Settlement Class may receive additional recovery through continued litigation.

### D.    The Risk, Expense and Complexity of the Action

The fairness of the Partial Settlement is further underscored when the obstacles the Settlement Class faced in succeeding on the merits, as well as the expense and likely duration of the litigation, are considered.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).  As discussed above, the Settling Defendants have vigorously argued that Plaintiffs would not be able to establish falsity, materiality, scienter, loss causation, or damages.  Although Plaintiffs believe that the Settling Defendants' arguments lack merit, a substantial risk exists that the Settling Defendants would prevail on one or more of their arguments on their motion to dismiss the pleadings, at summary judgment, or ultimately at trial.[4] The Partial Settlement will confer an immediate benefit to the Settlement Class and eliminate the risk of continued litigation as to the Settling Defendants under circumstances where a favorable outcome against such defendants is far from certain. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000), *as amended* (June 19, 2000) (affirming approval of settlement because "[c]omplex litigation is inherently uncertain and Plaintiffs would have had much difficulty proving scienter"); *see also Red Door*, 2009 WL 248367, at *3 (settlement agreement offered an immediate and

---

[4] Even if Plaintiffs were to prevail at trial, risks to the Settlement Class would remain. For example, the Settling Defendants certainly would initiate a lengthy and costly appeal process to challenge the verdict. Moreover, any verdict returned by a jury would be subject to the presiding judge's evaluation and, as such, could be overturned. *See, e.g., In re Apple Computer Sec. Litig.*, No. 84-20148-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (judgment notwithstanding the verdict for the individual defendant and a new trial ordered against the corporate defendant); *In re Apollo Group, Inc. Sec. Litig.*, No CV 04-2147-PHX, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (overturning trial verdict because there was insufficient evidence at trial to prove loss causation).

certain award for the class that was a superior alternative to continued litigation in light of the uncertain risks associated with plaintiffs' claims).

KaloBios's bankruptcy posed additional risks, including that Plaintiffs' and the Class's claim against the Company would be subordinated and extinguished through the bankruptcy process itself.  For instance, the failure by certain PIPES litigation plaintiffs to file a Proof of Claim served to severely impair a seven-figure amount of their claim, and even after extensive litigation in the bankruptcy context, the PIPES plaintiffs obtained the **same** amount of cash ($250,000.00) and a comparable amount of shares (327,608 shares), despite having an arguably stronger claim.  Moreover, the fact that Plaintiffs here, as unsecured creditors of KaloBios, secured both stock **and** cash from a bankrupt company is an outstanding result.

### E.   The Proceedings Are Sufficiently Advanced to Permit Preliminary Approval of the Partial Settlement

Plaintiffs, through Lead Counsel, have vigorously protected the rights of the Settlement Class, both through this Action and in the Bankruptcy Case. Settlement negotiations took place over several months, and included an all-day face-to-face negotiating session involving bankruptcy and litigation counsel for KaloBios, counsel for Defendants Martell and  Cross, and representatives of insurance carriers including AIG.  In addition, Plaintiffs have filed multiple complaints, including the extensive, detailed Amended Complaint by Plaintiff Isensee filed on April 18, 2016, and Consolidated Amended Complaint filed by Lead Plaintiffs (together with Isensee) on July 14, 2016, which detailed facts discovered during an extensive investigation pursued by Lead Counsel.  As a result, Lead Counsel is thoroughly familiar with the facts of the case and has had ample opportunity to assess the strengths and weaknesses of the claims in which to appraise the sufficiency of the settlement.  *See, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11-CV-05831, 2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) (approving partial settlement of

securities class action at parallel stage of proceedings).  After all that work, Plaintiffs and Lead Counsel firmly believe that the Partial Settlement is in the best interests of Plaintiffs and the Settlement Class.  Moreover, Lead Counsel, working with bankruptcy counsel for KaloBios, already obtained the necessary approvals of the Bankruptcy Court, before approaching this Court with the instant Motion.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

### A.   The Proposed Partial Settlement Class Meets The Prerequisites For Class Certification Under Rule 23

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth the following four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  In addition, the class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *3 (N.D. Cal. May 12, 2010) (citing *Hanlon*, 150 F.3d at 1019).

Courts routinely endorse the use of the class action device to resolve claims brought pursuant to the federal securities laws. *See, e.g.*, *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. Accordingly, the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) (citations omitted); *see also In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1350 (N.D. Cal. 1994) (same); *In re Cooper*, 254 F.R.D. at 642 ("The availability of the class action to redress such frauds has been consistently upheld in large part because of the

substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.") (quoting *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)). This Action is no exception, and Plaintiffs submit that the proposed Partial Settlement Class satisfies each of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

Moreover, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Indeed, "[t]he type of certification approval that courts provide with a preliminary settlement approval is accorded under a 'more relaxed' standard" than in the typical certification process. 4 *NEWBERG ON CLASS ACTIONS* § 13:18 (5th ed. 2012).

The Settlement Class is defined as "all persons or entities who purchased or otherwise acquired the common stock of KaloBios between November 18, 2015 and December 16, 2015, both dates inclusive," subject to extensive exclusions, which the Settling Defendants will help identify under the terms of the Stipulation, designed to ensure that the Settlement Fund is delivered only to those investors who were unaffiliated with Defendants.[5] *See* Stipulation at ¶1(w), Tuccillo Decl. Exhibit 1. In particular, the Settlement Class excludes Defendant Shkreli and the other members of his investor group that had acquired 70% of KaloBios entering the Class Period. The proposed Settlement Class meets the prerequisites for class certification,

---

[5] Specifically, as set forth in the Stipulation, the Settlement Class definition excludes the following: Settling Defendants and their immediate family members; the Released Parties; KaloBios's officers, directors, subsidiaries, and affiliates; KaloBios's employees, including without limitation Judy Alaura, Priyanka Ankola, Deborah Brown, Mark Camarena, Blair Evans, Jennifer Fernando, Morgan Lam, Wendy Lin, Tom Selph, Ted Shih, and Mirella Villa del Toro; Defendant Shkreli, and his immediate family members; Shkreli's affiliates and the other members of his investor group who acquired roughly 70% of KaloBios stock as announced by KaloBios: David Moradi ("Moradi"), Anthion Partners II LLC ("Anthion"), Marek Biestek ("Biestek"); and those individuals who acquired KaloBios stock and/or were appointed as KaloBios officers and directors in conjunction with Shkreli's takeover of the company, including Moradi, Biestek, Tony Chase, Tom Fernandez, and Michael Harrison. *See* Stipulation ¶1.

particularly under the "more relaxed" standard that is applied when considering preliminary approval of a settlement.

### 1.    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Indeed, classes consisting of as few as 25 members have been held to be large enough to justify certification. *See, e.g.*, *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984); *see also Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set cut-off number for numerosity). Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Id.*; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.") (citations omitted).

Here, KaloBios shares traded on the NASDAQ with more than 4 million shares of common stock outstanding during the Class Period. *See Isensee v. KaloBios Pharmaceuticals, Inc., et al.*, Case No. 15-cv-06331-EJD (N.D. Cal.), Dkt. No. 20 (amended complaint) at ¶75; *see also* Tuccillo Decl. at Exhibit 4. Even with the exclusion of Defendant Shkreli's investor group, over 1 million shares are likely included within the Settlement Class. Accordingly, the proposed Settlement Class consists of at least hundreds, and perhaps thousands, of investors who purchased KaloBios shares during the Class Period. A class of this size is sufficiently numerous to make individual joinder impracticable. *See In re UTStarcom*, 2010 WL 1945737, at *4; *Yamner v.*

- 16 -

*Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *3 (N.D. Cal. Sept. 15, 1994). Thus, the numerosity element is satisfied.

### 2.    Commonality

Fed. R. Civ. P. 23(a)(2) is satisfied where the proposed class representatives share at least one question of fact or law with the claims of the prospective class. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Further, commonality exists even if there are varying fact situations among individual members of the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. *Blackie*, 524 F.2d at 902.

Here, common questions of fact an law include: (i) whether the federal securities laws were violated by the Settling Defendants' alleged acts; (ii) whether statements made by the Settling Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, operations, management, and prospects of KaloBios and/or the facts and circumstances surrounding Defendant Shkreli's experiences at other companies; (iii) whether Settling Defendants Martell and Cross caused KaloBios to issue false and misleading statements during the Class Period; (iv) whether the Settling Defendants acted knowingly or recklessly in issuing false and misleading public statements; (v) whether the prices of KaloBios securities during the Class Period were artificially inflated because of the Settling Defendants' conduct; and (vi) the extent of damages suffered by the Settlement Class and the appropriate measure for those damages.

Securities actions containing common questions such as the ones listed above repeatedly have been held to be prime candidates for class certification.[6]   Additionally, because the core

---

[6] *See In re UTStarcom*, 2010 WL 1945737, at *4 (finding common questions of law and fact as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material facts," whether the "publicly traded securities were artificially inflated," and whether "Defendants' . . . omissions caused class members to suffer economic losses"). Here, there are

complaint of all Settlement Class Members is that they purchased KaloBios shares at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3. Typicality

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem*, 521 U.S. at 625 (common issues test readily met in securities cases). Differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification. *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991). In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999); *see also West*, 2006 WL 1652598, at *5.

Plaintiffs' claims arise from the same events or course of conduct giving rise to other Settlement Class Members' claims and are based on the same legal theories. *See In re UTStarcom*, 2010 WL 1945737, at *5 (explaining that the test for typicality is "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Indeed, Rule 23(a)(3) typicality exists because the claims of all Settlement Class Members derive from the same legal theories and allege the same set of operative facts. Plaintiffs, like the other Settlement Class Members, purchased KaloBios shares in the same manner and pursuant to the

common questions of law and fact because Defendants' alleged misconduct affected all Settlement Class Members in the same manner; *i.e.*, Defendants' false and misleading statements and omissions artificially inflated the price of KaloBios Shares. *See, e.g.*, *In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270-JW, 2005 WL 7877645, at *10 (N.D. Cal. Jan. 13, 2005) (N.D. Cal. Jan. 13, 2005); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002).

same alleged fraud (*i.e.*, the same false and misleading statements and omissions by the Settling Defendants are alleged to have  artificially inflated the price of KaloBios shares).  *See In re VeriSign*, 2005 WL 7877645, at \*10  ("Here, the issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant."); *see also In re Emulex*, 210 F.R.D. at 721. Additionally, Plaintiffs are not subject to any unique defenses that could make them atypical of Settlement Class Members. Therefore, their claims are typical of the claims of the Settlement Class. *See Hodges*, 274 F.R.D. at 266-67; *In re Cooper*, 254 F.R.D. at 635-36.

### 4.    Adequacy

The representative parties must satisfy Fed. R. Civ. P. 23(a)'s adequacy requirements by showing that they will fairly and adequately protect the interests of the Settlement Class. To satisfy this requirement, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

As described above, Plaintiffs have claims that are typical of and coextensive with those of the Settlement Class.  Plaintiffs, like all Settlement Class Members, purchased KaloBios shares at artificially inflated prices as a result of Defendants' alleged materially false and misleading statements and/or omissions.  Further, Plaintiffs have retained counsel highly experienced in securities class action litigation and who have successfully prosecuted many securities and other complex class actions throughout the United States. As described above, Plaintiffs and Lead Counsel have deftly navigated KaloBios's complex, fast-paced bankruptcy to obtain the Partial Settlement, while the opportunity remained to do so.  Thus, Plaintiffs are adequate representatives

1    of the Settlement Class, and Lead Counsel (as has already been demonstrated) is qualified,

2    experienced and capable of prosecuting this Action in accordance with Fed. R. Civ. P. 23(a)(4).

3          **5.      Common Questions of Law Predominate and a Class Action Is the
                      Superior Method of Adjudication**

4

5          In addition to meeting the prerequisites of Rule 23(a), the Partial Settlement also satisfies

6    Fed. R. Civ. P. 23(b)(3), which requires that the proposed class representatives establish that

7    common questions of law or fact predominate over individual questions, and that a class action is

8    superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton*

9    *Co.*, 563 U.S. 804, 131 S. Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011); *In re LDK Solar Sec. Litig.*,

10   255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. C-09-02338 RS, 2010 WL

11   934219, at *2 (N.D. Cal. Mar. 15, 2010) (noting that "subsection [23(b)(3)] encompasses 'those

12   cases in which a class action would achieve economies of time, effort, and expense, and promote

13   uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

14   bringing about other undesirable results'") (quoting Fed. R. Civ. P. 23. advisory committee's

15   note).

16

17         Common questions of law and fact predominate and a class action is clearly the superior

18   method available to fairly and efficiently litigate this securities action.  "[C]ommon issues need

19   only predominate, not outnumber individual issues."  *In re Inter-Op Hip Prosthesis Liab. Litig.*,

20   204 F.R.D. 330, 345 (N.D. Ohio 2001).  When certifying a class for settlement purposes only,

21   the standards for satisfying the class certification element of "superiority" under Rule 2 3(b)(3)

22   may be relaxed because the Court does not need to consider the difficulties of managing the

23   class in any future litigation or at trial. *See, e.g., Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05 cv

24   2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas &*

25

26

27

28

*Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).[7]  Further, the superiority of class actions in large securities cases is well recognized. *See Amchem*, 521 U.S. at 625 (finding common questions predominated in securities class action certified for settlement).

As discussed above, there are a number of common questions of law and fact that would warrant class certification of this matter. These questions clearly predominate over individual questions because the Settling Defendants' alleged conduct impacted all Settlement Class Members in the same manner. *See, e.g.*, *In re Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").  Issues relating to the Defendants' liability are common to all members of the Settlement Class.  *Id.*; *see also In re LDK Solar*, 255 F.R.D. at 530; *In re UTStarcom*, 2010 WL 1945737, at *9 (same); *In re Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation defendants made during the class period and are common to the class.").

Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).  Likewise, here, the Settling Defendants' misrepresentations during the Class Period "affect[ed] [all] investors alike" and proof of falsity, materiality, scienter, and causation will "be made on a class-wide basis."  *Id.* at

---

[7] Indeed, courts have certified class actions for settlement purposes even where certification was or likely would have been denied for litigation purposes. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of settlement class that included § 11 claimants who had been excluded from the litigation class on grounds of "predominance"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying settlement class in antitrust case despite noting serious questions about whether a litigation class could be certified); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (certifying settlement class bringing state law fraud claims, recognizing that a "manageability problem" was rendered moot by the settlement); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying settlement class despite having previously ruled that predominance requirement was not met).

685, 687; *see also In re Cooper*, 254 F.R.D. at 641.  As a result, common questions of law and fact predominate.

In light of the foregoing, all of the requirements of Fed. R. Civ. P. 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiffs as Class Representatives, and appointing Lead Counsel as counsel for the Settlement Class.  *See, e.g.*, *Gittin v. KCI USA, Inc.*, No. 09-CV-05843 RS, 2011 WL 1467360, at *19 (N.D. Cal. Apr. 12, 2011).

**B.      The Proposed Plan and Method for Notice Meets All Requirements**

"For a class certified under Fed. R. Civ. P. 23(b)(3), the court must direct class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The proposed notice program provided under the Stipulation complies with the requirements of Fed. R. Civ. P. 23 and the Private Securities Litigation Reform Act (the "PSLRA").

After a competitive bidding process, Lead Counsel has retained Strategic Claims Services ("Strategic"), an experienced claims administrator, to handle the notice and claims process.  Lead Counsel asked for bids from three claims administration firms.   Two, including Strategic, submitted bids, while the third declined to do so, in light of the Settlement Fund's size, its combination of cash/stock consideration, and Lead Counsel's efforts to drive costs down.  Lead Counsel selected Strategic after assessing its bid to be stronger and more-competitive of those submitted.

Plaintiffs propose to give potential Settlement Class Members notice through two approaches: (1) by first-class mail, addressed to all Settlement Class Members who can reasonably be identified and located; and (2) by publication.  Strategic will mail the Notice of

- 22 -

Pendency and Proposed Partial Settlement of Class Action (the "Notice," either Exhibit B1 or B2 to the Stipulation, whichever is approved by the Court) and the Proof of Claim and Release (the "Claim Form," Exhibit D to the Stipulation) to all Settlement Class Members who may be identified through reasonable effort, including through the cooperation of KaloBios and/or its agents.  *See* Stipulation ¶¶36-37; Stipulation Exhibits B1, B2, C, D.  In addition, Strategic will cause the Summary Notice, Exhibit C to the Stipulation, to be published once in the national edition of *Investor's Business Daily* and over a national internet business newswire.  *Id.*

Lead Counsel has provided two proposed forms of the mailed notice so as to give the Court flexibility in choosing the best option, given not only the need to alert Class Members of the Partial Settlement but also the need to be cost-sensitive as far as administration expenses given the size of the cash portion ($1,500,000.00) of the Settlement Fund.  Stipulation Exhibit B1 is a more traditional, long-form mailed notice, which is more detailed but also more expensive, as far as printing, mailing, and related costs.  Stipulation Exhibit B2 is a streamlined version of the mailed notice, which provides the core information and then directs recipients to a website in order to download and print the long-form notice (along with the Stipulation and Proof of Claim form).

The Notice program provided for in the Stipulation advises putative Settlement Class Members of the existence of the Action and their rights with respect to the proposed Partial Settlement.  It describes the Action and defines the Settlement Class; describes the claims, defenses, and issues on which the Settling Parties disagree; notifies Settlement Class Members of their rights to appear, object, and opt out; clearly explains the binding nature of the Partial Settlement; and sets forth the plan of allocation pursuant to which the Net Settlement Fund will be allocated among Settlement Class Members.  *Id*. at Exhibits B1 and B2.  Consistent with the

PSLRA, the Notice also provides the relevant statement of recovery, potential outcomes of the case, awards for reimbursement sought, attorneys' fees and expenses sought, attorney information, and the reasons for the Partial Settlement. *Id*; *see* 15 U.S.C. § 78u-4(a)(7). Similar forms of notice are routinely approved by courts. *See, e.g.*, *Rosenburg*, 2007 WL 128232, at *5-*6 (approving similar notice and finding it sufficiently informed class members of their rights); *West*, 2006 WL 1652598, at *11 (approving settlement notice that explained to class members their options).

In short, the notice program satisfies both Fed. R. Civ. P. 23 and the PSLRA's statutory requirements. Moreover, the manner of notice, including both individual mailed notice and general publication, satisfies Rule 23 and due process. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by Fed. R. Civ. P. 23(c)(2)(B)"); *see also In re Marsh & McLennan Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *23-24 (S.D.N.Y. Dec. 23, 2009) ("easily conclud[ing]" that individual notice and publication notice satisfies due process).

### C. Proposed Schedule for Final Approval

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Order filed herewith:

- 24 -

| EVENT | DEADLINE FOR COMPLIANCE |
|---|---|
| Date for Settlement Hearing. | At least 90 days after the Court preliminarily approves the settlement |
| Mailing of Notice and Proof of Claim and Release. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶12) |
| Publication of Summary Notice. | No later than twenty-one (21) calendar days after the entry of Preliminary Approval Order (*Id.* at ¶15) |
| Filing deadline for requests for exclusion. | Postmarked no later than twenty-one (21) calendar days prior to the Final Settlement Hearing. (*Id.* at ¶19) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Twenty-eight (28) calendar days prior to the Final Settlement Hearing. (*Id.* at ¶¶23-24) |
| Filing deadline for objections. | Twenty-One (21) calendar days prior to the Settlement Hearing. (*Id.* at ¶22) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Fourteen (14) calendar days prior to the Final Settlement Hearing. (*Id.* at ¶25.) |

## IV.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order:  (1) preliminarily approving the Partial Settlement; (2) preliminarily certifying the Settlement Class and appointing Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class; (3) directing that notice be given to the Settlement Class Members; and (4) setting a date for a Settlement Hearing and deadlines for the mailing and publication of the Notices, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, and the filing of Lead Counsel's application for attorneys' fees and expenses and awards to Plaintiffs' for reimbursement of their time and expenses in overseeing this matter.

1

Dated: August 8, 2016

Respectfully submitted,

2

3

By: */s/Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)

4

**POMERANTZ LLP**
468 North Camden Drive

5

Beverly Hills, CA 90210
Telephone: (818) 532-6449

6

E-mail: jpafiti@pomlaw.com

7

Marc I. Gross

8

Jeremy A. Lieberman
Matthew L. Tuccillo

9

J. Alexander Hood II
Marc Gorrie

10

**POMERANTZ LLP**

11

600 Third Avenue, 20th Floor
New York, New York 10016

12

Telephone: (212) 661-1100
Facsimile: (212) 661-8665

13

Email: migross@pomlaw.com
jalieberman@pomlaw.com

14

mltuccillo@pomlaw.com

15

ahood@pomlaw.com
mgorrie@pomlaw.com

16

Patrick V. Dahlstrom

17

**POMERANTZ LLP**

18

10 South La Salle Street, Suite 3505
Chicago, Illinois 60603

19

Telephone: (312) 377-1181
Facsimile: (312) 377-1184

20

Email: pdahlstrom@pomlaw.com

21

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*

22

23

24

25

26

27

28

- 26 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lionel Z. Glancy
Robert V. Prongay
Ex Kano S. Sams II
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East , Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com
rprongay@glancylaw.com
esams@glancylaw.com

William B. Federman
A. Brooke Murphy
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112

*Additional attorneys for Plaintiffs*

- 27 -

1

2

### <u>CERTIFICATE OF SERVICE</u>

3

4

I hereby certify that this document filed through the CM/ECF system will be sent

5

electronically to the registered participants as identified on the Notice of Electronic Filing and

6

paper copies will be sent to those indicated as non-registered participants on August 8, 2016.

7

*/s/ Jennifer Pafiti*

8

Jennifer Pafiti

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 5:15-CV-05841-EJD