Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
Email: jpafiti@pomlaw.com

Marc I. Gross
Jeremy A. Lieberman
Matthew L. Tuccillo
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
jalieberman@pomlaw.com
mltuccillo@pomlaw.com

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*
[Additional Counsel Listed On Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE KALOBIOS PHARMACEUTICALS, INC. SECURITIES LITIGATION | Case No. 5:15-cv-05841-EJD |
| ————————————————— | **CLASS ACTION** |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date: June 8, 2017 Time: 9:00 a.m. Courtroom: 4, 5th Floor Judge: Hon. Edward J. Davila |

## NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION

**PLEASE TAKE NOTICE** that, pursuant to the Court's Order Granting Preliminary Approval of Partial Settlement issued on January 20, 2017 ("Preliminary Approval Order") and subsequent Order of the Court issued on March 16, 2017 extending the deadlines, on June 8, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard, at the United States Court, Northern District of California, Courtroom 4, 5th Floor, 280 South 1st Street, San Jose, California 95113, before the Honorable Edward J. Davila, Lead Plaintiffs Kaniz Fatema, Zeke Ingram, Bhaskar R. Gudlavenkatasiva, and Abuhena M. Saifulislam (the "Lead Plaintiffs") and Plaintiff Austin Isensee (collectively the "Plaintiffs") will, and hereby do move for an order: (1) granting final approval of the proposed partial class action settlement (the "Partial Settlement") in the above-captioned action (the "Action"), and (2) dismissing the Settled Claims with prejudice.

The Partial Settlement provides an aggregate gross recovery of one million five hundred thousand dollars ($1,500,000.00) in addition to three hundred thousand (300,000) shares of common stock of KaloBios Pharmaceuticals, Inc. ("KaloBios"), as documented within the July 1, 2016 Stipulation and Agreement of Partial Settlement and exhibits thereto (collectively the "Stipulation").[1] This Motion is supported by the accompanying Memorandum of Points and Authorities in Support thereof; the Declaration of Matthew L. Tuccillo in Support of Both Plaintiffs' Motion for Final Approval of Partial Class Action Settlement, Class Certification and Plan of Allocation and Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Compensatory Awards for Plaintiffs and supporting exhibits ("Tuccillo Decl."), filed herewith; the Declaration of Josephine Bravata Concerning the Mailing of Notice, Publication of Summary Notice, Exclusion Requests Received and Objections Submitted ("Bravata Decl."), filed herewith; Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards for Plaintiffs and Memorandum of Points and Authorities in Support thereof (the "Fee & Expense Motion"), filed concurrently herewith; Declarations of Kaniz Fatema ("Fatema Decl."),

---

[1]    Unless otherwise defined, all capitalized terms herein have the same meaning as the Stipulation dated July 1, 2016. Docket Entry ("Dkt.") No. 58-1.

Zeke Ingram ("Ingram Decl."), Bhaskar R. Gudlavenkatasiva ("Gudlavenkatasiva Decl."), Abuhena M. Saifulislam ("Saifulislam Decl."), and Austin Isensee ("Isensee Decl.") in support of the Fee & Expense Motion; the Stipulation of Settlement and its exhibits; all other pleadings and papers filed in this action; arguments of counsel; and any other matters properly before the Court.

To date, despite the mailing of over 18,500 notices, ***no objections to this Motion have been filed*** and ***no Settlement Class Members have sought to be excluded from the Settlement Class***. The deadline for filing any such objection is May 18, 2017. To the extent any such objections are filed, Lead Counsel Pomerantz LLP ("Pomerantz" or "Lead Counsel") will respond to each such filing by May 25, 2017.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the notice program satisfied due process and complied with Fed. R. Civ. P. 23(e).

2.      Whether the Plan of Allocation is fair, reasonable, and adequate.

3.      Whether the Court should certify the Settlement Class and whether the Plaintiffs and their counsel have adequately represented the Settlement Class.

4.      Whether the Partial Settlement, on the terms and conditions provided for in the Stipulation, should be finally approved by the Court as fair, reasonable, and adequate.

5.      Whether the Court should permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action as to the Settling Defendants.

6.      Whether the application for attorneys' fees and expenses submitted by Lead Counsel should be approved, and such fees and expenses authorized for payment to Lead Counsel and distribution by Lead Counsel among other Plaintiffs' counsel in Lead Counsel's discretion.

7.      Whether the application for a compensatory award submitted by Plaintiffs should be approved.

1

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND BACKGROUND ............................................................. 1

II.    THE PARTIAL SETTLEMENT WARRANTS FINAL APPROVAL ............................... 6

       A.    The Standards For Judicial Approval of Class Action Settlements ........................ 6

       B.    A Review of the *Hanlon* Factors Demonstrates that the Settlement Is
             Fair, Reasonable, and Adequate ............................................................... 8

             1.    The Overall Strength of Plaintiffs' Case, Including the Risk,
                   Expense, Complexity, and Likely Duration of Further Litigation,
                   Supports Final Approval of the Partial Settlement ....................................... 8

                   a.    PSLRA Cases Have Significant Obstacles to Success ..................... 8

                         i.    The Risk of Establishing Falsity and Scienter ..................... 9

                         ii.   The Risk of Proving Transaction and Loss Causation
                               and Damages ....................................................... 10

                   b.    Continued Litigation Would Be Risky and Expensive .................. 10

             2.    The Risks of Achieving Class Action Status and Maintaining That
                   Status Throughout Trial Support Approval of the Partial Settlement ........ 12

             3.    The Amount Obtained In the Partial Settlement Favors Approval ............. 13

             4.    The Extent Of Discovery Completed And The Stage Of The
                   Proceedings Supports Final Approval ....................................................... 14

             5.    Experienced Counsel Concur that the Partial Settlement, Which
                   Was Negotiated in Good Faith and at Arm's-Length, Is Fair,
                   Reasonable, and Adequate ....................................................... 16

             6.    The Absence of a Governmental Participant ............................................. 17

             7.    The Reaction Of The Settlement Class Favors Approval .......................... 18

             8.    The Risk of Collusion Among the Negotiating Parties .............................. 18

III.   NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS ...................... 18

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ............. 20

V.     CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED .......... 21

       A.    The Settlement Class Satisfies The Requirements of Rule 23(a)............................ 21

1

B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ........................ 24

2

VI.      CONCLUSION ............................................................................................................. 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## **TABLE OF AUTHORITIES**

2
**Page(s)**

3
**Cases**

4
*Alfus v. Pyramid Tech. Corp.*,
5
    764 F. Supp. 598 (N.D. Cal. 1991) ........................................................................22

6
*Amchem Prods. v. Windsor*,
    521 U.S. 591, 625 (1997) ........................................................................22

7
*Athale v. Sinotech Energy Ltd.*, No. 11- CV-05831,
8
    2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) ........................................................................15

9
*Browne v. Am. Honda Motor Co.*,
10
    2010 WL 9499072 (C.D. Cal. July 29, 2010) ........................................................................11

11
*Danis v. USN Commc'ns, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999) ........................................................................22

12
*Destefano v. Zynga, Inc.*, 12-cv-04007-JSC,
13
    2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ........................................................................7

14
*Elliott v. Rolling Frito-Lay Sales, LP*,
15
    2014 U.S. Dist. LEXIS 83796 (C.D. Cal. June 12, 2014) ........................................................................16

16
*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................16

17
*Erica P. John Fund, Inc. v. Halliburton Co.*,
18
    563 U.S. 804, 131 S.Ct. 2179 (2011) ........................................................................24

19
*Evans v. Jeff D.*,
20
    475 U.S. 717 (1986) ........................................................................6

21
*Gittin v. KCI USA, Inc.*, No. 09-cv-05843 RS,
    2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ........................................................................25

22
*Glass v. UBS Fin. Servs., Inc.*,
23
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) ..........16

24
*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)........................................................................6, 7, 8, 13, 23

25
*Hanon v. Dataproducts Corp.*,
26
    976 F.2d 497 (9th Cir. 1992)........................................................................23

27
*Hartless v. Clorox Co.*,
28
    273 F.R.D. 630 (S.D. Cal. 2011)........................................................................24

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ................................................................23

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...................................................................10

*In re Amgen Sec. Litig.*, 07-cv-2536 PSG (PLAx),
  2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016) .......................10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................7, 18

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................14

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) .....................................................23, 24, 25

*In re Critical Path, Inc. Sec. Litig.*, No. 01-cv-00551 WHA,
  2002 WL 32627559 (N.D. Cal. June 18, 2002) .........................................15

*In re Emulex Corp., Sec. Litig.*,
  210 F.R.D. 717 (C.D. Cal. 2002) .....................................................22, 23, 25

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)..............................8, 10, 11, 16, 17, 21

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................20

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001).............................................................24

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) .........................................................24, 25

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) (J. Davila) ..........................................7, 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).....................................................7, 13, 14, 15

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) .....................................................................18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................6, 12, 16, 18, 21

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)........................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)......................................................................20

*In re Rambus Inc. Derivative Litig.*, No. 06-cv-3513 JF (HRL),
    2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ....................................................................18

*In re Sumitomo Cooper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999)..........................................................................................8

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)........................................................................................6, 12

*In re TD Ameritrade Account Holder Litig*, Nos. C 07-2852 SBA, C 07-4903 SBA
    2011 WL 4079226 (N.D. Cal. Sept. 13, 2011)...............................................................16

*In re UTStarcom Sec. Litig.*, No. 04-cv-04908 JW,
    2010 WL 1945737 (N.D. Cal. May 12, 2010) ...............................................21, 22, 23, 25

*In re VeriSign, Inc. Sec. Litig.*, No. 02-cv-02270-JW,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ............................................................22, 23

*In re Wireless Facilities, Inc. Sec. Litig.*,
    253 F.R.D. 630 (S.D. Cal. 2008)........................................................................................19

*Jenson v. Fiserv Trust Co.*,
    256 F. App'x 924 (9th Cir. 2007)........................................................................................12

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012)...............................................................................................6

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978)..............................................................................................23

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)............................................................................................15

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010)........................................................................................24

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................12, 17

*Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406,
    2014 WL 1802293 (C.D. Cal. May 6, 2014)......................................................................21

*Nobles v. MBNA Corp.*,
    2009 WL 1854965 (N.D. Cal. June 29, 2009) ..................................................................10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)......................................................................................6, 7, 13

*Riker v. Gibbons*, No. 08-cv-00115-LRH-VPC,
 2010 WL 4366012 (D. Nev. Oct. 28, 2010)..............................................................20

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009)..............................................................19

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993)..............................................................7, 8

*Van Wingerden v. Cadiz, Inc.*,
 2017 U.S. Dist. LEXIS 18800 (C.D. Cal. Feb. 8, 2017)..............................................................21

*Vathana v. EverBank*, No. 09-cv-02338 RS,
 2010 WL 934219 (N.D. Cal. Mar. 15, 2010)..............................................................24

*Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*,
 173 F.3d 713 (9th Cir. 1999)..............................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011)..............................................................12

*West v. Circle K Stores, Inc.*, No. CIV-S-04-0438-WBS-GGH,
 2006 WL 1652598 (E.D. Cal. June 13, 2006)..............................................................22

*Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05-cv-2057-L(JMA),
 2009 WL 3612864 (S.D. Cal. Oct. 28, 2009)..............................................................24

**Statutes**

15 U.S.C. § 78u-4(a)(7)..............................................................8, 9, 16, 17, 19, 20

Securities Act of 1933 § 3(a)(10)..............................................................1

**Rules**

Fed. R. Civ. P. 9(b)..............................................................9

Fed. R. Civ. P. 23..............................................................1, 6, 12, 19, 20, 21, 22, 23, 24, 25

1
2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND BACKGROUND**

3      Plaintiffs and Lead Counsel have successfully achieved a Partial Settlement of this

4 complex securities class action for an aggregate gross recovery of one million five hundred

5 thousand dollars ($1,500,000.00) in cash and three hundred thousand (300,000) shares of

6 KaloBios stock as reorganized pursuant to the confirmed and effective Chapter 11 Plan of

7 Reorganization, issued pursuant to the Plan of Reorganization and § 1145 of the Bankruptcy Code,

8 and subject to exemption from registration under § 3(a)(10) of the Securities Act of 1933, to

9 resolve the claims in the Action as to Defendants KaloBios, Ronald Martell ("Martell"), and Herb

10 Cross ("Cross") (collectively the "Settling Defendants").[2]   The Partial Settlement, as detailed

11 herein, is the product of extensive work by Lead Counsel, and at Lead Counsel's direction, other

12 Plaintiffs' Counsel,[3] on compressed timeframes dictated by, among other things, the fast pace and

13 complexity of KaloBios' bankruptcy proceeding.

14      Having evaluated the facts and applicable law, and recognizing the risks and expense of

15 continued litigation, Plaintiffs respectfully submit that the proposed Partial Settlement is in the

16 best interests of the Settlement Class for the reasons discussed below and in the supporting

17 declarations.[4]  The Settlement Class is defined as "all persons or entities who purchased or

18 otherwise acquired the common stock of KaloBios between November 18, 2015 and December

19 16, 2015, both dates inclusive," subject to extensive exclusions[5] designed to ensure that the

20

---

21 [2]      The litigation shall continue, unaffected by the Partial Settlement, against Defendant
22 Martin Shkreli ("Shkreli"), who has not settled and whose motion to dismiss is fully briefed and
argued.
23 [3]      Along with Lead Counsel Pomerantz, other Plaintiffs' Counsel that worked on this matter,
under the supervision of Lead Counsel, were Glancy Prongay & Murray LLP ("Glancy") and
24 Federman & Sherwood ("Federman").   Together, Lead Counsel, Glancy, and Federman are
sometimes referred to herein as "Counsel."
25 [4]      This memorandum focuses primarily upon the legal standards for approval of a class action
settlement under Fed. R. Civ. P. 23(e).  For a more complete recitation of the facts and procedural
26 background of the Action, Plaintiffs respectfully refer the Court to the accompanying Tuccillo
Declaration.
27 [5]      Specifically, as set forth in the Stipulation and the Preliminary Approval Order, the
Settlement Class definition excludes all of the following: Settling Defendants and their immediate
28 family members; the Released Parties; KaloBios's officers, directors, subsidiaries, and affiliates;
KaloBios's employees, including without limitation Judy Alaura, Priyanka Ankola, Deborah

1    Settlement Fund is delivered only to investors unaffiliated with Defendants.  *See* Stipulation at

2    ¶1(w); Preliminary Approval Order at 4.

3          As detailed in the Tuccillo Declaration, before entering into the Partial Settlement,

4    Plaintiffs understood the strengths and weaknesses of the claims and defenses and engaged in

5    significant efforts to protect the interests of the putative class amidst the compressed deadlines of

6    KaloBios' complex bankruptcy reorganization in a Chapter 11 case filed on December 30, 2015.

7    *See* Tuccillo Decl. ¶¶4-8.  Among other complexities, a separate group of plaintiffs pursuing

8    claims related to an $8.2 million private placement financing that had closed on December 16,

9    2015, the day before Defendant Shkreli's arrest (the "PIPES plaintiffs"), were also seeking to

10   negotiate a potential cash/stock settlement with KaloBios, effectively competing with Plaintiffs for

11   the same limited resources of a bankrupt company, based on arguably a stronger legal claim with

12   arguably better odds of surviving bankruptcy subordination.  Even before the formal appointment

13   of Lead Plaintiffs and their choice of counsel, Lead Counsel filed a $20 million class proof of

14   claim in the Bankruptcy Case on March 29, 2016, shortly before the bar date for filing such

15   claims.  By contrast, certain of the PIPES plaintiffs failed to file a bankruptcy proof of claim

16   before the bar date, thereby impairing their claim and starkly illustrating the perils posed by

17   KaloBios's bankruptcy.

18         After the Court formally appointed Lead Plaintiffs and their choice of counsel, Pomerantz,

19   as Lead Counsel on April 28, 2016, Lead Counsel thereafter pursued a simultaneous, dual-track

20   path of engaging in settlement discussions with the Settling Defendants while continuing to

21   resolutely pursue its litigation and investigative efforts against Defendant Shkreli in the interest of

22   securing a reasonable, well-considered recovery for the Settlement Class.  Plaintiffs' and Lead

23   Counsel's efforts included, *inter alia*, the following:

24   ───────────────

25   Brown, Mark Camarena, Blair Evans, Jennifer Fernando, Morgan Lam, Wendy Lin, Tom Selph,
     Ted Shih, and Mirella Villa del Toro; Defendant Shkreli, and his immediate family members;
     Shkreli's affiliates and the other members of his investor group who acquired roughly 70% of
26   KaloBios stock as announced by KaloBios: David Moradi ("Moradi"), Anthion Partners II LLC,
     Marek Biestek ("Biestek"); and those individuals who otherwise acquired KaloBios stock and/or
27   were appointed as KaloBios officers and directors in conjunction with Shkreli's takeover of the
     company, including Moradi, Biestek, Tony Chase, Tom Fernandez, and Michael Harrison. *See*
28   Stipulation ¶1; Preliminary Approval Order at p. 4.

- Lead Counsel engaged in discussions and negotiations with litigation and/or bankruptcy counsel for Defendant KaloBios telephonically on five dates in March and April, 2016.

- Lead Counsel engaged in face-to-face resolution-oriented meetings and negotiations with litigation and bankruptcy counsel for KaloBios on April 15, 2016 and April 19, 2016.

- On May 3, 2016, Lead Counsel had full-day meetings with litigation and bankruptcy counsel for KaloBios, litigation counsel for Defendants Martell and Cross, and their insurance carrier representatives, including American International Group ("AIG").

- Lead Counsel continued telephonic resolution-oriented discussions and negotiations, with counsel for KaloBios serving as the primary point-of-contact, on four dates in May 2016.

- A verbal agreement to partially settle the Action as against Settling Defendants KaloBios, Martell, and Cross was reached on May 18, 2016.

Tuccillo Decl. ¶¶9-10.

Thereafter, Lead Counsel, bankruptcy and litigation counsel for Defendant KaloBios, counsel for Defendants Martell and Cross, and representatives from AIG engaged in frequent telephonic discussions as they negotiated the terms of a Memorandum of Understanding, which was executed on June 2, 2016, and subsequently submitted to the Bankruptcy Court by counsel for KaloBios. At that time, Lead Counsel provided bankruptcy counsel for KaloBios with two different votes regarding the bankruptcy exit plan (one for, one against), to be held in escrow pending the Bankruptcy Court's decision regarding the Partial Settlement. The Bankruptcy Court entered an order approving the Partial Settlement and the KaloBios' plan of reorganization and Chapter 11 exit plan, including this Partial Settlement. *See In re KaloBios Pharmaceuticals, Inc.*, Case No. 15-12628-LSS (Bankr. D. Del.), Dkt. No. 570. Once the Bankruptcy Court indicated its approval of the Partial Settlement, Lead Counsel authorized bankruptcy counsel for KaloBios to release the escrowed vote in favor of the bankruptcy exit plan. The parties then negotiated the terms of the Stipulation, which was submitted to the Bankruptcy Court in near-final form. The Bankruptcy Court then approved KaloBios' plan of reorganization and Chapter 11 exit plan, including this Partial Settlement. *See In re KaloBios Pharmaceuticals, Inc.*, Case No. 15-12628-LSS (Bankr. D. Del.), Dkt. No 581. *See* Tuccillo Decl. ¶¶11-13.

1   The Stipulation was finalized on July 1, 2016, and executed by Plaintiffs and the Settling
2   Defendants that day. Thereafter, pursuant to its terms, the Settlement Fund consideration of one
3   million five hundred thousand dollars ($1,500,000) and three hundred thousand (300,000) shares
4   of stock in the reorganized, post-exit KaloBios was paid by Defendant KaloBios and AIG into an
5   Escrow Account established by Lead Counsel.  Significantly, this total includes $250,000 obtained
6   from the bankrupt company – the same amount obtained by the PIPES plaintiffs, who also
7   obtained a similar amount of company stock, despite having an arguably stronger claim.   In
8   addition, Lead Counsel obtained significant non-pecuniary concessions as part of the Partial
9   Settlement, in the form of an agreement by Settling Defendants KaloBios, Martell, and Cross to
10   preserve and produce relevant documents and to appear for deposition as if they were still parties
11   to this litigation. *See* Stipulation ¶65.  Plaintiffs also secured the same agreement from non-party
12   Moradi, a member of Defendant Shkreli's investor group that gained control over KaloBios in
13   November 2015 who later served as a KaloBios Director integral in steering it through
14   bankruptcy. *Id.*; Tuccillo Decl. ¶¶14, 16.

15   Meanwhile, the litigation against Defendant Shkreli has continued, as the Partial
16   Settlement preserved and excluded the claims against him.  Plaintiffs filed their First Consolidated
17   Amended Complaint on July 14, 2016 (Dkt. No. 55), Defendant Shkreli filed his motion to dismiss
18   on August 16, 2016 (Dkt. No. 61), Plaintiffs opposed on September 21, 2016 (Dkt. No. 65), and
19   Shkreli filed his reply on October 26, 2016 (Dkt. No. 68).  On January 19, 2017, Lead Counsel
20   and Shkreli's counsel argued the merits of his motion to dismiss during the Preliminary Approval
21   hearing, after which the Court took the motion under submission.  Tuccillo Decl. ¶¶19-20.

22   The terms of the Partial Settlement are set forth in the Stipulation. The Court's Preliminary
23   Approval Order (Dkt. No. 75) preliminarily approved the Partial Settlement, certified the Settlement
24   Class for purposes of the Partial Settlement, and directed that notice be distributed to Settlement
25   Class Members. Tuccillo Decl. ¶16.

26   While Plaintiffs and Lead Counsel believe that the Settlement Class has strong claims
27   against the Settling Defendants, they recognize that they faced significant risks in successfully
28   pleading and ultimately proving all elements of their claims, and the added risk that KaloBios's

bankruptcy could have eliminated any recovery. The Settling Defendants denied any liability or damages during the settlement negotiations and would have had numerous opportunities to convince the Court, or a jury, that their statements were not false or misleading, that they did not have any intent to defraud nor did so with extreme recklessness, that KaloBios stock was not artificially inflated due to any alleged material misrepresentation or omission, and that the Settlement Class did not suffer any damages attributable to a materially false or misleading statement they made. No doubt, the Settling Defendants would have raised such challenges at every opportunity, including in a motion to dismiss, in a motion for summary judgment, and at trial, making successful prosecution and recovery uncertain.

The Partial Settlement eliminates these risks and provides the Settlement Class with a certain and gross recovery of $1,500,000.00 in cash and 300,000 shares of reorganized, post-exit KaloBios stock, which were valued at $3.26 per share or $978,000 total on May 18, 2016, the date Plaintiffs verbally agreed to the Partial Settlement. In light of the obstacles to recovery and the substantial time and expense that continued litigation would require, Plaintiffs and Lead Counsel believe that the Partial Settlement is a very good result for the Settlement Class, and provides a fair and reasonable resolution of the claims against the Settling Defendants.

Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation governs how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants. The Plan of Allocation was prepared with the assistance of Plaintiffs' damages consultant and is based on an estimation as to the amount of artificial inflation in the prices of KaloBios common stock during the Class Period. Tuccillo Decl. ¶22. It is substantively similar to other plans that have been approved to successfully allocate recoveries in other securities class actions. *Id.* Plaintiffs respectfully submit that the Plan of Allocation is fair, reasonable and adequate, and should be approved.

As required by the Court's Preliminary Approval Order, copies of the short-form Notice of Proposed Partial Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Notice") have been disseminated to over 18,500 potential Settlement Class Members and their nominees. *See* Bravata Decl. ¶¶5-6. The Notice directed Settlement Class

Members to the Claims Administrator's website, where the Proof of Claim and Release Form, long-form Notice, and Stipulation were posted, along with the revised deadlines approved by the Court. *Id.* ¶¶4. In addition, the Court-approved Summary Notice was published over the *GlobeNewswire* on February 9, 2017. *Id.* ¶8.[6] To date, despite the mailing of over 18,500 notices, ***there have been no objections to any aspect of the Settlement, and no requests for exclusion from potential Settlement Class Members***. *Id.* ¶¶11-12.

## II.   THE PARTIAL SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards For Judicial Approval of Class Action Settlements

In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008);[7] *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits"). It is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). In exercising that discretion, the Ninth Circuit has considered the following factors: "[T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (referring to these as the "*Hanlon* factors"). However, "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

---

[6]      *See* Bravata Decl. and Section III, *infra* for further discussion of efforts taken to transmit Notice to Settlement Class Members.

[7]      Unless otherwise indicated, all internal citations and quotations are omitted.

MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT, CLASS CERTIFICATOIN, AND PLAN OF ALLOCATION - Case No. 5:15-cv-05841-EJD

6

1   advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each

2   individual case." *Officers for Justice*, 688 F.2d at 625.  Moreover, a court need not consider all of

3   these factors, or may consider others.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

4   942 (9th Cir. 2011).  Accordingly, weighing the *Hanlon* factors is *not* an adjudication of the merits

5   of the case.

6        Additionally, when a settlement agreement is negotiated prior to formal class certification,

7   courts must ascertain whether the parties colluded.  *In re LinkedIn User Privacy Litig.*, 309 F.R.D.

8   573 (N.D. Cal. 2015) (J. Davila) (citing *In re Bluetooth*, 654 F.3d at 946).  Signs of collusion - none

9   of which are present here - include: (1) when class counsel receives a disproportionate distribution

10  of the settlement, or when the class receives no monetary distribution but counsel is amply

11  awarded; (2) when the parties negotiate a "clear sailing" deal providing for payment of attorneys'

12  fees separate and apart from class funds without objection by the defendant, which carries

13  potentially enables a defendant to pay class counsel excessive fees and costs in exchange for

14  accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not

15  awarded to revert to defendants rather than to be added to the class fund.  *Id*. at 947.

16       Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and

17  reasonable.'" *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin.*

18  *Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same).  Consequently, a settlement hearing is

19  "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement

20  "be judged against a hypothetical or speculative measure of what *might* have been achieved by the

21  negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis added).  Indeed, "it is the very

22  uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce

23  consensual settlements." *Destefano v. Zynga, Inc.*, 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196

24  at *29-30 (N.D. Cal. Feb. 11, 2016) (quoting *Officers for Justice*, 688 F.2d at 625).

25       As explained herein, the Partial Settlement was reached only after hard-fought litigation

26  between experienced counsel on both sides, and it is the product of arm's-length negotiations with

27  at least twelve days of telephonic and in-person meetings between Lead Counsel, the Settling

28  Defendants' counsel and their insurers. Under these circumstances, Plaintiffs respectfully submit

1   that the Partial Settlement meets the Ninth Circuit standard for approval.

2   **B.   A Review of the *Hanlon* Factors Demonstrates that the Settlement Is Fair, Reasonable, and Adequate**

3   **1.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Partial Settlement**

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement.  *See, e.g.*, *Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). Lead Counsel, highly experienced in litigating and resolving complex securities class actions, carefully evaluated the merits here, in light of all risks and potential weaknesses, including those posed by KaloBios's bankruptcy, before Plaintiffs entered into the Partial Settlement.   Moreover, Plaintiffs and Lead Counsel made a reasoned strategic decision to settle with Settling Defendants Martell and Cross, whose conduct is implicated only on the first day of the Settlement Class Period, after which they left KaloBios, while preserving claims against non-settling Defendant Shkreli, whose conduct continued throughout the Settlement Class Period.

Although Plaintiffs believe that the case is strong based on the substantial research and investigation conducted, they must be cognizant of the substantial risk posed to the Settlement Class in continuing this Action, *to wit*, that the case against the Settling  Defendants might not be certified as a class action, that the Action might succumb at the summary judgment stage to attacks regarding liability, loss causation, or damages, or that the claims of Plaintiffs and the putative class against KaloBios would be subordinated and extinguished in its bankruptcy proceeding. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class' ultimate recovery be less than the proposed settlement).

**a.   PSLRA Cases Have Significant Obstacles to Success**

In addition to the general risks of any litigation, heightened risk existed because of the

application of both Fed. R. Civ. P. 9(b) and also the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which significantly raised the standards for investors to successfully plead and prosecute securities class actions.   To succeed on their §10(b) claim, Plaintiffs would have to plead and prove, *inter alia*, that Defendants knowingly, or with deliberate recklessness, issued materially false and misleading statements and omissions of fact, that the members of the Settlement Class relied thereon (*e.g.*, establish class-wide reliance by the fraud-on-the-market doctrine via proof of an efficient market for KaloBios stock), and that Settlement Class Members were damaged when the truth was revealed.   Such pleading requirements were vigorously contested during settlement negotiations (and by Defendant Shkreli in his motion to dismiss) and surely would have been further contested by the Settling Defendants were the Action to continue. The §20(a) control person claim faced significant hurdles of proof as regards Settling Defendants Cross and Martel, due in particular to the fact that they were only at KaloBios for the first day of the Settlement Class Period, which implicated just a handful of alleged misstatements.

### i.      The Risk of Establishing Falsity and Scienter

Obtaining a favorable jury finding on the elements of falsity and scienter is hardly a foregone conclusion.  Plaintiffs would have to demonstrate that the Settling Defendants fraudulently misled investors throughout the Class Period – or in the case of Martell and Cross, on its first day - by touting Defendant Shkreli's and his cronies' experience and qualifications while failing to disclose their alleged significant misconduct at his prior companies and business ventures. While Plaintiffs are confident they would have overcome any motion to dismiss filed by the Settling Defendants (and will succeed in opposing Defendant Shkreli's motion to dismiss), Plaintiffs and Lead Counsel are aware of the challenges of actually proving Plaintiffs' claims at trial.  Indeed, the Settling Defendants insisted that Plaintiffs could not establish that Defendants' statements were materially false or misleading, or that they acted with scienter.  Even Defendant Shkreli's motion to dismiss challenges falsity by insisting that he had no duty to disclose his own prior misconduct. Additionally, the Settling Defendants would likely contend – as Shkreli did in his motion to dismiss – that their statements were protected by the PSLRA's safe harbor because the statements were statements of opinion, forward-looking, and accompanied by meaningful cautionary language.

1

2

   **ii.    The Risk of Proving Transaction and Loss Causation and Damages**

3       Proving that the misstatements caused a significant loss for investors, and that the

4  Settlement Class suffered damages as a result of the Settling Defendants' misconduct, also poses a

5  challenge. To wit, Defendant Shkreli's motion to dismiss challenged transaction causation

6  (reliance) by asserting under a truth-on-the-market defense that the market was already aware of the

7  full extent of his prior misdeeds.  While Plaintiffs vigorously disputed the viability of this defense,

   the Settling Defendants would likely have contested causation as well.

8
       Determining the amount of losses, or that the alleged corrective disclosures and events
9
   actually caused the declines in KaloBios' stock, would have required complicated expert testimony
10
   and use of methodologies that are debated among economists.  This would create a "'battle of
11
   experts,' [in which] the outcome cannot be guaranteed." *In re Amgen Sec. Litig.*, 07-cv-2536 PSG
12
   (PLAx), 2016 U.S. Dist. LEXIS 148577, at *7 (C.D. Cal. Oct. 25, 2016).
13
       Thus, vigorous challenges to reliance, transaction and loss causation, and damages posed a
14
   significant risk on any motion to dismiss by the Settling Defendants, at summary judgment, trial,
15
   and on appeal.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir.
16
   2012) (jury verdict in §10(b) action reversed due to failure to prove loss causation).
17
       **b.    Continued Litigation Would Be Risky and Expensive**
18
       Regardless of the ultimate outcome, there is no question that further litigation against the
19
   Settling Defendants would have been expensive and complex. It is widely acknowledged that class
20
   action litigation is inherently complex. *See, e.g.*, *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2
21
   (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of
22
   prevailing in class action litigation").  Securities class actions, in particular, are typically complex
23
   and expensive to prosecute. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *6. This action is no
24
   exception, particularly given that KaloBios had declared bankruptcy, thereby opening up a second
25
   front, before the Bankruptcy Court, of time- and resource-consuming litigation.
26
       For class certification, Plaintiffs would have had to procure an expert's declaration on the
27
   issue of market efficiency (as would have the Settling Defendants).  In addition to full briefing,
28

documents would have been produced and expert depositions would have been taken.  With respect to merits discovery, Lead Counsel would anticipate, given the complexities involved, reviewing thousands of documents and taking a substantial number of depositions, including depositions of the Settling Defendants, Defendant Shkreli, and other KaloBios personnel.  While much of that work may still occur, given the continued litigation against Defendant Shkreli, the Partial Settlement minimized risks as to the costs and outcomes of discovery specific to the Settling Defendants, while ensuring that discovery necessary to the case against Shkreli will proceed in a streamlined and cost-reduced way.[8]

Following merits discovery, the parties would engage in expert discovery on questions of reliance, loss causation and damages, as they pertain to the Settling Defendants.  Expert discovery and trial preparation would be expensive and complex.  *See Heritage*, 2005 WL 1594403, at *6 (class actions have a well-deserved reputation as being the most complex).

Accordingly, the likely duration and expense of further litigation against the Settling Defendants, particularly the bankrupt corporate Defendant KaloBios, also supports a finding that the Partial Settlement is fair, reasonable, and adequate.  Even if a class had been certified and the operative complaint survived subordination attempts in the KaloBios bankruptcy, the Settling Defendants' likely motion(s) to dismiss and likely motion(s) for summary judgment, continued prosecution of the action would be complex, expensive, and lengthy with a more favorable outcome than the Partial Settlement highly uncertain. *See Browne v. Am. Honda Motor Co.*, 2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources. There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").  After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation.  Thus, the present value of a certain recovery at this time, already fully funded, as opposed to the mere chance for a greater one substantially down the road,

---

[8] Specifically, pursuant to the Stipulation, KaloBios, Martell, Cross, and non-party Moradi agreed to preserve and produce relevant documents and to appear for deposition as if they were still parties to this litigation. *See* Stipulation ¶65.

supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the risk that the Settlement Class could receive no recovery.

At this point, over fifteen months into the Action with several complaints drafted, extensive efforts to navigate through separate bankruptcy proceedings (which extinguished part of the PIPES plaintiffs' claims), a round of motion to dismiss briefing completed (versus Defendant Shkreli), and intensive and extensive settlement negotiations under their belt, Plaintiffs and Lead Counsel are well aware of the strengths and weaknesses of their case. Therefore, despite its perceived strength, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Partial Settlement. *See Syncor*, 516 F.3d at 1101 (finding the district court abused its discretion in granting defendants' summary judgment motion after the parties notified the court of entering into a binding class action settlement); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 2. The Risks of Achieving Class Action Status and Maintaining That Status Throughout Trial Support Approval of the Partial Settlement

The Settlement Class has been preliminarily certified for settlement purposes only. If not for this Partial Settlement, the Settling Defendants likely would have strongly contested any motion for class certification and, if certified, would have sought every opportunity to have a certified class de-certified. *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").[9]   Moreover, they would have been doing so in lockstep with similar efforts by Defendant Shkreli, rather than leaving him to brief them alone. Accordingly, the risks of certifying the action and maintaining the Settlement Class throughout the litigation support approval of the Partial Settlement.

---

[9]   Indeed, were a class to be certified, the Settling Defendants could petition for immediate interlocutory appeal pursuant to Fed. R. Civ. P. 23(f), which expressly provides that a certification order may be "altered or amended before final judgment." *See, e.g.*, *Jenson v. Fiserv Trust Co.*, 256 F. App'x 924 (9th Cir. 2007); *Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999). Thus, maintaining certification is an expensive and risky enterprise. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and *en banc* in 2009).

### 3.      The Amount Obtained In the Partial Settlement Favors Approval

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Nor is the proposed Partial Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.  In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *See Mego*, 213 F.3d at 459.

Here, Lead Counsel engaged a consultant to assist in estimating potentially recoverable damages, which is challenging due to, among other things, assumptions that must be made regarding trading activity.  Plaintiffs filed a $20 million Proof of Claim in KaloBios's bankruptcy proceeding.  But that number could be reduced or eliminated entirely by this Court if it or a jury were to accept some or all of Defendants' defenses, including any claims that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable.  If, for example, any of the Defendants were able to persuade the Court or a jury to reject transaction causation (reliance), damages could be significantly reduced. These risks are particularly acute given KaloBios's precarious financial condition – it underwent bankruptcy proceedings and the Partial Settlement had to be approved by the Bankruptcy Court. *See* Tuccillo Decl. ¶¶7-8, 11-13, 21 (financial risks to continued litigation).  Thus, the risk that Plaintiffs would be unable to recover a greater amount further down the road – whether as a result of litigation setbacks or of KaloBios' uncertain future – was carefully considered in arriving at this Partial Settlement.

The Partial Settlement gross value, totaling $1,500,000.00 in cash, and 300,000 shares of KaloBios stock (with the stock valued at the $3.26 per share price on May 18, 2016, when a verbal agreement to settle the case was reached) represents a return of approximately 12.39% of estimated

MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT, CLASS CERTIFICATOIN, AND PLAN OF ALLOCATION - Case No. 5:15-cv-05841-EJD

13

*total* damages at issue – while permitting the case to continue to be litigated against Defendant Shkreli. This outcome provides a very fair and reasonable recovery under the circumstances. Indeed, even without the stock component, the $1,500,000.00 cash portion represents an 8% recovery of estimated total damages at issue. Moreover, settlements valued at a substantially similar or much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses). *See also* Tuccillo Decl. at ¶21 and Ex. 4 thereto (attaching excerpts from Svetlana Starykh and Stefan Boettsich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA 25 Jan. 2016) at 33, Fig. 29 (the median ratio of settlements between 1996 and 2015 to investment losses was 4.5% for cases alleging investor losses of between $50 and $99 million) and at 34, Fig. 30 (the median ratio of settlements to investor losses in 2015 was 1.6%)).

Here, the recovery provides an immediate and tangible benefit to the Settlement Class, as well as long-term benefits such as the preservation of claims against Defendant Shkreli, against whom additional recoveries might still be obtained, that is well within a range of reasonableness in light of the best possible recovery and the substantial risks presented by the litigation.

### 4. The Extent Of Discovery Completed And The Stage Of The Proceedings Supports Final Approval

The stage of the proceedings and the amount of information available to the parties to assess strengths and weaknesses are additional factors that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego*, 213 F.3d at 458. The parties need not have engaged in extensive formal discovery, as long as they have engaged in sufficient investigation of the facts to enable them and the Court to intelligently make an appraisal of the Settlement.

Throughout the PSLRA-mandated discovery stay, Lead Counsel conducted a thorough review of KaloBios's SEC filings and press releases during the Class Period, the SEC complaint against Defendant Shkreli and the federal indictments that led to Shkreli's arrest and the arrest of his outside legal counsel on December 17, 2015, as well as other publicly-available news reports

and information relating to KaloBios and Defendant Shkreli.  *See* Tuccillo Decl. ¶24.  Based on this investigation, Plaintiffs filed multiple complaints, including the initial complaint filed by Plaintiff Isensee on December 31, 2015, the detailed Amended Complaint by Plaintiff Isensee filed on April 18, 2016, and First Consolidated Amended Complaint filed by Lead Plaintiffs (together with Isensee) on July 14, 2016, which included extensive pertinent factual allegations and confidential witness statements.  *Id.*  Lead Counsel is thoroughly familiar with the facts and had ample opportunity to assess the strengths and weaknesses of the claims, so as to appraise the settlement's sufficiency. *See, e.g.*, *Athale v. Sinotech Energy Ltd.*, No. 11- CV-05831, 2013 WL 11310685 (S.D.N.Y. Sept. 4, 2013) (approving partial settlement of securities class action at parallel stage of proceedings).  Thus, Plaintiffs and Lead Counsel did a thorough investigation before agreeing to the proposed Partial Settlement.

Lead Counsel thereafter engaged in extensive telephonic and in-person discussions on over twelve dates with litigation and bankruptcy counsel for Defendant KaloBios, litigation counsel for Defendants Martell and Cross, and representatives from AIG to negotiate the Partial Settlement. During these protracted negotiations, the parties had ample opportunity to present the strengths of their respective cases and to hear one another's perspectives as to weaknesses.   Lead Counsel also opposed Shrekli's motion to dismiss the First Consolidated Amended Complaint, which, among other things, raised a "truth on the market" defense that would have been equally applicable to the Settling Defendants.  *See* Tuccillo Decl. ¶10-11, 18-20.

Through these efforts, Lead Counsel and Plaintiffs gained sufficient information to negotiate and evaluate the Partial Settlement before more time or resources were expended on further litigation with the Settling Defendants, while still pursuing claims against Defendant Shkreli. Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, No. 01-cv-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).  As a result, courts regularly approve settlements reached relatively early in the formal litigation process. *See, e.g.*, *Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular*

MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT, CLASS CERTIFICATOIN, AND PLAN OF ALLOCATION - Case No. 5:15-cv-05841-EJD

15

1    *Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements,

2    'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient

3    information to make an informed decision about settlement.); *In re TD Ameritrade Account Holder*

4    *Litig.*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011)

5    (approving settlement after the filing of a motion to dismiss and prior to significant discovery).  For

6    this reason, courts have commended class counsel for recognizing when, as is the case here, a

7    prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*,

8    2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for

9    the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th

10   Cir. 2009).  In sum, the parties reached the Partial Settlement when they were well informed as to

11   the facts, legal issues, and risks of the Action.

12          **5.      Experienced Counsel Concur that the Partial Settlement, Which Was
                      Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable,**
13   **and Adequate**

14          Courts recognize that the opinion of experienced counsel supporting the settlement after

15   hard-fought negotiations is "entitled to considerable weight." *See, e.g.*, *Elliott v. Rolling Frito-Lay*

16   *Sales, LP,* 2014 U.S. Dist. LEXIS 83796, at *21 (C.D. Cal. June 12, 2014) (citing *Ellis v. Naval Air*

17   *Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

18   1036, 1043 (N.D. Cal. 2007) ("The recommendations of plaintiffs' counsel should be given a

19   presumption of reasonableness."). This makes sense, as counsel is "most closely acquainted with

20   the facts of the underlying litigation." *Heritage Bond*, 2005 WL 1594403, at *9.   Here, Lead

21   Counsel is one of the oldest plaintiff-side securities litigation firms in the country, with decades of

22   experience litigating securities class actions nationwide – including within this Circuit and District

23   in particular. Tuccillo Decl. ¶¶23. Ex. 3 (Lead Counsel's firm resume).  Additionally, throughout

24   the litigation and settlement negotiations, the Settling Defendants have been represented by very

25   skilled and highly respected counsel at Hogan Lovells US LLP and Fenwick & West LLP.

26          In the face of this formidable defense, Lead Counsel were nonetheless able to develop a case

27   sufficiently strong to tentatively overcome the heightened pleading standard of the PSLRA, and

28   persuade the Settling Defendants, and their insurance carriers, to settle on terms that are favorable

to the Settlement Class.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9.

The parties' negotiations were thorough, and the Partial Settlement was reached without collusion after good-faith bargaining among the parties and the Settling Defendants' insurance carriers.  Lead Counsel, defense counsel, and the insurance carriers participated in at least a dozen telephonic and in-person discussions, two face-to-face meetings, and an entire day negotiating in person.  *See* Tuccillo Decl. ¶¶10-11, 13, 18.  Through these months of effort and discussion, Lead Counsel negotiated a fair Partial Settlement, taking into account the costs and risks of continued litigation, including the substantial risk that the claims of Plaintiffs and the class against KaloBios would be subordinated and extinguished in its bankruptcy proceeding.

Lead Counsel, who has demonstrated a high degree of competence in the litigation, and Plaintiffs strongly believe that the Partial Settlement is a fair, adequate, and reasonable resolution of the Class' dispute, which is further evidence that it is fair, reasonable and adequate.  *See* Fatema Decl. ¶5; Ingram Decl. ¶5; Gudlavenkatasiva Decl. ¶5; Saifulislam Decl. ¶5; Isensee Decl. ¶5.  Under the regime put in place with the enactment of the PSLRA, the Plaintiffs' support for a settlement should be accorded "special weight because [the Plaintiffs] may have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).  Plaintiffs' strong support of the Partial Settlement, as well as the arm's-length nature of the negotiations here, further favor its approval.

### 6.    The Absence of a Governmental Participant

Although the SEC has filed a complaint related to Shkreli's fraud on Retrophin shareholders, there was no governmental participant litigating on behalf of or alongside the Class in this Action.  Without this private civil action there would have been no recovery for the Class.  Accordingly, this factor supports approval of the Partial Settlement.

#### 7.      The Reaction Of The Settlement Class Favors Approval

The reaction of the Settlement Class to the Partial Settlement is another factor in determining the adequacy of the Partial Settlement. *See Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. 06-cv-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). To date, ***no Settlement Class Member has objected*** to the Partial Settlement, the Plan of Allocation, Lead Counsel's fee and expense request, or Plaintiffs' requests for compensatory awards, and ***no Settlement Class Member has requested to be excluded from the Settlement Class***, despite the mailing of over 18,500 notices.[10]  *See* Bravata Decl. ¶¶11-12.

#### 8.      The Risk of Collusion Among the Negotiating Parties

The Partial Settlement displays none of the *Bluetooth* signs of a collusive agreement. *In re LinkedIn*, 309 F.R.D. at 589.  Here, a gross recovery of $1,500,000.00 ($250,000.00 of it paid by the bankrupt company) and $300,000 shares of KaloBios stock were put into escrow as the Settlement Consideration, out of which Lead Counsel, on behalf of all Plaintiffs' Counsel, is seeking an award of fees and expenses; the Partial Settlement does not include a clear sailing agreement; and any remaining funds remain in the Partial Settlement fund to be distributed to Settlement Class Members, or *cy pres* recipients - no amount reverts to Settling Defendants.

### III.    <u>NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS</u>

Lead Plaintiffs have provided the Settlement Class with adequate notice of the Partial Settlement. The Claims Administrator disseminated over 18,500 copies of the Court-approved short-form Notice to potential Settlement Class Members and their nominees who could be identified with reasonable effort, from multiple sources.  Bravata Decl. ¶¶5-6.  This Notice directed Settlement Class Members to the Claims Administrator's website, where, among other things, the Proof of Claim and Release Form, long-form Notice, and Stipulation, along with the revised

---

[10]      Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity to "thoroughly examine counsel's fee motion," the deadline for filing any objections, as extended, is May 18, 2017.

1   deadlines approved by the Court, were posted. *Id.* at ¶4.  The Claims Administrator also sent 1,461

2   letters to the Nominee Account Holders and Institutional Groups contained on a master mailing list

3   of the 791 largest banks and brokerage companies, as well as 670 mutual funds, insurance

4   companies, pension funds, and money managers that may have traded or owned KaloBios common

5   stock in their clients' or their own accounts.  *Id.* at ¶¶4-5.  The Court-approved Summary Notice

6   was published over the *GlobeNewswire* on February 9, 2017.  *Id.* at ¶8.  The Claims Administrator

7   also sent the Depository Trust Company ("DTC") the Notice for the DTC to publish on the Legal

8   Notice System ("LENS"), which provides DTC participants the ability to search and download

9   legal notices and receive email alerts based on particular notices or particular CUSIPs once the legal

10  notice is posted.  *Id.* at ¶7.  This method of giving notice, previously approved by the Court, is

11  appropriate because it directed notice in a "reasonable manner to all class members who would be

12  bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

13       The Notice program provided the necessary information for Settlement Class Members to

14  make an informed decision regarding the proposed Partial Settlement.  It informed the Settlement

15  Class of, among other things: (1) the amount of the Partial Settlement; (2) the reasons why the

16  parties proposed it; (3) the estimated average recovery per damaged share of KaloBios common

17  stock; (4) that Lead Counsel would apply for an award of attorneys' fees not to exceed 25% of the

18  Settlement Fund, litigation expenses not to exceed $50,000.00, and compensatory awards to named

19  Plaintiffs in the amount of $500.00 each; (5) the name, telephone number, and address of

20  representatives of Lead Counsel available to answer questions; (6) the right of Settlement Class

21  Members to object to the Partial Settlement or to seek exclusion from the Settlement Class, and the

22  consequences thereof; and (7) the dates and deadlines, as updated, for certain Partial Settlement-

23  related events. *See* Stipulation, Exhibit B1; 15 U.S.C. § 78u-4(a)(7).  It further explained that the

24  Net Partial Settlement Fund will be distributed to eligible Settlement Class Members who submit

25  valid and timely Proof of Claim Forms under the Plan of Allocation, which it described.  *Id.*

26       Accordingly, the Notice program was sufficient because it "generally describes the terms of

27  the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

28  forward and be heard."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *see also*

*In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008). In sum, it fairly apprised Settlement Class Members of their rights with respect to the Partial Settlement, was the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Fed. R. Civ. P. 23, the PSLRA, and due process. *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation. Plaintiffs now request that the Court give final approval of the Plan of Allocation, for the purpose of administering the Partial Settlement. The proposed Plan of Allocation was fully described in the long-form Notice posted on the Claims Administrator's website, to which Settlement Class Members were directed via dissemination of the court-approved short-form Notice and the published Summary Notice, and has a rational basis. *See* Bravata Decl. ¶4; Stipulation, Exhibits B1 at 14-15 and C. Here, the proposed Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Defendants' alleged false and misleading statements and material omissions, based on factors such as when and at what prices the Claimant purchased and sold KaloBios common stock. *Id*. The Plan of Allocation is very straightforward, as the Settlement Class Period is just a month long, and bases recognized losses for any given Settlement Class member on the difference between their purchase price(s) and the price(s) for which they either sold their shares on December 17, 2015 (before trading was halted) or on January 13, 2016 (after trading resumed), or if not sold on those dates, then the closing price on January 13, 2016. *Id*. The Plan of Allocation was formulated by Lead Counsel, in consultation with a damages expert, with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. *See* Tuccillo Decl. ¶22; *Riker v. Gibbons*, No. 08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

1    Assessment of the adequacy of a plan of allocation in a class action "is governed by the

2    same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

3    reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  "It is reasonable to allocate the

4    settlement funds to class members based on the extent of their injuries or the strength of their claims

5    on the merits." *Van Wingerden v. Cadiz, Inc.*, 2017 U.S. Dist. LEXIS 18800 at *25 (C.D. Cal. Feb.

6    8, 2017) (quoting *Omnivision*, 559 F. Supp. 2d at 1045); *see also Nguyen v. Radient Pharms. Corp.*,

7    No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities

8    class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to

9    every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*,

10   the relative strengths and weaknesses of class members' individual claims and the timing of

11   purchases of the securities at issue.").  An allocation formula need only have a reasonable, rational

12   basis, particularly if recommended by experienced and competent class counsel." *Id.*

13   Here, there have been **no objections** and **no exclusion requests** from any potential

14   Settlement Class Members, despite over 18,500 notices mailed, further supporting its approval.

15   *Heritage*, 2005 WL 1594403, at *39-40 ("In light of the lack of objectors to the plan of allocation at

16   issue, and the competence, expertise, and zeal of counsel in bringing and defending the action, the

17   Court finds the plan of allocation as fair and adequate.").  For these reasons, Lead Counsel believes

18   the Plan of Allocation fairly compensates Settlement Class Members and should be approved.

19   **V.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED**

20       **A.    The Settlement Class Satisfies The Requirements of Rule 23(a)**

21   To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class must be so

22   numerous that joinder of all members is impracticable.  This Action clearly meets that requirement:

23   KaloBios' securities were listed on the NASDAQ, a national exchange, and widely traded.  So far,

24   over 18,500 Notices have been mailed to potential Class Members.  Bravata Decl., ¶¶5-6.  Joinder

25   of these thousands of Class Members would be impracticable.  *See In re UTStarcom Sec. Litig.*, No.

26   04-cv-04908 JW, 2010 WL 1945737 at *4 (N.D. Cal. May 12, 2010).

27   To satisfy commonality under Fed. R. Civ. P. 23(a)(2), there must be questions of either law

28   or fact common to the class.  This requirement is readily met here where questions common to all

1   Class Members include: (1) whether the Settling Defendants violated the Exchange Act as alleged;

2   (2) whether the press releases, SEC filings, and other statements issued by the Settling Defendants

3   failed to accurately reflect KaloBios' business and prospects and risks related to Shkreli's misdeeds,

4   his assumption of leadership and control over KaloBios, and his purported promises to lead and

5   fund its continued operations; (3) whether Settling Defendants Martell, Cross, and KaloBios issued

6   false and misleading statements during the Class Period, and whether Martell and Cross caused

7   KaloBios to do so; (4) whether the Settling Defendants acted knowingly or recklessly in issuing

8   false and misleading public statements; (5) whether the prices of KaloBios securities during the

9   Class Period were artificially inflated due to the Settling Defendants' conduct; and (6) the extent of

10  damages suffered by the Settlement Class and the appropriate measure thereof.  Securities actions

11  containing common questions such as these have been held to be prime candidates for class

12  certification.[11]  Additionally, because the core complaint of all Settlement Class Members is that

13  they purchased KaloBios shares at artificially inflated prices, the commonality requirement is

14  satisfied.

15        Typicality under Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the

16  representative parties must be typical of the class's claims. *See Amchem Prods. v. Windsor*, 521

17  U.S. 591, 625 (1997) (common issues test readily met in securities cases).  Differences in the

18  amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of

19  purchase are insufficient to defeat class certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F.

20  Supp. 598, 606 (N.D. Cal. 1991).  In other words, typicality exists "even where factual distinctions

21  exist between the claims of the named representative and the other class members." *Danis v. USN*

22

23

---

24  [11]    *See In re UTStarcom Sec. Litig.*, No. 04-cv-04908 JW, 2010 WL 1945737 at *4 (N.D. Cal.
    May 12, 2010) (common questions of law and fact as to whether Defendants engaged in fraudulent
25  scheme, the stock was artificially inflated, and the misstatements and omissions caused class
    members to suffer economic losses).  Here, there are common questions of law and fact because
26  Defendants' alleged misconduct affected all Settlement Class Members in the same manner; *i.e.*,
    Defendants' false and misleading statements and omissions artificially inflated the price of
27  Kalobios Shares which, when corrected, damages the Settlement Class Members.  *See, e.g. In re
    VeriSign, Inc. Sec. Litig.*, No. 02-cv-02270-JW, 2005 WL 7877645, at *10 (N.D. Cal. Jan. 13,
28  2005); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002).

1   *Commc'ns, Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999); *see also West v. Circle K Stores, Inc.*, No.

2   CIV-S-04-0438-WBS-GGH, 2006 WL 1652598, at *5 (E.D. Cal. June 13, 2006).

3         Plaintiffs' claims are typical of those of the other Settlement Class Members and are based

4   on the same legal theories. *See In re UTStarcom*, 2010 WL 1945737, at *5 (test for typicality is

5   "whether 'other members have the same or similar injury, whether the action is based on conduct

6   which is not unique to the named plaintiffs, and whether other class members have been injured by

7   the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

8   1992)).  Here, Plaintiffs, like the other Settlement Class Members, purchased KaloBios shares in the

9   same manner and pursuant to the same alleged fraud during the same time period. *See In re*

10   *VeriSign*, 2005 WL 7877645, at *10 ("Here, the issues common to the class – namely, the nature

11   and extent of Defendants' alleged misrepresentations and the like – are predominant."); *see also In*

12   *re Emulex*, 210 F.R.D. at 721.  Moreover, Plaintiffs are not subject to any unique defenses that

13   could make them atypical. *See Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 266-67 (N.D. Cal.

14   2011); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 635-36 (C.D. Cal. 2009).

15         Finally, Plaintiffs satisfy the adequacy prong of Fed. R. Civ. P. 23(a)(4), as they have fairly

16   and adequately protected the Settlement Class's interests.  To satisfy this requirement, the proposed

17   class representative must be free of interests antagonistic to other class members, and counsel

18   representing the class must be qualified, experienced and capable of conducting the litigation. *See*

19   *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at

20   1020.  Here, Plaintiffs' interests in obtaining a fair, reasonable, and adequate settlement of the

21   claims asserted are consistent with those of the Settlement Class Members, since, as described

22   above, they have typical and coextensive claims, and under the proposed Plan of Allocation,

23   Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement

24   Class.  Moreover, Plaintiffs are represented by highly-qualified counsel with extensive experience

25   in securities class action litigation.  Plaintiffs and Lead Counsel have prosecuted this Action,

26   including having deftly navigated KaloBios's complex, fast-paced bankruptcy, to obtain the Partial

27   Settlement (which includes payment of $250,000.00 by the bankrupt company) while the

28   opportunity remained to do so, engaged in extensive and intensive negotiations with Settling

Defendants and their insurance carriers, and obtained a proposed Partial Settlement representing a significant percentage of total aggregate damages.  Plaintiffs have regularly communicated with Lead Counsel throughout the Action, and have fairly and adequately protected and advanced the interests of the Settlement Class. *See* Fatema Decl. ¶¶4, 6; Ingram Decl. ¶¶4, 6; Gudlavenkatasiva Decl. ¶¶4, 6; Saifulislam Decl. ¶¶4, 6; Isensee Decl. ¶¶4, 6.   Thus, Plaintiffs are adequate representatives of the Settlement Class, and Lead Counsel, which is one of the oldest plaintiff-side securities litigation firms in the U.S. (*see* Tuccillo Decl. Exhibit 3) is qualified, experienced, and capable of prosecuting this Action in accordance with Fed. R. Civ. P. 23(a)(4).

## B.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

This Action also meets the requirements of Rule 23(b)(3).  Questions of law or fact common to the Settlement Class predominate over questions affecting only individual members, and a class action is the superior method of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S.Ct. 2179, 2184 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519. 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. 09-cv-02338 RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010).

"[C]ommon issues need only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 345 (N.D. Ohio 2001).  When certifying a class for settlement purposes only, the standards for satisfying the class certification element of "superiority" under rule 23(b)(3) are relaxed because the Court does not need to consider the difficulties of managing the class in future litigation or at trial.  *See, e.g., Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011); *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05-cv-2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).

As discussed above, there are a number of common questions of law and fact that would warrant class certification of this matter.  These questions clearly predominate over individual questions because the Settling Defendants' alleged conduct impacted all Settlement Class Members in the same way.  *See, e.g., In re Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over

MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT, CLASS CERTIFICATOIN, AND PLAN OF ALLOCATION - Case No. 5:15-cv-05841-EJD

24

any individual questions of reliance and damages."). Issues relating to the Settling Defendants' liability (including as to falsity, materiality, scienter, and loss causation) are common to all Settlement Class Members. *See id.*; *see also In re LDK Solar*, 255 F.R.D. at 530; *In re UTStarcom*, 2010 WL 1945737, at *9 (same); *In re Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation defendants made during the class period and are common to the class.").

Because the Settlement Class meets the requirements of Rules 23(a) and (b)(3), there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiffs as Class Representatives, and appointing Lead Counsel as counsel for the Settlement Class. *See*, *e.g.*, *Gittin v. KCI USA, Inc.*, No. 09-cv-05843 RS, 2011 WL 1467360, at *19 (N.D. Cal. Apr. 12, 2011).

## VI.   <u>CONCLUSION</u>

The complexity of the facts at issue, the substantial expenses if this litigation were to continue to trial, the costs and risks associated with KaloBios's parallel bankruptcy proceeding, and the risks attendant to prevailing on any motion to dismiss, summary judgment, trial and subsequent appeals, weigh heavily in favor of accepting a recovery of $1,500,000.00 cash and 300,000 shares of KaloBios stock now, via the Partial Settlement, on behalf of the Settlement Class. The Partial Settlement presents a sizable, immediate as well as long-term benefit to Settlement Class Members and Plaintiffs, while preserving the right to continue litigation against Defendant Shkreli. Accordingly, Plaintiffs respectfully request that this Court approve the Partial Settlement, Notices, and Plan of Allocation as fair, reasonable and adequate; permanently enjoin the assertion of any claim that arise from or relate to the subject matter of the Action against the Settling Defendants; dismiss the Action with prejudice as to the Settling Defendants; certify the Settlement Class for settlement purposes; and enter Final Judgment in the form attached as Exhibit 1 hereto.

Dated: May 11, 2017                    **POMERANTZ LLP**


                                       _s/ Matthew L. Tuccillo_
                                       Matthew L. Tuccillo

                                       Jennifer Pafiti
                                       **POMERANTZ LLP**
                                       468 North Camden Drive
                                       Beverly Hills, CA 90210
                                       Telephone: (818) 532-6449
                                       E-mail: jpafiti@pomlaw.com

                                       Marc I. Gross
                                       Jeremy A. Lieberman
                                       Matthew L. Tuccillo
                                       **POMERANTZ LLP**
                                       600 Third Avenue, 20th Floor
                                       New York, New York 10016
                                       Telephone: (212) 661-1100
                                       Facsimile: (212) 661-8665
                                       Email: migross@pomlaw.com
                                       jalieberman@pomlaw.com
                                       mltuccillo@pomlaw.com

                                       Patrick V. Dahlstrom
                                       **POMERANTZ LLP**
                                       10 South La Salle Street, Suite 3505
                                       Chicago, Illinois 60603
                                       Telephone: (312) 377-1181
                                       Facsimile: (312) 377-1184
                                       Email: pdahlstrom@pomlaw.com

                                       _Counsel for Plaintiffs and Proposed Lead_
                                       _Counsel for the Settlement Class_

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lionel Z. Glancy
Robert V. Prongay
Ex Kano S. Sams II
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 432-1495
Email: lglancy@glancylaw.com
rprongay@glancylaw.com
esams@glancylaw.com

William B. Federman
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112

*Additional Counsel for Plaintiffs*