Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
Email: jpafiti@pomlaw.com

Marc I. Gross
Jeremy A. Lieberman
Matthew L. Tuccillo
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: migross@pomlaw.com
jalieberman@pomlaw.com
mltuccillo@pomlaw.com

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE KALOBIOS PHARMACEUTICALS, INC. SECURITIES LITIGATION<br>_____<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:15-cv-05841-EJD<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 8, 2017<br>Time: 9:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

### NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS

**PLEASE TAKE NOTICE** that, pursuant to the Court's Order Granting Preliminary Approval of Partial Settlement issued on January 20, 2017 and subsequent Order of the Court issued on March 16, 2017 extending the deadlines, on June 8, 2017 at 9:00 a.m. or as soon thereafter as counsel may be heard, at the United States Court, Northern District of California, Courtroom 4, 5th Floor, San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, before the Honorable Edward J. Davila, Lead Plaintiffs Kaniz Fatema ("Fatema"), Zeke Ingram ("Ingram"), Bhaskar R. Gudlavenkatasiva ("Gudlavenkatasiva"), and Abuhena M. Saifulislam ("Saifulislam") (the "Lead Plaintiffs") and Plaintiff Austin Isensee ("Isensee") (collectively the "Plaintiffs") will move for an order awarding attorneys' fees and authorizing reimbursement of expenses, payable to Lead Counsel for distribution, in Lead Counsel's discretion, among Lead Counsel and the other Plaintiffs' Counsel, and for compensatory awards to the Plaintiffs.[1]

The requested award of fees and expenses and the Plaintiff compensatory awards are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases. This motion is supported by these papers submitted herewith: Plaintiffs' Notice of Motion and Motion for Final Approval of Partial Settlement, Class Certification and Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Final Approval Brief"); Declaration of Matthew L. Tuccillo in Support of Both Plaintiffs' Motion for Final Approval of Partial Settlement, Class Certification and Plan of Allocation and Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Compensatory Awards for Plaintiffs and supporting exhibits ("Tuccillo Decl."); the Declaration of Lionel Z. Glancy in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards for Plaintiffs and supporting exhibits ("Glancy Decl."); the

---

[1] Along with Lead Counsel Pomerantz LLP ("Pomerantz" or "Lead Counsel"), the other Plaintiffs' Counsel that worked on this matter, under the supervision of Lead Counsel, were Glancy Prongay & Murray LLP ("Glancy") and Federman & Sherwood ("Federman"). Together, Lead Counsel, Glancy, and Federman are referred to herein as "Counsel."

Declaration of William B. Federman in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards for Plaintiffs and supporting exhibits ("Federman Decl."); Declaration of Josephine Bravata Concerning the Mailing of Notice, Publication of Summary Notice, Exclusion Requests Received and Objections Submitted ("Bravata Decl."); Declarations of Kaniz Fatema ("Fatema Decl."), Zeke Ingram ("Ingram Decl."), Bhaskar R. Gudlavenkatasiva ("Gudlavenkatasiva Decl."), Abuhena M. Saifulislam ("Saifulislam Decl."), Austin Isensee ("Isensee Decl.") in support hereof; the Stipulation of Settlement and its exhibits; and the other filings in this case, and such other and further representations as Lead Counsel may make at the hearing on this matter.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Lead Counsel's request for an award of attorneys' fees and expenses, payable to Lead Counsel from the settlement fund for distribution in Lead Counsel's discretion among Counsel, should be granted.

2.      Whether Counsel's expenses were reasonable and necessarily incurred to achieve the benefit obtained and should be reimbursed from the settlement fund.

3.      Whether Plaintiffs' requests for $500.00 each ($2,500.00 total) in reimbursement for their time, costs and expenses directly relating to their representation of the Class should be granted and paid from the settlement fund.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .............................................................................................. 4

    A.   Factual Allegations, Procedural History and Settlement Negotiations ................... 4

    B.   Specific Efforts of Lead Counsel .......................................................... 4

ARGUMENT ....................................................................................................... 6

III. PLAINTIFFS' COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS'
    FEES AND REIMBURSENT OF EXPENSES FROM THE COMMON FUND ............. 6

    A.   Plaintiffs' Counsel is Entitled to an Award of Attorneys' Fees From the
        Common Fund ....................................................................................... 6

    B.   A Reasonable Percentage of the Common Fund Recovered Is an
        Appropriate Approach to Awarding Attorneys' Fees in Common Fund
        Cases ..................................................................................................... 7

    C.   The Ninth Circuit's 25% Benchmark Award is Reasonable in this Case ............. 9

    D.   Relevant Ninth Circuit Factors Support the Requested Award of Attorneys'
        Fees ..................................................................................................... 10

        1.   Lead Counsel Achieved an Excellent Result for the Class ....................... 11

        2.   Risks of Litigation ................................................................... 13

        3.   The Contingent Nature of the Fee and the Financial Burden Carried
            by Counsel ............................................................................... 15

        4.   The Skill Required and the Quality of the Work ...................................... 16

        5.   A Lodestar Cross-Check Shows the Fee Request is Reasonable ............. 18

        6.   The Settlement Class's Reaction to the Fee Request ................................ 20

    E.   Counsel's Expenses are Reasonable and Were Necessary to Achieve the
        Benefit Obtained ................................................................................... 20

    F.   The Requested Awards to Plaintiffs Should Be Approved ................................. 22

IV.  CONCLUSION ............................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

## <u>Cases</u>

4

*Abrams v. Lightolier Inc.*,
5
    50 F.3d 1204 (3d Cir. 1995) ................................................................................................21

6
*Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB,
    2011 WL 1883188 (E.D. Cal. Jan. May 17, 2011) .............................................................21

7

*Anixter v. Home-Stake Prod. Co.*,
8
    77 F.3d 1215 (10th Cir. 1996) .............................................................................................16

9
*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) .................................................................................................16
10

11
*Bateman Eichler, Hill Richards, Inc., v. Berner*,
    472 U.S. 299 (1985) ..............................................................................................................9

12
*Behrens v. Wometco Enters., Inc.*,
13
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd sub nom.,* 899 F.2d 21 (11th Cir. 1990) .....................16

14
*Bellinghausen v. Tractor Supply Co*.,
    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................................10
15

16
*Berkey Photo, Inc. v. Eastman Kodak Co.*,
    603 F.2d 263 (2d Cir. 1979) ...............................................................................................16

17
*Blum v. Stenson*,
18
    465 U.S. 886, 900 n.16 (1984) ..............................................................................................7

19
*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ..............................................................................................................6
20

21
*Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS,
    2011 WL 2648879 (E.D. Cal. June 30, 2011) ....................................................................13

22
*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
23
    8 F.3d 722 (10th Cir. 1993) .................................................................................................21

24
*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ...............................................................................................7
25

26
*Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK,
    2011 WL 4526673 (N.D. Cal. June 30, 2011) ....................................................................23

27
*Camden I Condo. Ass'n, Inc. v. Dunkle*,
28
    946 F.2d 768 (11th Cir. 1991) ...............................................................................................7

*Central Railroad & Banking Co. of Ga. v. Pettus*,
    113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885) ....................................................8

*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008)...............................................................13

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ..........................................................................20

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC,
    2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016)................................18,19

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002).............................................................................18

*Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS,
    2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ....................................................14

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)..............................................................................18

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991)................................................................................7

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994).................................................................................21

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012)..........................................................................16

*In Re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ..............................................................8, 10

*In re Am. Apparel, Inc. S'holder Litig.*, No. CV-10-06352-MMM-JCGx,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ..............................................9, 13

*In re Am. Apparel S'holder Litig.*, No. 10-cv-06352 MMM,
    2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .............................17, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011).............................................................................8, 9

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ..............................................................13

*In re Businessland Sec. Litig.*, No. C-90-20476-RFP,
    1991 WL 427887 (N.D. Cal. June 14, 1991) ...................................................20

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..............................................................................16

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................................18

*In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .........................................................................14

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................................16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ..........................................................................................23

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)....................................................................................................7

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX)
  2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................................................14, 20

*In re Heritage Bond Litig.*,
  233 F. App'x 627 (9th Cir. 2007) ......................................................................................7, 16

*In re Heritage Bond Litig.*, No. 02-ML-1475 DT
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................................12, 16

*In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC,
  2014 WL 6473044 (S.D. Cal. Nov. 18, 2014) ........................................................................21

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).....................................................................................14, 18

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................................11, 16, 21

*In re JDS Uniphase Corp. Securities Litigation*, No. C-02-1486-CW,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).......................................................................16

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-cv-7670,
  MDL 2103, 2011 U.S. Dist. LEXIS 157910 (N.D. Ill. 2011).....................................................23

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) (J. Davila) ........................................................................22

*In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD,
  2015 WL 428105 (N.D. Cal. Jan. 30, 2015) .........................................................................21

*In re Media Vision Tech. Sec. Lit.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ....................................................................................21

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010)................................................................................................20

*In re OmniVision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................8, 12, 13, 16

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015)...............................................................................23

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)..................................................................................13

*In re Public Service Co. of New Mexico*, No. 91-0536M,
    1992 WL 278452 (S.D. Cal. July 28, 1992) ........................................................17

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ........................................9

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................9

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295, 305 (1st Cir. 1995) .............................................................................7

*In re Veritas Software Corp. Sec. Litig.*,
    396 F. App'x 815 (3d Cir. 2010)...........................................................................23

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d. Cir. 1986) ...................18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)......................................................................7, 13, 15, 19

*In re World Trade Ctr. Disaster Site Litig.*,
    754 F.3d 114 (2d Cir. 2014)...................................................................................7

*In re Xcel Energy, Inc., Sec., Derivative & ''ERISA'' Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................23

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996)....................................................................................7

*Knight v. Red Door Salons, Inc*., No. 08-01520 SC,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009).....................................................10, 16

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS,
    2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) .....................................................21

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993).......................................................................21

*Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS,
    2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ......................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*,
 886 F.2d 268 (9th Cir. 1989)...........................................................................7, 8

*Powers v. Eichen*,
 229 F.3d 1249 (9th Cir. 2000)................................................................................9

*Rawlings v. Prudential-Bache Props., Inc.*,
 9 F.3d 513 (6th Cir. 1993)......................................................................................7

*Rodriguez v. West Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009)................................................................................22

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990)................................................................................7

*Stanger v. China Elec. Motor, Inc.*,
 812 F.3d 734 (9th Cir. 2016)........................................................................15, 19

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003)................................................................................22

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993)..................................................................................8

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)................................................................................................9

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993)....................................................................................7

*Van Vranken v. Atlantic Richfield Co.*,
 901 F. Supp. 294 (N.D. Cal. 1995) ................................................................13, 19

*Vincent v. Hughes Air West, Inc.*,
 557 F.2d 759 (9th Cir. 1977)..................................................................................6

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002)..........................................8, 10, 11, 13, 15, 16, 18, 19

### Statutes

15 U.S.C.A. § 77z-1(a)(6)..........................................................................................8

15 U.S.C.A. § 78u-4(a)(6)..........................................................................................8

15 U.S.C. § 78u-4(b)..................................................................................................7

15 USCS § 78u-4......................................................................................................22

PSLRA ..................................................................................7, 8, 9, 14, 15, 22

1

<u>**Rules**</u>

2   Fed. R. Civ. P. 23(e)...............................................................................................................1

3   FED. R. CIV. P. 23(h) .............................................................................................................7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiffs Fatema, Ingram, Gudlavenkatasiva, and Saifulislam and Plaintiff Isensee (collectively the "Plaintiffs"),[2] individually and on behalf of all other members of the Settlement Class, respectfully move this Court for an Order: (1) awarding attorneys' fees of **25%** of the Settlement Fund of $1,500,000.00 in cash and 300,000 shares of common stock of KaloBios Pharmaceuticals, Inc. ("KaloBios" or the "Company"), payable to Lead Counsel for distribution, in Lead Counsel's discretion, among Counsel; (2) granting reimbursement of **$26,124.02** in reasonable and necessary expenses that were incurred by Counsel in prosecuting this Action, likewise payable to Lead Counsel for distribution among Counsel; and (3) approving compensatory awards of **$500.00 each** for the Plaintiffs.

## I.    INTRODUCTION

Under the direction of Lead Counsel, all Counsel undertook the prosecution of this Action on a contingency fee basis, spending **809.35 hours** in the aggregate, worth a total of **$517,026.25** in heretofore uncompensated lodestar, and incurring a total of **$26,124.02** in unreimbursed fees and out-of-pocket expenses through the course of the litigation leading up to and including the Partial Settlement and related efforts (but excluding the time since spent in litigation directed solely at Defendant Shkreli).  *See* Tuccillo Decl. ¶¶27, 29; Glancy Decl. ¶¶4-5; Federman Decl. at ¶¶5-6.  Through these efforts, Lead Counsel obtained a Partial Settlement for a gross recovery of one million five hundred thousand dollars ($1,500,000.00) in cash and three hundred thousand (300,000) shares of KaloBios common stock.  This Partial Settlement is an excellent benefit to the Settlement Class, particularly given KaloBios's bankruptcy, the risks of further litigation against the Settling Defendants, and the simultaneous preservation of claims against Defendant Shkreli that continue to be litigated.  Achieved under intense time pressures dictated by KaloBios's simultaneous bankruptcy proceeding, in which claims by certain other similar investor-claimants were extinguished, the proposed Partial Settlement is even more impressive when compared to recoveries in other comparable securities class actions.  As compensation for

---

[2]    Unless otherwise defined, capitalized terms herein have the same meanings as in the Stipulation and Agreement of Partial Settlement (Dkt. No. 58-1) (the "Stipulation").

their efforts, Lead Counsel respectfully requests an award of attorneys' fees in the amount of twenty-five percent (25%) of the Settlement Fund, to be payable to Lead Counsel for distribution among Counsel in Lead Counsel's discretion.  This requested fee award is within the range typically awarded in similar cases in the Ninth Circuit, and represents the 25% benchmark often invoked in this Circuit.

A cross-check against lodestar results in a negligible multiplier of 1.06,[3] and confirms the fairness and reasonableness of the requested fees.  Counsel spent over 809.35 hours of professional time in the aggregate in prosecuting the Action against the Settling Defendants and achieving the Partial Settlement. *See* Tuccillo Decl. ¶ 27; Glancy Decl. ¶4; Federman Decl. at ¶5. Significantly, Lead Counsel has excluded from these calculations not only any time incurred preparing this Motion (as is customary), but also all time devoted to the continued prosecution of the action solely as against Defendant Shkreli, which has included work to investigate and prepare a further amended complaint and, thereafter, to brief and argue Shkreli's motion to dismiss it.  Inclusion of that additional time would have significantly reduced the reported lodestar.

Lead Counsel also seek reimbursement of the out-of-pocket expenses Counsel incurred in prosecuting these claims in the total amount of $26,124.02, with such amount to be payable to Lead Counsel for distribution among Counsel.  *See* Tuccillo Decl. ¶29; Glancy Decl. ¶5; Federman Decl. at ¶6.   The expenses are reasonable, were necessarily incurred as part of the successful prosecution of this Action, and are of the kind regularly reimbursed by courts within this Circuit.  Significantly, they are roughly half the figure reported in the Notice that was distributed to the Settlement Class, which generated ***no objections***.

Additionally, Plaintiffs seek compensatory awards of $500.00 each ($2,500.00 total) for their personal time and effort dedicated to prosecuting this Action, including representing the Settlement Class, overseeing the efforts of Counsel through periodic communications with Lead

---

[3]      This multiplier is the result of dividing the proposed fee award by the product of the total lodestar incurred by Counsel (with such lodestar calculated as the number of hours of each timekeeper devoted to the case against Settling Defendants multiplied by each timekeeper's reasonable hourly rate).

Counsel, and securing the Partial Settlement.   *See* Fatema Decl. ¶4; Ingram Decl. ¶4; Gudlavenkatasiva Decl. ¶4; Saifulislam Decl. ¶4; Isensee Decl. ¶4.

For the reasons set forth more fully below, Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should thus be awarded by the Court, along with the Plaintiff compensatory awards.

As ordered by the Court in its Preliminary Approval Order (Dkt. No. 75), copies of the short-form Notice of Proposed Partial Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Notice") have been disseminated to over 18,500 potential Settlement Class Members and nominees.[4]   Bravata Decl. ¶¶5-6.   The Notice directed Settlement Class Members to the Claims Administrator's website, where the Proof of Claim and Release Form, long-form Notice, and Stipulation were posted.   *Id.* at ¶4.   These materials stated that Plaintiffs' Counsel would apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, litigation expenses not to exceed $50,000.00, and compensatory awards to named Plaintiffs in the amount of $500.00 each for their contributions to this Action.   *See* Stipulation, Exhibit B1 at 2.   **To date, no Settlement Class Member has filed an objection to these requests**.[5]   *See* Bravata Decl. ¶12.   The favorable response of the Settlement Class also strongly supports the reasonableness of the requested attorneys' fee and expense awards and compensatory awards to the named Plaintiffs.

Accordingly, Lead Counsel respectfully requests that the Court grant this Motion.

---

[4]      The Claims Administrator also sent 1,461 letters to the Nominee Account Holders and Institutional Groups contained on a master mailing list of the 791 largest banks and brokerage companies, as well as 670 mutual funds, insurance companies, pension funds, and money managers that may have traded or owned KaloBios common stock in their clients' or their own accounts.   Bravata Decl. ¶¶4-5.   The Court-approved Summary Notice was published over the *GlobeNewswire* on February 9, 2017.   *Id.* at ¶8.   In addition, the Claims Administrator also sent the Depository Trust Company ("DTC") the Notice for the DTC to publish on the Legal Notice System ("LENS"), which provides DTC participants the ability to search and download legal notices as well as receive email alerts based on particular notices or particular CUSIPs once the legal notice is posted.   *Id.* at ¶7.

[5]      The deadline for filing any such objection, as extended, is May 18, 2017.   To the extent any such objections are filed, Lead Counsel will respond to each such filing by May 25, 2017.

## II.     BACKGROUND

### A.     Factual Allegations, Procedural History and Settlement Negotiations

The relevant facts supporting the motion along with the procedural history and settlement negotiations are set forth in detail in the Final Approval Brief and the accompanying Tuccillo Decl., submitted herewith.  *See* Final Approval Brief at 1-4; Tuccillo Decl. ¶¶4-20.

### B.     Specific Efforts of Lead Counsel

In this Action, Plaintiffs were required to prove that Settling Defendants made false and misleading statements or omitted to disclose material facts regarding, *inter alia*, Defendant Shkreli's proposals to lead and to fund KaloBios's continued operations, Shkreli's and his cronies' qualifications and abilities to do so, and KaloBios's operational status and prospects in light of that leadership and funding, and further, that Settling Defendants did so knowing their statements or omissions to be materially false or misleading, or recklessly disregarding their materially false or misleading nature, and that investors suffered injury as a result thereof.  To successfully prosecute the Action, Lead Counsel engaged in extensive activity, supported at times by the other Plaintiffs' Counsel, in which they:

- Reviewed and analyzed KaloBios's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and industry and investment conference transcripts, and other public statements;

- Collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on KaloBios;

- Reviewed and analyzed stock trading data relating to KaloBios;

- Investigated Defendant Shkreli's practices and histories at previous companies;

- Hired a private investigator that located and interviewed numerous confidential witnesses with knowledge of the events relevant to the allegations in the Action;

- Carefully reviewed the SEC complaint against Shkreli, and the indictments against him and his outside lawyer, and monitored the progress of all actions, criminal and civil, against them;

- Conducted extensive review and analysis of the legal proceedings in KaloBios's Bankruptcy Case to determine how to protect investors' claims against the Company;

- Prepared and filed a $20 million class proof of claim in the Bankruptcy Case before the bar date for filing such claims;

- Drafted several initial complaints and Amended Complaints;

- Consulted with economic experts in the areas of loss causation, market efficiency, and damages;

- Engaged in numerous telephonic resolution-oriented discussions and negotiations with litigation and/or bankruptcy counsel for KaloBios;

- Participated in two face-to-face meetings with litigation and/or bankruptcy counsel for KaloBios where potential resolution options were discussed and negotiated;

- Prepared for and participated in full-day resolution-oriented discussions and negotiations with litigation and bankruptcy counsel for KaloBios, litigation counsel for Defendants Martell and Cross, and representatives from their insurance carriers, including AIG;

- Participated in continued negotiation efforts over the months following the full-day meetings with Settling Defendants;

- Obtained a very favorable verbal agreement to partially settle the Action following extensive arm's length negotiations with counsel for Settling Defendants;

- Participated in continued negotiation efforts over the weeks following the verbal agreement to achieve and finalize the Partial Settlement and document it in the Memorandum of Understanding that was submitted to the Bankruptcy Court for consideration and approval;

- Prepared and delivered alternative versions of the Class 6 bankruptcy ballot correlating to the $20 million proof of claim to bankruptcy counsel for KaloBios to hold in escrow pending the Bankruptcy Court's decision to approve or reject the Partial Settlement;

- Participated in extensive negotiations over the terms of the Stipulation, which was submitted to the Bankruptcy Court in draft form;

- Worked to negotiate and obtain important non-pecuniary concessions in the form of an agreement by Settling Defendants and non-party David Moradi to preserve and produce relevant documents and to appear for depositions as though they were parties to the continued action against Defendant Shkreli;

- Continued work to finalize and file the Stipulation following the Bankruptcy Court's approval of KaloBios's plan of reorganization and Chapter 11 exit plan, including this Partial Settlement;

- Prepared the Partial Settlement motion papers and related documents necessary to provide notice of the Partial Settlement to Class Members, and to obtain preliminary and final approval of the Partial Settlement;

- Obtained competing bids for claims administration work related to the Partial Settlement before selecting the most competitive bidder to serve as Claims Administrator;

- Secured the services of the Escrow Agent, executed a contract for such service, and created the Settlement Escrow Account; and

- Prepared for, traveled to California for, and participated in oral argument on preliminary approval of the Partial Settlement.

*See* Tuccillo Decl. ¶¶7-18, 24.

1

2

3

4

5

6

7

8

9

10

Lead Counsel's efforts to successfully obtain the Partial Settlement have been without compensation of any kind to date, and any potential payment of attorneys' fees is, and always has been, wholly contingent upon the result achieved.  As compensation for these efforts, Lead Counsel respectfully requests this Court to award attorneys' fees of 25% of the Settlement Fund, plus $26,124.02 in unreimbursed expenses incurred by Plaintiffs' Counsel.  Supported by ample case law, such fee request is appropriate compensation for the excellent partial resolution obtained for the Settlement Class, especially where, as here, the requested amount is supported by the lodestar cross-check, the Partial Settlement amount is less than $10 million, and where Counsel has preserved the claims against Defendant Shkreli, from which the Settlement Class may receive additional recovery through continued litigation.

11

**ARGUMENT**

12

13

**III.   PLAINTIFFS' COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND REIMBURSENT OF EXPENSES FROM THE COMMON FUND**

14

**A.   Plaintiffs' Counsel is Entitled to an Award of Attorneys' Fees From the Common Fund**

15

16

17

18

19

20

21

22

23

24

25

26

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[The Supreme Court] has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the funds as a whole.").  "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 493-94 (2d ed. 1986).  The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose

27

28

1
2

skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1300 (9th Cir. 1994).

3
4

**B.     A Reasonable Percentage of the Common Fund Recovered Is an Appropriate Approach to Awarding Attorneys' Fees in Common Fund Cases**

5
6
7
8
9
10
11
12
13
14
15

 The PSLRA, the Federal Rules of Civil Procedure and Ninth Circuit precedent all require that an attorney fee award be reasonable. *See, e.g.*, 15 U.S.C. § 78u-4(b) (total attorneys' fees and expenses awarded by the court are not to exceed a "reasonable percentage" of the recovery); FED. R. CIV. P. 23(h) ("[T]he court may award reasonable attorneys' fees and nontaxable costs"); *In re Heritage Bond Litig.*, 233 F. App'x 627, 631 (9th Cir. 2007).  For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seeks a fee of 25% of the Settlement Fund, to be payable to Lead Counsel for distribution among Plaintiffs' Counsel in Lead Counsel's discretion.  The requested fee for the Partial Settlement on behalf of the Settlement Class is calculated based upon the Settlement Fund amount of $1,500,000.00 and 300,000 shares of KaloBios common stock, with Lead Counsel requesting 25% of both the cash and the stock portions.

16
17
18
19
20
21
22
23

 Both Supreme Court and Ninth Circuit precedent support Lead Counsel's request for a percentage of the Settlement Fund.  In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class."  465 U.S. 886, 900 n.16 (1984).  Further, the Ninth Circuit has expressly approved the use of the percentage-of recovery method in common fund cases.  *See, e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989); *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).[6]  While courts in the Ninth Circuit have discretion to choose

24
25
26
27
28

---

[6]     In fact, percentage-based fee awards in common fund cases have been approved by every Circuit Court that has addressed the issue. *See, e.g., In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988).  The Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden I Condo.*

whether to use either the percentage-of-the-fund or the lodestar plus a risk multiplier method to determine whether a request for attorneys' fees is reasonable, courts in this district often prefer a percentage-of-the-fund approach in common fund cases. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit for the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Indeed, use of the percentage method "appears to be dominant." *In re OmniVision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

The rationale for compensating counsel in common fund cases on a percentage basis is sound. In *Paul, Johnson*, the Ninth Circuit explained the underlying equitable principle:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.
>
> ***
>
> The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (emphasis original) (citations omitted). Additionally, use of the percentage method decreases the burden on the courts by eliminating a full-blown, detailed and time-consuming lodestar analysis, while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

Moreover, using the percentage method is proper in securities fraud cases. The plain language of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C.A. § 78u-4(a)(6); 15 U.S.C.A. § 77z-1(a)(6). "By using this language, 'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal

*Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).

securities class actions.'"  *In re Am. Apparel, Inc. S'holder Litig.*, No. CV-10-06352-MMM-JCGx, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008)); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar misconduct.  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide an effective weapon in the enforcement of the securities laws. *See generally, Bateman Eichler, Hill Richards, Inc., v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc., v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]").

### C.    The Ninth Circuit's 25% Benchmark Award is Reasonable in this Case

The Settlement Fund consists of $1,500,000.00 in cash and 300,000 shares of KaloBios common stock, which was valued at $3.26 per share on May, 18, 2016—the day Plaintiffs verbally agreed to the Partial Settlement but which closed at $2.32 on May 10, 2017.  The instant request for a 25% attorneys' fee can be valued at roughly $549,000.00 – equal to three hundred seventy-five thousand dollars ($375,000) plus 75,000 shares of KaloBios (valued at $174,000.00 based on the May 10, 2017 closing price) – and is clearly within the range of such fees awarded under similar circumstances and is within the range of fees awarded by judges in this District.

The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to $33^{1/3}$% of the total settlement value, with 25% considered the benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (reaffirming 25% benchmark in a common fund case).  However, while this Circuit

considers 25% to be a benchmark for fee awards, in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc*., No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *see also In re Activision Sec. Litig.,* 723 F. Supp. at 1377–78 ("[N]early all common fund awards range around 30%.").

### D.     Relevant Ninth Circuit Factors Support the Requested Award of Attorneys' Fees

Relevant factors in assessing whether the requested fee percentage is appropriate include: (1) the results for the class; (2) the risks for its counsel, (3) whether the fee is within the range typically associated with cases of this kind; (4) the burden on plaintiffs' counsel of prosecuting the case, and (5) the difficulty of the questions presented. *See Vizcaino*, 290 F.3d at 1048-50.  Courts "may adjust [the 25% benchmark] figure upwards or downwards if the record shows special circumstances justifying a departure." *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 260 (N.D. Cal. 2015) (internal citations omitted).  Here, the requested fee percentage is reasonable considering the relevant factors in the Ninth Circuit and a lodestar cross-check.

Here, Lead Counsel aggressively prosecuted this Action with no guarantee of receiving any remuneration and fully aware of the potential difficulties of obtaining a recovery from a Defendant company that had filed for bankruptcy protection.  Throughout this litigation, Lead Counsel has been aware of numerous risks, including the difficulty of protecting investors' claims against KaloBios notwithstanding its bankruptcy; the risk of the ongoing bankruptcy proceedings interfering with the resolution of this Action; the difficulty of satisfying the PSLRA's heightened pleading standards for securities fraud claims, which require Plaintiffs to plead a strong inference that the Settling Defendants acted knowingly or recklessly in issuing statements that were materially false or misleading; the difficulty of surviving class certification; and the difficulty of proving key elements of the case at summary judgment, at trial, and/or on appeal including scienter, loss causation, and damages.

In the face of all of these challenges, all Counsel expended over 809.35 hours in professional services and incurred $26,124.02 in out-of-pocket expenses in their efforts to litigate

against the Settling Defendants and to secure and advance the Partial Settlement,[7] without any compensation or reimbursement of any expenses. *See* Tuccillo Decl. ¶¶27, 29; Glancy Decl. ¶¶4-5; Federman Decl. ¶¶5-6.   An attorney fee award of the 25% benchmark is particularly justified here given the excellent result obtained.   Indeed, the recovery of $1,500,000.00 in cash and 300,000 shares of KaloBios common stock (valued at the $3.26 per share from May 18, 2016) results in a Partial Settlement valued at approximately $2,478,000.00 when the agreement to settle was struck.   Viewed in that light, as compared against the $20 million proof of claim submitted by Plaintiffs in KaloBios's bankruptcy proceeding, the Partial Settlement represents a return of approximately 12.39% of estimated ***total potential*** damages at issue.   Such a return is on the very high end of recoveries obtained in securities class actions. *See infra* Section III.D.1.   The quality of the result is only underscored by the fact that KaloBios itself was in bankruptcy throughout this Action, Lead Counsel secured payment of $250,000.00 from the bankrupt company, and Plaintiffs have preserved the right continue litigating against Defendant Shkreli in the hopes of increasing the recovery.

Accordingly, the excellent result obtained, combined with the substantial risks faced by Plaintiffs and the other factors cited herein, support the requested fee of 25% of the Partial Settlement amount.

**1.    Lead Counsel Achieved an Excellent Result for the Class**

Courts have recognized that the result achieved is an important factor to be considered in making a fee award. *See Vizcaino*, 290 F.3d at 1048; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007).   Here, the Settlement Fund for the Partial Settlement consists of $1,500,000.00 in cash and 300,000 shares of KaloBios common stock (valued at the $3.26 per share from May 18, 2016), which represents a return of approximately 12.39% of total ***possible*** damages recoverable, as based on the $20 million class-wide proof of claim that Plaintiffs filed in KaloBios's bankruptcy.   This recovery is ***notably larger*** than comparable

---

[7]    Counsel have excluded from this Motion their time and lodestar incurred in their additional efforts to litigate the Action solely as against non-settling Defendant Shkreli.   Such efforts have required expenditure of over 500 additional hours, representing over $300,000.00 in additional lodestar not forming the basis of the awards sought herein.

securities class action settlement recoveries as a percentage of estimated damages.  For example, the median recovery in settlements of securities class action lawsuits with damages estimated to be less than $50 million was 6.7% for the year 2015 and was 11.4% for the period 2006 to 2014. *See* "Securities Class Action Settlements: 2015 Review and Analysis," *Cornerstone Research* at 9, excerpts attached as Exhibit 5 to Tuccillo Decl.  This Partial Settlement is nearly twice the comparable median settlement percentage recovery for 2015 and is well above the comparable median settlement recovery for the period 2006 to 2014.  *Id.*  Indeed, courts in this Circuit have recognized that recoveries of *less than 10%* of estimated damages are the norm for securities class actions.  *See Omnivision*, 559 F. Supp. 2d at 1042 (noting the average recovery in securities class actions is less than 3% of possible damages and approving settlement representing 6% of recoverable maximum damages); *In re Heritage Bond Litig.,* No. 02-ML-1475 DT, 2005 WL 1594403, at *8-*9 (C.D. Cal. June 10, 2005) (recognizing average recovery of between 2% to 3% of maximum damages).  Further, this highly favorable Partial Settlement was obtained despite the fact that KaloBios had been forced into bankruptcy by the time the Action was initiated and settlement negotiations occurred, making the recovery all the more exceptional, particularly inasmuch as it includes $250,000.00 in funds from the bankrupt company itself.  Moreover, because the Partial Settlement resolves claims only against the Settling Defendants while preserving the claims against Defendant Shkreli, Plaintiffs and the Settlement Class may receive additional recovery through their continued litigation against him.

Notably, recovery of total potential damages would be *entirely* dependent on Plaintiffs' ability to survive the Settling Defendants' anticipated motion(s) to dismiss, to certify the class in its entirety, to successfully overcome the Settling Defendants' motions for summary judgment, to prevail on all of their claims at trial, to prove entitlement to 100% of the estimated total damages, to survive any appeals, and then to collect from the Settling Defendants, including the bankruptcy-protected KaloBios and insurance coverage that would have been depleted by this continued litigation.  By resolving this Action against the Settling Defendants at this juncture, Lead Counsel was able to secure a certain and excellent partial recovery for the Settlement Class

while avoiding these risks.  Under any measure, this result is noteworthy and supports the requested fee award.  Indeed, fees representing a higher percentage than that requested here have been awarded by courts within the Ninth Circuit in comparably sized securities class action settlements.  *See Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in fees ***above*** 25%.") (emphasis added); *see, e.g., Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities fraud class action where settlement fund was $1.25 million); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fee award equal to 33% of $12 million settlement fund); *Bond v. Ferguson Enters.*, *Inc.,* No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *15 (E.D. Cal. June 30, 2011) (awarding fees of 30% of common fund of $2.25 million); *see also Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (finding that higher percentages, including between 30%-50% of the fund, tend to be awarded when the funds are less than $10 million) (collecting cases).

### 2.    Risks of Litigation

That Lead Counsel undertook this litigation with substantial risk that they or the Settlement Class might not obtain any recovery is a significant factor in the award of fees.  *See Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301.  As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in determining the attorneys' percentage fee award.  *See Vizcaino*, 290 F.3d at 1048 (that the case is "fraught with risk and recovery is far from certain" is "a relevant circumstance" that courts must take into account); *see also In re American Apparel, Inc. Shareholder Litigation.*, 2014 WL 10212865, at *21 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Courts have long recognized that the risk of no recovery is substantially increased in securities class actions, which are notoriously complex and difficult to both plead and prove. *See, e.g., In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("[F]ederal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable

challenges to successful pleading."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities action have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005) (emphasizing that class actions, and particularly securities class actions, typically involve substantial complexity); *Fogarazzo v. Lehman Bros.*, No. 03 CIV. 5194 SAS, 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("[S]ecurities actions are highly complex."); *In re Flag Telecom Holdings*, *Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (recognizing that securities class litigation is "notably difficult and notoriously uncertain") (citation omitted).

This litigation was no different.  As detailed herein and in the accompanying Final Approval Brief and Tuccillo Declaration, this case involved difficult and complex legal and factual matters, which are still playing out as far as the continued litigation against Defendant Shkreli.  Lead Counsel navigated the challenging terrain of the PSLRA by engaging in a thorough investigation of potential claims on behalf of KaloBios's investors, as described above.  Lead Counsel then prepared and filed highly detailed and particularized initial and Amended Complaints.  In response, the Settling Defendants adamantly maintained they had no liability, arguing that they never made a material misrepresentation or omission, that Plaintiffs did not sufficiently allege and would not be able to prove fraudulent intent, and that Plaintiffs would be unable to show they had any recoverable damages.  *See* Stipulation at 4.  Lead Counsel addressed these arguments during the resolution-oriented discussions with the Settling Defendants and were able to achieve this highly favorable Partial Settlement.  Had this portion of the Action progressed to a motion to dismiss, it is far from certain that the Court would accept Plaintiffs' allegations and legal theories over those of the Settling Defendants who, among other things, would have claimed that they lacked scienter and were at most negligent in not knowing of Shkreli's wrongdoing. Assuming that Plaintiffs could successfully overcome such motion(s) to dismiss, Plaintiffs anticipated that a class certification motion would be highly contested with the Settling

Defendants attacking the fraud-on-the-market presumption.[8]  Finally, Plaintiffs would then be required to overcome the Settling Defendants' motion(s) for summary judgment and prove their claims at trial, and successfully overcome likely post-trial appeals.  The risk of continuing litigation against KaloBios was further heightened by the possibility that the Settlement Class's claims against it would be subordinated or extinguished via its bankruptcy proceeding – as occurred to a portion of the PIPES Plaintiffs' claims.

In sum, the obstacles to recovery against the Settling Defendants in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and applicable proof requirements during the later stages of the case (and on appeal).

### 3. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel

A determination of a fair fee must include consideration of its contingent nature.  It is "an established practice in the private legal market" to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.  *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed. 1986)).  In fact, contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose.  *Id.*; *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis.").  Courts have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees.  *Vizcaino*, 290 F.3d at 1050.

The contingent nature of the fee supports a 25% award.  Lead Counsel made a substantial outlay of both time and money in this case, pursuing the claims at issue in two courts simultaneously, all while facing the very real risk of recovering nothing.[9]  Lead Counsel has

---

[8]    Indeed, Shkreli argued in his motion to dismiss the CAC, among other things, that the market already knew about his alleged wrongful conduct.

[9]    Many securities cases have been lost at trial, on post-trial motions, or on appeal. For

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS FOR PLAINTIFFS - Case No. 5:15-cv-05841-EJD

15

received no compensation since this Action has been pending (roughly 18 months ago) and has incurred significant litigation expenses for the benefit of the Settlement Class. Although reimbursement was not assured, all Counsel advanced $26,124.02 in expenses to date for the benefit of the Settlement Class. *See* Tuccillo Decl. at ¶29; Glancy Decl. ¶5; Federman Decl. ¶6. Any fee award or expense reimbursement to Lead Counsel has always been at risk and completely contingent on the result achieved, and on this Court's exercise of its discretion in making any award. Thus, this factor militates in favor of the Court granting Lead Counsel's request for attorneys' fees and expenses. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (recognizing the risk of non-payment or reimbursement of expenses as a factor weighing strongly in favor of counsel's requested fee award); *see also Vizcaino*, 290 F.3d at 1050; *Omnivision*, 559, F. Supp. 2d at 1046-47; *Immune Response*, 497 F. Supp. 2d at 1175-76.

### 4.    The Skill Required and the Quality of the Work

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047; *Knight*, 2009 WL 248367, at *6 (same). Here, the quality of Lead Counsel's work on this case is reflected in the significant recovery obtained, and the complex factual and procedural landscape under which it was obtained. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd sub nom.,* 899 F.2d 21 (11th Cir. 1990).

"The experience of counsel is also a factor in determining the appropriate fee award." *Heritage*, 2005 WL 1594389, at *12 (citing *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d

example, in *In re JDS Uniphase Corp. Securities Litigation*, a securities class action litigated in this court, the jury issued a verdict in favor of defendants after five years of litigation. No. C-02-1486-CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. In *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990), the class won a $38 million jury verdict (exclusive of prejudgment interest) and a motion for judgment *n.o.v.* was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. *See also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

423, 432-33  (E.D. Pa. 2001)) (where "the court justified its fee award of one-third of a common fund based in part on the experience of counsel in litigating securities class actions."); *In re Public Service Co. of New Mexico*, No. 91-0536M, 1992 WL 278452, at *8 (S.D. Cal. July 28, 1992) (experience in complex class actions weighed in favor of fee award of one-third of common fund).  All Counsel are experienced and skilled practitioners in the securities litigation field.  *See* Tuccillo Decl., Exhibit 3; Glancy Decl., Exhibit 3; Federman Decl., Exhibit 3 (Firm Resumes of Pomerantz, Glancy, and Federman).  From the outset, Lead Counsel left no stone unturned in an effort to obtain factual support for the claims that the Settling Defendants had made actionable misrepresentations and/or omissions.  Ultimately, the information obtained proved valuable and was likely a major reason why Lead Counsel were able to achieve this Partial Settlement, which they believe is extremely favorable under the circumstances.  The skill demonstrated by Lead Counsel supports the requested fee.

"The difficulty of securities litigation generally – particularly the challenges presented by the PSLRA's pleading requirements – requires skilled counsel familiar with the relevant statutes and case law." *In re Am. Apparel S'holder Litig.*, No. 10-cv-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548 at *71-72 (C.D. Cal. July 28, 2014). Given the complexity of the issues presented in this Action, including material misrepresentations, scienter, loss causation, and damages, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery.   Additionally, Lead Counsel, from the outset, were required to take significant steps to protect the Settlement Class's claims against KaloBios by monitoring its Bankruptcy Case and by timely filing a proof of claim therein on behalf of the putative class before the bar date for such claims – a hurdle that extinguished a portion of the competing PIPES Plaintiffs' claims.  Following the verbal agreement to partially settle, Lead Counsel continued to protect the claims against KaloBios by preparing the appropriate filings in the Bankruptcy Case, which contributed to the Bankruptcy Court's approval of KaloBios's plan of reorganization and Chapter 11 exit plan, including this Partial Settlement.  It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] of

'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

The quality and vigor of opposing counsel is relevant in evaluating the quality of the services rendered by lead counsel. *See, e.g., Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 at *59 (N.D. Cal. Feb. 11, 2016); *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548 at *72-73; *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. at 194; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."), *aff'd,* 798 F.2d 35 (2d. Cir. 1986). Here, Defense counsel for the Settling Defendants in this case are prominent attorneys from Hogan Lovells US LLP and Fenwick & West LLP – law firms with attorneys with substantial experience in defending securities class action and who vigorously defended this Action.[10]

### 5.     A Lodestar Cross-Check Shows the Fee Request is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-fund method. *See, e.g. Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assurance Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted . . . [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

Significantly, in securities class actions it is common for lodestar figures to be adjusted upward by a sizeable multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple of 3.65 times counsel's lodestar. *Id.* at 1051-52 (listing twenty-three shareholder

---

[10]     Similarly, Defendant Shkreli is represented by attorneys from Fox Rothschild LLP, who continue to vigorously defend against Plaintiffs' claims, including completing a round of motion to dismiss briefing and conducting a hotly contested oral argument thereon in January 2017.

settlements and the multipliers for each in which the average multiplier is 3.28); *id.* at 1051 (citing *WPPSS* for the proposition that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases").  Indeed, the Ninth Circuit has recognized that the "*[risk multiplier] incentive is especially important in securities cases*."  *Stanger*, 812 F.3d at 741 (emphasis added).

Here, the requested percentage fee amounts to a negligible multiplier on Counsel's lodestar incurred in litigating the case against the Settling Defendants and in securing and advancing the Partial Settlement (and indeed, represents a negative multiplier when viewed against the total time and lodestar devoted to the Action if the litigation solely against Defendant Shkreli is included).  Therefore, the lodestar cross-check confirms that the fee requested by Counsel, which represents a multiplier of approximately 1.06, is fair and reasonable.  Additionally, Counsel's lodestar does not include the additional time and effort that they will continue to devote to the case on behalf of the Settlement Class by, for example, directing the claims administration process and final distribution.  Nor does the lodestar include the substantial time incurred in the continued litigation solely against Defendant Shkreli, including, *inter alia*, the time devoted to: (1) investigating, preparing, and filing the CAC; (2) researching, drafting, and filing the Response in Opposition to Defendant Shkreli's Motion to Dismiss; and (3) preparing for and conducting the hearing on Defendant Shkreli's Motion to Dismiss.  *See* n.10, *supra*.  Indeed, the 1.06 multiplier in this case is unquestionably reasonable when compared to both the 3.65 multiplier approved in *Vizcaino* and the 1-4 range of frequently awarded multipliers discussed in *Vizcaino* and in other cases from this Circuit.  *Vizcaino*, 290 F.3d at 1051, n.6; *see Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multiplers in the 3-4 range are common in lodestar awards for lengthy and complex class action ligitation."); *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *70 ("In securities class actions in particular, courts have applied multipliers ranging from 1.25 up to 4.") (collecting cases).  It is especially reasonable considering that the partial recovery achieved for the Settlement Class, as a percentage

1
2
of maximum damages, is substantially above the median for comparable securities fraud class actions. *See supra* Section III.D.1.

3

### 6.    The Settlement Class's Reaction to the Fee Request

4
5
6
7
8
9
10
11
12
13
14
15
16
17
Despite the over 18,500 short-form Notices mailed to Settlement Class Members, which directed them to the Claims Administrator's website where they could obtain all the Partial Settlement papers, including the Stipulation and the long-form Notice advising that Counsel would request a fee award up to 25%, to date, along with the several other methods the Claims Administrator employed to give notice to Settlement Class Members (Bravata Decl. ¶¶4-9), no objection to the fee or expenses has been filed. Bravata Decl. ¶12. Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15-16 (C.D. Cal. June 10, 2005) (holding that "the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,]" particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (finding that the filing of only one objection despite mailed notices to over 5,250 potential class members "weighs in favor of approving the fee petition").[11]

18
19
### E.    Counsel's Expenses are Reasonable and Were Necessary to Achieve the Benefit Obtained

20
21
22
23
24
Counsel incurred out-of-pocket expenses of $26,124.02 in prosecuting this Action. *See* Tuccillo Decl. ¶29; Glancy Decl. ¶5; Federman Decl. at ¶6. Such expenses consist primarily of necessary investigation expenses, research costs, necessary travel expenses, expert fees, court costs, and expenses associated with necessary court filings. *See* Tuccillo Decl., Exhibit 2; Glancy Decl., Exhibit 2; Federman Decl., Exhibit 2.

25
26
27
28
---
[11]    Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010), which requires counsel's fee motion to be filed before the deadline for objections to afford class members the opportunity to "thoroughly examine counsel's fee motion," the deadline for filing any objections, as extended, is May 18, 2017.

Traditionally, Ninth Circuit "courts have awarded expenses from the litigation, in addition to a percentage of the fund." *In re Businessland Sec. Litig.*, No. C-90-20476-RFP, 1991 WL 427887, at *2 (N.D. Cal. June 14, 1991). It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced for the benefit of the class. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also In re Immune Response Sec. Litig.,* 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (holding that expenses are reimbursable if they would normally be billed to a client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (same); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation of those clients") (citation omitted).

Courts within this Circuit, including this Court, have granted requests for reimbursement of expenses such as the one here. Counsel's expenses, which included "filing fees, … postage, … computer research, … and travel" fall squarely within "the types of expenses routinely charged to paying clients." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2014 WL 6473044, at *10 (S.D. Cal. Nov. 18, 2014) (citing *In re Media Vision Tech. Sec. Lit.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996)). *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6, 2012) (courts grant requests where "class counsel incurred out-of-pocket costs including, among other things: filing fees; copying, mailing, faxing and serving documents; conducting computer research; travel to hearings and mediation sessions; and expert fees); *see also In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015) (approving request of $100,000 in expenses that included "cost of experts and consultants, computerized research such as the use of Lexis and Westlaw, travel expenses such as airfare, meals, lodging and transportation, and costs such as photocopies, postage, filing fees, and telephone charges.");

1

2

*accord Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB, 2011 WL 1883188 at *10 (E.D. Cal. Jan. May 17, 2011).

3

4

5

6

7

8

9

Because the expenses were incurred with no guarantee of recovery, Counsel had a strong incentive to keep them as low as reasonably possible – and did. Indeed, total expenses of $26,124.02 are just a little over half of the $50,000.00 estimate contained in the Notice, which generated ***no objections*** from the Settlement Class. Each of the expenses for which Counsel seeks reimbursement was necessary to the successful prosecution of this case and is the type of expense that would have been billed to a paying client. Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

10

**F.      The Requested Awards to Plaintiffs Should Be Approved**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The named Plaintiffs also request that the Court award them $500.00 each in connection with their representation of the Settlement Class. The PSLRA allows for reimbursements to representative plaintiffs in securities class actions for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 USCS § 78u-4. "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (J. Davila) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 976-77 (9th Cir. 2003) (approving awards of $5,000 each to two class representatives of 5,400 potential class members in a settlement of $ 1.725 million); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Plaintiffs have devoted time representing the Settlement Class throughout the litigation and have fulfilled their obligations as representative plaintiffs. Plaintiffs have each submitted a declaration setting forth their participation in the Action, including time and efforts devoted to, among other things: (1) reviewing complaints and motion papers; (2) providing trading records and PSLRA certifications; (3) overseeing the litigation; (3) communicating with counsel about the Action; and (4) considering and approving the Partial Settlement. *See* Fatema Decl. at ¶4; Ingram Decl. at ¶4; Gudlavenkatasiva Decl. at ¶4;

27

28

Saifulislam Decl. at ¶4; Isensee Decl. at ¶4.  Absent the participation of Plaintiffs, the Partial Settlement would not have been achieved.

The requested compensatory award of $500.00 each is fair and reasonable.  Courts in this district, including this court, routinely approve awards of $5,000.00 (ten times greater) to those who represent a class.  *See, e.g.  In re Linkedin*, 309 F.R.D. at 592 (J. Davila noting that "in this district, a $5,000.00 incentive award is presumptively reasonable"); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) (class representative service payments of $20,000 to lead plaintiff and $5,000.00 each to 4 class representatives).  Recently, the Ninth Circuit stated that when deciding whether an incentive award is reasonable and fair, it takes into consideration the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (rejecting arguments that incentive awards were unreasonably large where 9 class representatives each received awards of $5,000 (or $45,000 in total), which made up only .17% of the total settlement fund of $27,250,000).  Here, there are just 5 named Plaintiffs who seek total compensation of $2,500 ($500 each) for their representation of the class, which represents a mere 0.16% of the total cash Partial Settlement Amount and just 0.10% of the total Settlement Amount (including the stock valued as of May 18, 2016).  The $2,500.00 aggregate compensatory award sought here is not only lower than the $5,000.00 *per capita* routinely awarded in the Ninth Circuit, but is also substantially lower than what is routinely approved elsewhere.  *See, e.g. In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig*., No. 09-cv-7670, MDL 2103, 2011 U.S. Dist. LEXIS 157910 (N.D. Ill. 2011) (awarding $25,000.00 in the aggregate for five class representatives); *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 817 (3d Cir. 2010) ($15,000.00 for each lead plaintiff); *In re Xcel Energy, Inc., Sec., Derivative & ''ERISA'' Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000.00 award to lead plaintiffs, and noting that such awards are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons

other than themselves"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000.00 as incentive and for lost time).

## IV.    CONCLUSION

Lead Counsel, with the support and assistance of the other Plaintiffs' Counsel and under the supervision of Plaintiffs, achieved an excellent partial recovery despite KaloBios's bankruptcy, undertook substantial risk that no recovery would ever be had, and incurred a sizeable lodestar in prosecuting this Action to this point on behalf of the Settlement Class. Accordingly, Plaintiffs and Lead Counsel respectfully request that this Court award the requested attorneys' fees.   Additionally, because the expenses Counsel advanced for the benefit of the Settlement Class were reasonably necessary to the prosecution of this Action, and were the type usually billed to clients outside of a contingency payment arrangement, Plaintiffs and Lead Counsel also request that the Court grant their reimbursement.   Finally, Plaintiffs and Lead Counsel request that the Plaintiffs be awarded $500.00 each for their efforts expended in this Action and without whose participation the Partial Settlement would not have been achieved.

Dated: May 11, 2017                      Respectfully submitted,

                                         */s/Matthew L. Tuccillo*
                                         Matthew L. Tuccillo

                                         Jennifer Pafiti (SBN 282790)
                                         **POMERANTZ LLP**
                                         468 North Camden Drive
                                         Beverly Hills, CA 90210
                                         Telephone: (818) 532-6449
                                         E-mail: jpafiti@pomlaw.com

                                         Marc I. Gross
                                         Jeremy A. Lieberman
                                         Matthew L. Tuccillo
                                         **POMERANTZ LLP**
                                         600 Third Avenue, 20th Floor
                                         New York, New York 10016
                                         Telephone: (212) 661-1100
                                         Facsimile: (212) 661-8665
                                         Email: jalieberman@pomlaw.com
                                         mltuccillo@pomlaw.com

1

Patrick V. Dahlstrom

2

**POMERANTZ LLP**
10 South La Salle Street, Suite 3505

3

Chicago, Illinois 60603
Telephone: (312) 377-1181

4

Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

5

6

*Counsel for Plaintiffs and*
*Lead Counsel for the Settlement Class*

7

8

Lionel Z. Glancy
Robert V. Prongay

9

Ex Kano S. Sams II
**GLANCY PRONGAY & MURRAY LLP**

10

1925 Century Park East , Suite 2100
Los Angeles, CA 90067

11

Telephone: (310) 201-9150
Facsimile: (310) 201-9160

12

Email: lglancy@glancylaw.com
rprongay@glancylaw.com

13

esams@glancylaw.com

14

William B. Federman

15

A. Brooke Murphy
**FEDERMAN & SHERWOOD**

16

10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120

17

Telephone: (405) 235-1560
Facsimile: (405) 239-2112

18

Email: wbf@federmanlaw.com
abm@federmanlaw.com

19

20

*Additional attorneys for Plaintiffs*

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 11, 2017.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
