Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
Email:  jpafiti@pomlaw.com

Marc I. Gross
Jeremy A. Lieberman
Matthew L. Tuccillo
**POMERANTZ LLP**
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: migross@pomlaw.com
jalieberman@pomlaw.com
mltuccillo@pomlaw.com

*Counsel for Plaintiffs and*
*Proposed Lead Counsel for the Settlement Class*
[Additional Counsel Listed On Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE KALOBIOS PHARMACEUTICALS, INC. SECURITIES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | Case No. 5:15-cv-05841-EJD<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND SETTLEMENT CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     August 2, 2018<br>Time:    9:00 a.m.<br>Ctrm:    4, 5th Floor<br>Judge:   Hon. Edward J. Davila |

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND SETTLEMENT CLASS CERTIFICATION**

**PLEASE TAKE NOTICE** that, pursuant to the Court's April 2, 2018 Amended Order Granting Preliminary Approval of Settlement (Dkt. No. 129), on August 2, 2018 at 9:00 a.m. or as soon thereafter as counsel may be heard, at the United States Court, Northern District of California, Courtroom 4, 5th Floor, San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, before the Honorable Edward J. Davila, Lead Plaintiffs Kaniz Fatema, Zeke Ingram, Bhaskar R. Gudlavenkatasiva, and Abuhena M. Saifulislam and Plaintiff Austin Isensee (together, "Plaintiffs") will move for an order granting (i) final approval of the proposed settlement ("Settlement") in the above-captioned action ("Action"), dismissing all remaining claims with prejudice, (2) granting final approval of the Plan of Allocation, and (3) Settlement Class certification.

The Settlement provides for a further recovery of one million five hundred thousand dollars ($1,500,000.00) in cash, as documented within the March 21, 2018 Stipulation and Agreement of Settlement and exhibits thereto (collectively, the "Stipulation").[1]  This sum is above and beyond the previous settlement for one million five hundred thousand dollars ($1,500,000.00) in cash and three hundred thousand (300,000) shares of KaloBios Pharmaceuticals, Inc. ("KaloBios") common stock (the "Partial Settlement") obtained as to Defendants KaloBios, Ronald Martell, and Herb Cross, which this Court approved on July 24, 2017 in a Revised Order and Final Judgment (Dkt. No. 101).

This motion is supported by the papers submitted herewith: the accompanying Memorandum of Points and Authorities; Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Dec."); Declaration of Sarah Evans ("Evans Dec."); Declarations of Kaniz Fatema ("Fatema Dec."), Zeke Ingram ("Ingram Dec."), Bhaskar R. Gudlavenkatasiva ("Gudlavenkatasiva Dec."), Abuhena M.

---

[1] Unless otherwise stated, all defined terms herein have the definitions assigned in the Stipulation. All Dkt. references herein are to the *In re KaloBios Pharmaceuticals, Inc.*, No. 5:15-cv-05841-EJD (N.D. Cal.) ("Action"), docket, unless stated otherwise

Saifulislam ("Saifulislam Dec."), and Austin Isensee ("Isensee Dec."); the Stipulation (Dkt. No. 125-1) and its exhibits; the other filings in this Action; and such other and further representations as Lead Counsel may make during the hearing on this matter.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Settlement, on the terms and conditions provided for in the Stipulation, should be finally approved by the Court as fair, reasonable, and adequate.

2.      Whether the Court should permanently enjoin the assertion of any claims that arise from or relate to the subject matter of the Action.

3.      Whether the notice program satisfied due process and complied with Federal Rule of Civil Procedure 23(e).

4.      Whether the Plan of Allocation is fair, reasonable, and adequate.

5.      Whether the Court should certify the Settlement Class and whether Plaintiffs and their counsel have adequately represented the Settlement Class.

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.   INTRODUCTION AND BACKGROUND ......................................................................... 1

II.  THE SETTLEMENT WARRANTS FINAL APPROVAL ................................................. 4

    A.   The Standards For Judicial Approval Of Class Action Settlements ......................... 4

    B.   A Review Of The *Hanlon* Factors Demonstrates That The Settlement Is Fair, Reasonable, And Adequate ................................................................................. 6

        1.   The Overall Strength Of Plaintiffs' Case, Including The Risk, Expense, Complexity, And Likely Duration Of Further Litigation, Supports Final Approval Of The Settlement ................................................. 6

            a.   PSLRA Cases Have Significant Obstacles To Success ................. 7

                i.   Risks Of Establishing Falsity, Materiality, And Scienter ............................................................................. 7

                ii.   Risks Of Proving Causation And Damages ......................... 8

            b.   Continued Litigation Would Be Risky And Expensive ................... 8

        2.   The Risks Of Achieving Class Certification And Maintaining It Throughout Trial Support Approval Of The Settlement ............................ 10

        3.   The Exceptional Recovery Obtained In The Settlement Favors Approval .............................................................................................. 10

        4.   The Extent Of Discovery Completed And The Stage Of The Proceedings Support Final Approval .................................................. 12

        5.   Experienced Counsel Concur That The Settlement, Which Was Negotiated in Good Faith And At Arm's-Length, Is Fair, Reasonable, And Adequate .................................................... 13

        6.   The Reaction Of The Settlement Class Favors Approval ........................ 15

        7.   There Was No Collusion Among The Negotiating Parties ....................... 15

III.  NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS ..................... 15

IV.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ........... 17

V.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED .......... 19

    A.   The Settlement Class Satisfies The Requirements Of Rule 23(a) .......................... 19

    B.   The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ..................... 22

VI.  CONCLUSION ............................................................................................................ 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Alfus v. Pyramid Tech. Corp.*,
    764 F. Supp. 598 (N.D. Cal. 1991) ........................................................................20

6

*Amchem Prods., Inc. v. Windsor*,
7    521 U.S. 591 (1997) ..............................................................................................20

8

*Browne v. Am. Honda Motor Co.*,
    No. CV 09-06750 MMM, 2010 WL 9499072 (C.D. Cal. July 29, 2010).................9

9

*Danis v. USN Commc'ns, Inc.*,
10    189 F.R.D. 391 (N.D. Ill. 1999) .............................................................................20

11

*Destefano v. Zynga, Inc.*,
12    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016).......................5

13

*Elliott v. Rolling Frito-Lay Sales, LP*,
    No. SACV 11-01730 DOC (ANx), 2014 WL 2761316 (C.D. Cal. June 12,
14    2014)......................................................................................................................13

15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
16    563 U.S. 804 (2011) ..............................................................................................22

17

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ................................................................................................4
18

*Gittin v. KCI USA, Inc.*,
19    No. 09-cv-05843 RS, 2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ......................23

20

*Glass v. UBS Fin. Servs., Inc.*,
    No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)
21    *aff'd*, 331 F. App'x 452 (9th Cir. 2009). ..............................................................13

22

*Hanlon v. Chrysler Corp.*,
23    150 F.3d 1011 (9th Cir. 1998)...................................................................4, 5, 6, 10, 21

24

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011*), aff'd in part*, 473 F. App'x 716 (9th Cir.
25    2012)......................................................................................................................22

26

*Hodges v. Akeena Solar, Inc.*,
27    274 F.R.D. 259 (N.D. Cal. 2011) ...........................................................................21

28

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012)......................................................................................8

*In re Amgen Inc. Sec. Litig.*,
    No. 07-cv-2536 PSG, 2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016).......................8

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)..................................................................................5, 15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)........................................................................................11

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) .........................................................................21, 22

*In re Critical Path, Inc. Sec. Litig.*,
    No. 01-cv-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ..............................12

*In re Emulex Corp., Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) .......................................................................20, 22

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977)...........................................................................13

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..........6, 8, 9, 11, 13, 14, 18

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................................17

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 330 (N.D. Ohio 2001)...............................................................................22

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ...............................................................................22

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) (Davila, J.) .......................................................5, 15, 16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)...........................................................................5, 11, 12, 13

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................4, 10, 11, 13, 15, 17

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995).......................................................................................14

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ..................................17

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999)................................................................6

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)............................................................4, 10

*In re TD Ameritrade Account Holder Litig.*,
Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13,
2011)..........................................................................................................13

*In re UTStarcom, Inc. Sec. Litig.*,
No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) .............19, 20, 22

*In re VeriSign, Inc. Sec. Litig.*,
No. C 02-02270 JW, 2005 WL 7877645 (N.D. Cal. Jan. 13, 2005), *order
amended,* 2005 WL 226514 (N.D. Cal. Jan. 31, 2005) ..........................20

*In re Wireless Facilities, Inc. Sec. Litig.*,
253 F.R.D. 630 (S.D. Cal. 2008)................................................................17

*Jenson v. Fiserv Tr. Co.*,
256 F. App'x 924 (9th Cir. 2007)................................................................10

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)........................................................................5

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978)........................................................................21

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)......................................................................13

*Murillo v. Pac. Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010)..................................................................22

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ................................................10, 14, 15

*Nguyen v. Radient Pharm. Corp.*,
No. 11-cv-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)..............17

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ............8

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
688 F.2d 615 (9th Cir. 1982)................................................5, 10, 11

*Riker v. Gibbons*,
No. 08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010)..............18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)..................................................................................17

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010)...........................................................................22, 23

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993)..............................................................................5, 6

*Van Wingerden v. Cadiz, Inc.*,
    No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263(C.D. Cal. Feb. 8, 2017) ...................17

*Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*,
    173 F.3d 713 (9th Cir. 1999)..................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................10

*West v. Circle K Stores, Inc.*,
    No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006)....................20

*Ybarrondo v. NCO Fin. Sys., Inc.*,
    No. 05-cv-2057 (JMA), 2009 WL 3612864 (S.D. Cal. Oct. 28, 2009)....................................22

**Statutes**

15 U.S.C. § 78u-4................................................................................16, 17

**Rules**

Fed. R. Civ. P. 9(b).................................................................................7

Fed. R. Civ. P. 23 ....................................................1, 4, 10, 16, 17, 19, 20, 21, 22, 23

Other Authorities

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation:*
    *2017 Full-Year Review* (Jan. 29, 2018)...........................................................2, 11

*Manual for Complex Litigation (Third)* § 30.44 (1995)...............................................14

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs, individually and on behalf of all other Settlement

3

Class Members, respectfully move this Court for an Order awarding: (i) final approval of the

4

proposed Settlement in the above-captioned Action, dismissing all claims in the Action with

5

prejudice, (2) final approval of the Plan of Allocation, and (3) Settlement Class certification.

6

## I.     INTRODUCTION AND BACKGROUND

7

8

Plaintiffs and Lead Counsel have successfully achieved a Settlement of this complex

9

securities class action with its last remaining Defendant, Martin Shkreli, for a further recovery of

10

one million five hundred thousand dollars ($1,500,000.00) in cash to resolve the remaining claims

11

in the Action.  This additional Settlement, as detailed herein, is the product of extensive work by

12

Lead Counsel and additional Plaintiffs' Counsel.[2]  The present Settlement augments the previous

13

Partial Settlement of $1,500,000.00 in cash and 300,000 shares of KaloBios Pharmaceuticals, Inc.

14

("KaloBios") common stock obtained as to Defendants KaloBios, Ronal Martell, and Herb Cross,

15

which this Court approved on July 24, 2017 in a Revised Order and Final Judgment (Dkt. No. 101).

16

The Settlement Class now at issue is defined as "all persons or entities who purchased or otherwise

17

acquired the common stock of KaloBios between November 19, 2015 and December 16, 2015, both

18

dates inclusive ["Settlement Class Period"]," subject to extensive exclusions designed to ensure that

19

the Settlement Fund is delivered to investors unaffiliated with Defendants.  *See* Stipulation ¶1(v);

20

Amended Order Granting Preliminary Approval of Settlement, dated April 2, 2018 (Dkt. No. 129)

21

("Preliminary Approval Order") ¶4.  This definition differs by just one day from the settlement class

22

at issue in the previous Partial Settlement, an overlap that permitted significant cost-saving

23

efficiencies in the Notice program and Settlement administration process.

24

25

---

26

[2] Along with Lead Counsel Pomerantz LLP, other Plaintiffs' Counsel that worked on this matter,
under the supervision of Lead Counsel, were Glancy, Prongay & Murray LLP ("Glancy") and

27

Federman & Sherwood ("Federman").   Together, Lead Counsel, Glancy, and Federman are
sometimes referred to herein as "Plaintiffs' Counsel" or "Counsel."

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
ALLOCATION – Case No. 5:15-cv-05841-EJD

1    The present Settlement of $1,500,000.00, when added to the prior consideration provided in

2  the Partial Settlement, makes the total gross Settlement recovery in this Action $3,254,722.73.[3]   This

3  total recovery represents a return of approximately ***16.3% of total possible*** damages recoverable, as

4  based on the $20 million class-wide proof of claim that Plaintiffs filed in KaloBios's bankruptcy

5  proceeding, Case No. 15-12628 (LSS) in the U.S. Bankruptcy Court for the District of Delaware.

6  *See* Tuccillo Dec. ¶19.   This recovery is ***notably larger*** than comparable securities-class-action-

7  settlement recoveries as a percentage of estimated damages.   For example, the median recovery in

8  settlements of securities class actions with damages estimated to be between $20 million and $49

9  million was 8.4% for the period 1996 to 2017.   *See* Tuccillo Dec., Ex. 5, NERA Economic

10 Consulting, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* (Jan. 29,

11 2018), at 37.   Having evaluated the facts and applicable law, Plaintiffs respectfully submit that the

12 proposed Settlement is in the Settlement Class's best interests.

13    Plaintiffs understood the strengths and weaknesses of the claims and defenses and engaged

14 in significant efforts to protect the Settlement Class's interests.   Plaintiffs faced challenges,

15 including the Court's June 23, 2017 decision (Dkt. No. 94) (the "First MTD Order") granting

16 Shkreli's motion to dismiss Plaintiffs' First Consolidated Amended Complaint (Dkt. No. 55)

17 ("FAC") with leave to amend and Shkreli's then-pending motion to dismiss the Second

18 Consolidated Amended Class Action Complaint ("SAC") (Dkt. No. 104).   Absent the Settlement,

19 Plaintiffs and the Settlement Class face a long, expensive battle in prevailing on their securities-

20 fraud claims against Defendant Shkreli, considering the complexity and risks of prosecuting the

21 Action through his motion to dismiss the SAC, discovery while Shkreli and his corporate lawyer are

22 incarcerated, cross-motions for summary judgment, disputed class certification, trial and appeals.

23 Plaintiffs and the Settlement Class also faced huge recoverability risks, as he serves his seven-year

24 prison sentence resulting from his criminal conviction.

25

26

27 [3] This figure includes $254,722.73 in proceeds obtained for the Settlement Class from the sale of

28 the 300,000 shares of stock in the reorganized, post-exit company.

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
ALLOCATION – Case No. 5:15-cv-05841-EJD

2

1    Throughout this litigation, Plaintiffs and their Counsel have pursued a simultaneous, dual-

2  track path of engaging in settlement discussions with the non-Shkreli Defendants, which culminated

3  in reaching the Partial Settlement approved by this Court, while resolutely pursuing its litigation and

4  investigative efforts against Shkreli.  Over more than two years of litigating this Action, Plaintiffs,

5  through Lead Counsel, and Shkreli, through his counsel, intermittently discussed potential

6  settlement from time to time.  Their efforts included unsuccessful early attempts to settle the Action

7  as it regards him during the negotiations that led to the Partial Settlement with the other Defendants

8  and a January 30, 2018 in-person mediation before JAMS mediator Jed Melnick, Esq., which

9  resulted in an oral agreement in principle to settle the Action.  *See* Tuccillo Dec. ¶¶5-6, 8-9.

10    Thereafter, Lead Counsel and Shkreli's counsel engaged in frequent telephonic discussions

11  as they negotiated the MOU, executed on February 6, 2018, and the Stipulation and its exhibits,

12  executed by Plaintiffs and Shkreli on March 21, 2018.  Thereafter, pursuant to the Stipulation's

13  terms, the Settlement Fund consideration of one million five hundred thousand dollars

14  ($1,500,000.00) was paid by Shkreli's insurance carrier into an Escrow Account established by Lead

15  Counsel, in which it now sits, earning interest.  *See* Tuccillo Dec. ¶15.

16    The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily

17  approved the Settlement, certified the Settlement Class for purposes of the Settlement, and directed

18  that Notice be distributed to Settlement Class Members.  *See* Preliminary Approval Order ¶28.

19  Significantly, this Settlement and its Plan of Allocation, which was prepared with the assistance of

20  Plaintiffs' damages consultant, are substantially similar to those submitted, considered, and given

21  final approval by the Court for the Partial Settlement.  The only differences are that the Settlement

22  does not include shares of KaloBios stock as part of the settlement consideration, has a Settlement

23  Class Period that is one day shorter, and its Notice program, claims process, and settlement

24  administration drew certain efficiencies from the settlement-administration work already done for

25  the Partial Settlement, so as to reduce costs and to expedite approval and distribution.

26    Pursuant to the Preliminary Approval Order, more than 21,400 Short-Form Notices have

27  been mailed to potential Settlement Class Members, directing them to the Claims Administrator's

28  website, where they could obtain the Settlement papers, including the Long-Form Notice, Claim

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
ALLOCATION – Case No. 5:15-cv-05841-EJD

1    Form, and Stipulation, and informing them that all prior-submitted Claims in the prior Partial

2    Settlement would be honored in this Settlement, subject only to the execution of any recoverable

3    losses arising from stock trades on the one non-overlapping day from the Partial Settlement's

4    settlement class period.  *See* Evans Dec. ¶¶7, 10, Exh. C (Long-Form Notice), at 11-12.  This robust

5    notice process informed potential Settlement Class Members about the contours of the Settlement,

6    the Plan of Allocation, and the Settlement Class.  ***No objection to any part of the Settlement, Plan***

7    ***of Allocation, or the Settlement Class nor request for exclusion has been filed to date.***  *Id.* ¶¶12-

8    13.  Moreover, in addition to the 192 Claims from the Partial Settlement that will be honored again

9    now, 861 new Claims were filed.  *See id.* ¶14; *see also* Dkt. No. 116 ¶5(a).  Plaintiffs respectfully

10   submit that this overwhelmingly positive reaction further supports final approval of the Settlement

11   and Plan of Allocation and certification of the Settlement Class.

12   **II.       THE SETTLEMENT WARRANTS FINAL APPROVAL**

13           **A.       The Standards For Judicial Approval Of Class Action Settlements**

14           In deciding whether to approve a proposed settlement pursuant to Fed. R. Civ. P. 23(e), the

15   Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class

16   action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see*

17   *also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must

18   also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law

19   suits").[4]  It is within the "sound discretion of the district courts to appraise the reasonableness of

20   particular class-action settlements on a case-by-case basis."  *Evans v. Jeff D.*, 475 U.S. 717, 742

21   (1986).  In exercising that discretion, the Ninth Circuit has considered the following factors:  "[T]he

22   strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;

23   the risk of maintaining class action status throughout the trial; the amount offered in settlement; the

24   extent of discovery completed and the stage of the proceedings; the experience and views of counsel;

25   the presence of a governmental participant; and the reaction of the class members to the proposed

26   settlement."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for*

27

28
_____

[4] Unless otherwise indicated, all internal citations and quotations are omitted herein.

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
ALLOCATION – Case No. 5:15-cv-05841-EJD

4

*Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (referring to these as the "*Hanlon* factors"). However, "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Moreover, a court need not consider all of these factors or may consider others. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Accordingly, weighing the *Hanlon* factors is *not* an adjudication of the merits of the case.

Additionally, when a settlement agreement is negotiated prior to formal class certification, courts must ascertain whether the parties colluded. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) (Davila, J.) (citing *In re Bluetooth*, 654 F.3d at 946). Signs of collusion – absent here – include: (1) when class counsel receives a disproportionate distribution of the settlement or when the class receives no monetary distribution, but counsel is amply awarded; (2) when the parties negotiate a "clear sailing" deal providing for payment of attorneys' fees separate and apart from class funds without objection by the defendant, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for accepting an unfair settlement on the class's behalf; and (3) when the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund. *Bluetooth*, 654 F.3d at 947.

Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis added). Indeed, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *9 (N.D. Cal. Feb. 11, 2016) (quoting *Officers for Justice*, 688 F.2d at 625).

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION – Case No. 5:15-cv-05841-EJD

As explained herein, the Settlement was reached only after hard-fought litigation between experienced counsel on both sides, and is the product of arm's-length negotiations between Lead Counsel, Shkreli's counsel, and his insurance carrier.  *See* Tuccillo Dec. ¶12.  Plaintiffs respectfully submit that the Settlement meets the Ninth Circuit standard for approval.

**B.   A Review Of The *Hanlon* Factors Demonstrates That The Settlement Is Fair, Reasonable, And Adequate**

**1.   The Overall Strength Of Plaintiffs' Case, Including The Risk, Expense, Complexity, And Likely Duration Of Further Litigation, Supports Final Approval Of The Settlement**

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement.  *See, e.g.*, *Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair).  Lead Counsel, highly experienced in litigating and resolving complex securities class actions, carefully evaluated the merits here, in light of all risks and potential weaknesses, including those posed by Shkreli's then-pending motion to dismiss the SAC in light of the Court's First MTD Order and Shkreli's limited insurance coverage and rapidly diminishing personal resources in light of his incarceration, before Plaintiffs entered into the Settlement.

Although Plaintiffs believe that the case is strong, based on substantial research and investigation conducted, they were cognizant of the substantial risk posed to the Settlement Class in continuing this Action, including that the Court might grant Shkreli's second motion to dismiss or not certify the case as a class action, that the Action might succumb at the summary-judgment stage to attacks regarding liability, loss causation, or damages, or that the potential recovery of Plaintiffs and the Settlement Class against Shkreli would be uncollectable based on Shkreli's limited insurance coverage and diminishing personal resources.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class' ultimate recovery be less than the proposed settlement).

Final approval is supported here because of the heightened risks, absent settlement, of pleading and proving securities fraud against Shkreli—including pleading and demonstrating falsity, materiality, scienter, transaction and loss causation, and damages—and the expenses of continued litigation, including discovery and expert battles.

### a.    PSLRA Cases Have Significant Obstacles To Success

In addition to the general risks of any litigation, heightened risk existed because of the application of both Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which significantly raised the standards for investors to successfully plead and prosecute securities class actions.  To succeed on their Exchange Act §10(b) Claim, Plaintiffs would have to plead and prove, *inter alia*, that Shkreli knowingly, or with deliberate recklessness, issued materially false and misleading statements and omissions of fact, that the Settlement Class Members relied thereon (*e.g.*, class-wide reliance by the fraud-on-the-market doctrine through proof of an efficient market for KaloBios stock), and that Settlement Class Members were damaged when the truth was revealed.  Shkreli vigorously contested these elements. *See, e.g.*, Shkreli's Motion to Dismiss the FAC, dated August 16, 2016 (Dkt. No. 61), at 16-25; Shkreli's Motion to Dismiss the SAC, dated September 29, 2017 (Dkt. No. 107), at 20-25.  Were the Action to continue, Shkreli would have pressed these challenges during the motion to dismiss hearing set for February 8, 2018 (Dkt. No. 107) and throughout the litigation process.

### i.    Risks Of Establishing Falsity, Materiality, And Scienter

Obtaining a favorable jury finding on the elements of falsity, materiality, and scienter is difficult.  Plaintiffs would have to demonstrate that Shkreli fraudulently misled investors throughout the Settlement Class Period by touting his ability to lead and fund KaloBios's operations, while failing to disclose his and his lawyer's alleged significant misconduct at Shkreli's prior companies.  While Plaintiffs are optimistic that they would have succeeded in opposing Shkreli's second motion to dismiss, Plaintiffs and Lead Counsel are aware of the challenges of actually proving Plaintiffs' claims at trial.  Indeed, the Court has already agreed once with Shkreli's arguments in his first motion to dismiss that Plaintiffs failed to establish that Shkreli's statements were materially false or misleading or that he acted with scienter, based on the truth-on-the-market defense.  *See First MTD*

at 8-17.  Shkreli has not relented in his charge of arguing for dismissal of the Action; in his motion to dismiss the SAC, he challenges falsity by insisting that he had no duty to disclose his own prior misconduct, amongst other dismissal grounds.  *See* Dkt. No. 107, at 20-25.

### ii.    Risks Of Proving Causation And Damages

Proving that the misstatements caused a significant loss for investors and that the Settlement Class suffered damages as a result of Shkreli's alleged misconduct also posed challenges.  Shkreli's second motion to dismiss also challenged transaction causation (reliance) by asserting under a truth-on-the-market defense that the market was already aware of the full extent of his alleged fraud.  *See* Dkt. No. 107, at 23-25.  While Plaintiffs vigorously disputed the viability of this defense, Shkreli would have continued to pursue it, with a risk that the Court would, once again, agree.

Determining the amount of losses (if any) or that the alleged curative disclosures and events actually caused declines in KaloBios stock would have required complicated expert testimony and use of methodologies that are debated among economists.  This would create a "'battle of experts,' [of which] the outcome cannot be guaranteed."  *In re Amgen Inc. Sec. Litig.*, No. 07-cv-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *7 (C.D. Cal. Oct. 25, 2016).  Thus, vigorous challenges to reliance, transaction and loss causation, and damages posed a significant risk on the second motion to dismiss, at summary judgment, at trial, and on appeal.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (jury verdict in securities-fraud action reversed due to failure to prove loss causation).

### b.    Continued Litigation Would Be Risky And Expensive

Regardless of the ultimate outcome, there is no question that further litigation against Shkreli would have been expensive and complex.  It is widely acknowledged that class actions are inherently complex to prosecute.  *See, e.g.*, *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (proposed settlement proper "given the inherent difficulty of prevailing in class action litigation").  Securities class actions, in particular, are typically complex and expensive to prosecute.  *See, e.g.*, *Heritage*, 2005 WL 1594403, at *6.  This Action is no exception and posed very significant recoverability risks, given Shkreli's limited insurance coverage, diminishing personal resources, and incarceration.

For example, absent settlement, Plaintiffs and Shkreli would have procured an expert declaration on the issue of market efficiency for class certification, such that, in addition to full briefing, documents would have had to be produced and experts deposed.  With respect to merits discovery, Lead Counsel anticipated, given the complexities of the issues involved in this Action, reviewing thousands of documents and deposing a substantial number witnesses, including, without limitation, Shkreli, the non-Shkreli Defendants, and other KaloBios personnel.  This Settlement eliminates any potential risks as to the cost and outcomes of the discovery process.

Following merits discovery, the parties would engage in expert discovery on questions of reliance, loss causation, and damages (at the least), as they pertain to Shkreli.  Expert discovery and trial preparation would be expensive and complex.  *See Heritage*, 2005 WL 1594403, at *6 (noting that class actions have a well-deserved reputation as being the most complex).  Accordingly, the likely duration and expense of further litigation against Shkreli also supports a finding that the Settlement is fair, reasonable, and adequate.  Absent settlement, even if a class was certified and the operative complaint survived Shkreli's second motion to dismiss and later motion for summary judgment, continued prosecution of the Action would be complex, expensive, and lengthy.  After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation.  A more-favorable outcome than the Settlement was highly uncertain.  *See Browne v. Am. Honda Motor Co.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources.  There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

Plaintiffs and Lead Counsel are well aware of the strengths and weaknesses of their case at this point, over two years into the Action, after : (i) drafting several initial and amended complaints; (ii) navigating through separate bankruptcy proceedings where a portion of the claims of a separate group of private placement plaintiffs were extinguished; (iii) having briefed and argued Shkreli's first motion to dismiss and analyzing the Court's First MTD Order; (v) having fully briefed Shkreli's second motion to dismiss; (v) achieving final Court approval of a Partial Settlement with the non-Shkreli Defendants; and (vi) extensively negotiating both the instant Settlement and the prior Partial

1   Settlement.  Thus, the risk, expense, complexity, and likely duration of further litigation clearly

2   support approval of the Settlement.  *See Syncor*, 516 F.3d at 1101 (district court abused its discretion

3   in granting defendants' summary-judgment motion after parties notified court of entering into a

4   binding class-action settlement); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523,

5   526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval

6   are preferable to lengthy and expensive litigation with uncertain results.").

### 2.   The Risks Of Achieving Class Certification And Maintaining It Throughout Trial Support Approval Of The Settlement

8       The Settlement Class has been preliminarily certified for settlement purposes only.

9   Maintaining certification is an expensive and risky enterprise.  *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*,

10   564 U.S. 338 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit

11   panel in 2007 and *en banc* in 2009).  If not for this Settlement, Shkreli would have strongly contested

12   any motion for class certification and if certified, would have sought every opportunity to de-certify

13   the class.  *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is

14   no guarantee the certification would survive through trial, as Defendants might have sought

15   decertification or modification of the class").  Indeed, were a class to be certified, Shkreli could

16   petition for an immediate interlocutory appeal under Fed. R. Civ. P. 23(f).  *See Jenson v. Fiserv Tr.*

17   *Co.*, 256 F. App'x 924 (9th Cir. 2007); *Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.*, 173 F.3d

18   713, 721 (9th Cir. 1999).  Accordingly, the risks of certifying a class in the Action and maintaining

19   it throughout the litigation support approval of the Settlement.

### 3.   The Exceptional Recovery Obtained In The Settlement Favors Approval

21       The determination of a reasonable settlement is not susceptible to a mathematical equation

22   yielding a particularized sum.  Nor is the proposed Settlement "to be judged against a hypothetical

23   or speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*,

24   688 F.2d at 625.  As "[s]ettlement is the offspring of compromise[,] the question we address is not

25   whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and

26   free from collusion."  *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally

27   embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each

1    give up something they might have won had they proceeded with litigation." *Officers for Justice*,

2    688 F.2d at 624.  In fact, a settlement may be acceptable even if it amounts to only a fraction of the

3    potential recovery that might be available at trial.  *See Mego*, 213 F.3d at 459.

4         Here, Lead Counsel engaged a consultant to assist in estimating potentially recoverable

5    damages, which is challenging due to, among other things, assumptions that must be made regarding

6    trading activity.  *See* Tuccillo Dec. ¶22.  Plaintiffs filed a $20 million Proof of Claim in KaloBios's

7    Bankruptcy Proceeding.  *Id.* ¶5.  But that number could be reduced or eliminated entirely if the

8    Court or jury accepted some or all of Shkreli's defenses, including that a portion or all of the losses

9    were attributable to causes other than the alleged misstatements or omissions.  Moreover, all

10   recoverability risks are amplified given Shkreli's precarious financial condition and limited

11   insurance coverage.  *Id.* ¶13.  Thus, the risk that Plaintiffs would be unable to recover a greater

12   amount further down the road, whether as a result of litigation setbacks or of Shkreli's uncertain

13   future, was carefully considered in arriving at this Settlement.

14        The $1,500,000.00 cash Settlement, when added to the Partial Settlement with the non-

15   Shkreli Defendants, makes the total gross settlement recovery $3,254,722.73, including proceeds

16   from the sale of three hundred thousand (300,000) shares of stock in the reorganized, post-exit

17   company.  This figure compares very favorably against the $20 million class-wide proof of claim

18   that Plaintiffs and Lead Counsel filed in KaloBios's Bankruptcy Proceeding, reaching ***16.3%*** of that

19   $20 million figure.  For context, the median recovery in settlements of securities class actions with

20   estimated damages between $20 million and $49 million was 8.4% for the period 1996 to 2017.  *See*

21   Tuccillo Dec., Ex. 5, NERA Economic Consulting, *Recent Trends in Securities Class Action*

22   *Litigation: 2017 Full-Year Review* (Jan. 29, 2018), at 37.  The combined settlements achieved in

23   this Action are nearly ***double*** that amount.  Indeed, courts recognize that recoveries of ***less than***

24   ***10%*** of estimated damages are normal for securities class actions.  *See, e.g.*, *Omnivision*, 559 F.

25   Supp. 2d at 1042 (noting the average recovery in securities class actions is less than 3% of possible

26   damages and approving settlement representing 6% of recoverable maximum damages); *Heritage*

27   *Bond,* 2005 WL 1594403, at *8-9 (recognizing average recovery of between 2% to 3% of maximum

28   damages); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (typical recoveries in

1   securities class actions range from 1.6% to 14% of total losses).  This recovery provides an

2   immediate, tangible benefit to the Settlement Class that is well within a range of reasonableness in

3   light of the best possible recovery and the substantial risks presented by the litigation.

4             **4.      The Extent Of Discovery Completed And The Stage Of The Proceedings
                        Support Final Approval**

5

6             The stage of the proceedings and amount of information available to the parties to assess

7   strengths and weaknesses of their respective cases are additional factors considered in determining

8   the fairness, reasonableness, and adequacy of a settlement.  *See Mego*, 213 F.3d at 458.  The parties

9   need not have engaged in extensive formal discovery, as long as they have engaged in sufficient

10  investigation to enable them and the Court to intelligently make an appraisal of the Settlement.

11            Despite the PSLRA-mandated discovery stay, Lead Counsel conducted a thorough review

12  of KaloBios's SEC filings and press releases and Shkreli's public statements; the SEC's complaint

13  against Shkreli and the federal indictments against him and his corporate lawyer; the news coverage

14  and analyst reports regarding KaloBios and Shkreli; and information learned from Shkreli's criminal

15  trial by reviewing trial transcripts, witness statements, and other evidence.  *See* Tuccillo Dec. ¶24;

16  SAC ¶1.  Based on this investigation, Plaintiffs filed multiple initial and amended complaints, which

17  included extensive pertinent factual allegations and confidential witness statements.  Lead Counsel

18  is thoroughly familiar with the facts of the case and has had ample opportunity to assess the strengths

19  and weaknesses of the claims in which to appraise the sufficiency of the Settlement.  Additionally,

20  Lead Counsel engaged in extensive discussions with Shkreli's litigation counsel and his insurance

21  carrier to negotiate the Settlement.  *See* Tuccillo Dec. ¶¶4-13.  During these protracted negotiations,

22  spanning a considerable time period, the parties had ample opportunity to present the strengths of

23  their respective cases and to hear one another's perspectives as to weaknesses, which were also

24  briefed as part of Shkreli's motion to dismiss the SAC.

25            Through these efforts, Plaintiffs and Lead Counsel gained sufficient information to negotiate

26  and evaluate the Settlement before expending more time or resources on further litigation.  Courts

27  recognize that "[t]hrough protracted litigation, the settlement class could conceivably extract more,

28  but at a plausible risk of getting nothing."  *In re Critical Path, Inc. Sec. Litig.*, No. 01-cv-00551

WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).  As a result, courts regularly approve settlements reached relatively early in the formal litigation process.  *See, e.g.*, *Mego*, 213 F.3d at 459 (even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."); *In re TD Ameritrade Account Holder Litig.*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery).  Courts commend class counsel for recognizing when, as is the case here, a prompt resolution of the matter is in the best interest of the class.  *See Glass v. UBS Fin. Servs., Inc.,* No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly.") *aff'd*, 331 F. App'x 452, 457 (9th Cir. 2009).  In sum, the parties reached the Settlement when they were well informed as to the facts, legal issues, and risks of the Action.

> **5.     Experienced Counsel Concur That The Settlement, Which Was Negotiated in Good Faith And At Arm's-Length, Is Fair, Reasonable, And Adequate**

Courts recognize that the opinion of experienced counsel supporting the settlement after hard-fought negotiations is "entitled to considerable weight."  *See*, *e.g.*, *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC (ANx), 2014 WL 2761316, at *8 (C.D. Cal. June 12, 2014) (quoting *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)); *Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").  Indeed, as counsel is "most closely acquainted with the facts of the underlying litigation."  *Heritage Bond*, 2005 WL 1594403, at *9.  Here, Lead Counsel is one of the oldest plaintiff-side securities litigation firms in the country, with decades of experience litigating securities class actions nationwide – including within this Circuit and District.  *See* Tuccillo Dec. ¶23, Ex. 4 (Pomerantz Résumé).  Additionally, throughout the litigation and settlement negotiations, Shkreli was represented by very skilled and highly respected counsel at Fox Rothschild LLP.  *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977)

("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").

In the face of this formidable defense, Lead Counsel were nonetheless able to develop a case sufficiently strong to persuade Shkreli and representatives from his insurance carrier to settle on terms that are favorable to the Settlement Class. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage*, 2005 WL 1594403, at *9.

The parties' negotiations were thorough, and the Settlement was reached without collusion after good-faith bargaining among the parties and Shkreli's insurance carrier. Lead Counsel, defense counsel, and carrier counsel participated in numerous settlement discussions and a mediation session at JAMS. *See* Tuccillo Dec. ¶¶5-6, 8-12. Through these months of effort and discussion, Lead Counsel negotiated a fair Settlement, taking into account the costs and risks of continued litigation, particularly given the Court's First MTD Order and the then-pending second motion to dismiss, as well as the substantial recoverability risk, given the limited insurance coverage and Shkreli's diminishing personal resources. *Id.* ¶13.

Plaintiffs and Lead Counsel, who have demonstrated a high degree of competence in the Action, strongly believe that the Settlement is fair, adequate, and a reasonable resolution of the Settlement Class's dispute, which is further evidence of its fairness, adequacy, and reasonableness. *See* Fatema Dec. ¶6; Ingram Dec. ¶6; Gudlavenkatasiva Dec. ¶6; Saifulislam ¶6; Isensee ¶6. Under the PSLRA, the Plaintiffs' support for a settlement should be accorded "special weight" because plaintiffs "have a better understanding of the case than most members of the class." *DirecTV*, 221 F.R.D. at 528 (quoting *Manual for Complex Litigation (Third)* § 30.44 (1995)). Plaintiffs' strong support of the Settlement, as well as the arm's-length nature of the negotiations here, further favor its approval.

**6.    The Reaction Of The Settlement Class Favors Approval**

The reaction of the Settlement Class to the Settlement is another factor in determining the adequacy of the Settlement.  *See Omnivision*, 559 F. Supp. 2d at 1043; *DirecTV,* 221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").  To date, with the deadline for objections approaching on July 12, 2018, no Settlement Class Member has objected to the Settlement, the Plan of Allocation, or Settlement Class Certification, nor has anyone requested to be excluded from the Settlement Class, despite the mailing of over 21,400 notices.  *See* Evans Dec. ¶¶7, 12-13.  This overwhelmingly positive reaction for the Settlement, given the robust notice program, further supports final approval.

**7.    There Was No Collusion Among The Negotiating Parties**

The Settlement displays none of the *Bluetooth* signs of a collusive agreement.  *See LinkedIn*, 309 F.R.D. at 589 (when settlement precedes formal class certification, court must determine it was not a product of collusion among the negotiating parties).  Here, there is a gross cash recovery of $1,500,000.00, out of which Lead Counsel, on behalf of all Plaintiffs' Counsel, is seeking an award of fees and expenses; the Settlement does not include a clear-sailing agreement; and any remaining funds in the Settlement Fund will be distributed to Settlement Class Members, or *cy pres* recipients – no amount reverts to the Defendant Shkreli or his insurance carrier.  *See* Stipulation ¶¶27-35.

## III.    NOTICE TO THE SETTLEMENT CLASS SATISFIED DUE PROCESS

The Settlement Class received adequate notice of the Settlement.  Plaintiffs and Lead Counsel drew upon their experience with the notice program employed for the prior Partial Settlement with the non-Shkreli Defendants to efficiently provide notice of the new Settlement.  *See* Stipulation ¶¶22-23.  This Settlement Class Period now at issue falls entirely within the prior Partial Settlement's class period – indeed, it is a single day shorter – enabling considerable efficiencies.

Lead Counsel again retained Strategic Claims Services ("Strategic"), the same experienced claims administrator chosen for the prior Partial Settlement after a competitive bidding process, to handle the notice and claims process for this current Settlement.  *Id.* ¶1(t).  In conjunction with the prior Partial Settlement, Strategic already mailed notices to Settlement Class Members identified by

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION – Case No. 5:15-cv-05841-EJD

KaloBios's transfer agent records, mailed notices to brokerages and similar institutions, and engaged in customary efforts to track down Settlement Class Members and to correct any bad or outdated addresses. *See* Dkt. No. 116 ¶¶3-7. This process resulted in 192 approved Claims for the Partial Settlement (*see id.*) and, per the Preliminary Approval Order ¶17, these Claims will again be honored in the current Settlement, subject only to an adjustment wherever needed to exclude any recovery based on the one non-overlapping class period day. Additionally, Strategic disseminated over 21,400 copies of the Court-approved Short Form Notice to potential Settlement Class Members and their nominees, and the Summary Notice was published electronically on a national Internet business newswire, *Globe Newswire*, on April 19, 2018. *See* Evans Dec. ¶¶7, 9. This notice program directed Settlement Class Members to the Claims Administrator's website, where they could obtain the Settlement papers, including the Long-Form Notice, Claim Form, and Stipulation, and told them that prior-submitted, valid Claims would be honored again. *Id.* ¶¶7, 10, Exh. C (Long-Form Notice), at 11-12.

This robust method of giving notice, previously approved by the Court, is appropriate because it directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1). The Notice program provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. It informed the Settlement Class as to: (1) the amount of the Settlement; (2) the reasons why the parties proposed it; (3) the estimated average recovery per damaged share of KaloBios common stock; (4) that Lead Counsel would apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, litigation expenses not to exceed $50,000.00, and compensatory awards to named Plaintiffs in the amount of $500.00 each; (5) the name, telephone number, and addresses of Lead Counsel's representatives available to answer questions; (6) the right of Settlement Class Members to object to the Settlement or to seek exclusion from the Settlement Class and the consequences thereof; and (7) the dates and deadlines, as updated, for certain Settlement-related events. *See* Evans Dec. Exh. C; Stipulation, Exhibit B-1; 15 U.S.C. § 78u-4(a)(7). It further explained that the Net Settlement Fund will be distributed under the Plan of Allocation, which it

1    described, to eligible Settlement Class Members who submit valid and timely Proof of Claim forms,

2    either as part of the prior Partial Settlement or for the first time now. *Id.*

3        Accordingly, the Notice program is sufficient because it "generally describes the terms of

4    the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

5    forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *see also*

6    *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).  In sum, it fairly

7    apprised Settlement Class Members of their rights with respect to the Settlement, was the best notice

8    practicable under the circumstances, and complied with the Court's Preliminary Approval Order,

9    Fed. R. Civ. P. 23, the PSLRA, and due process.  *See e.g.*, *In re Immune Response Sec. Litig.*, 497

10    F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

11    VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

12 **IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

13        Assessment of the adequacy of a plan of allocation in a class action "is governed by the same

14    standards of review applicable to approval of the settlement as a whole: the plan must be fair,

15    reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  "It is reasonable to allocate the

16    settlement funds to class members based on the extent of their injuries or the strength of their claims

17    on the merits." *Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL

18    5565263, at *9 (C.D. Cal. Feb. 8, 2017) (quoting *Omnivision*, 559 F. Supp. 2d at 1045); *see also*

19    *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D.

20    Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats

21    class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes

22    interclass distinctions based upon…the relative strengths and weaknesses of class members'

23    individual claims and the timing of purchases of the securities at issue.").  An allocation formula

24    need only have a reasonable, rational basis, particularly if recommended by experienced and

25    competent class counsel.  *Id.*

26        In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan

27    of Allocation.  Plaintiffs now respectfully request that the Court give final approval of the Plan of

28    Allocation, for the purpose of administering the Settlement.  The Plan of Allocation was fully

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
ALLOCATION – Case No. 5:15-cv-05841-EJD

described in the Long-Form Notice posted on Strategic's website, to which Settlement Class Members were directed through dissemination of the Court-approved Short-Form Notice and the published Summary Notice, and the Plan of Allocation has a rational basis. *See* Evans Dec. ¶¶7, 9-10 and Exh. C, at 11-12; Stipulation, Exhibits B-1, at 14-15, and C.  It is substantively identical to the plan of allocation that this Court approved for the prior Partial Settlement with one small exception – the Settlement Class Period is shorter by a single day. *See* Tuccillo Dec. ¶22.  The Plan of Allocation takes this single-day difference into account when re-examining prior-submitted valid and timely proofs of claim in the Partial Settlement.  Like the plan of allocation approved in the prior Partial Settlement, the Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Shkreli's alleged materially false and misleading statements and material omissions, based on factors, such as when and at what prices the Claimant purchased and sold KaloBios common stock.  *See* Evans Dec. Exh. C, at 11-12; Stipulation, Exhibits B-1, at 14-15, and C.  The Plan of Allocation is very straightforward, as the Settlement Class Period is just under a month long, and bases recognized losses for any given Settlement Class Member on the difference between their purchase price(s) and the price(s) for which they either sold their shares on December 17, 2015 (before trading halted) or on January 13, 2016 (after trading resumed), or if not sold on those dates, then the closing price on January 13, 2016. *See id.*

The Plan of Allocation was formulated by Lead Counsel, in consultation with a damages expert, with a goal of reimbursing Settlement Class Members in a fair and reasonable manner.  *See* Tuccillo Dec. ¶22; *Riker v. Gibbons*, No. 08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims.").  Moreover, there have been no objections and no exclusion request(s) from any potential Settlement Class Members despite over 21,400 notices mailed, further supporting approval. *Heritage*, 2005 WL 1594403, at *11-12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION – Case No. 5:15-cv-05841-EJD

plan of allocation as fair and adequate.").  For these reasons, Lead Counsel believes the Plan of Allocation fairly compensates Settlement Class Members and respectfully requests that it be approved.

## V.        CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

The Court, in its order granting final approval of the Partial Settlement as to the non-Shkreli Defendants, has already held that the proposed Settlement Class, with Plaintiffs as class representatives and Lead Counsel as class counsel, meets all the requirements of Fed. R. Civ. P. 23. *See* Dkt. No. 101, at 2-3.  Here, the proposed Settlement Class is nearly identical to the one at issue then, save for being shorter by a single day.  Thus, this Court's prior ruling carries great weight now.

### A.        The Settlement Class Satisfies The Requirements Of Rule 23(a)

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class must be so numerous that joinder of all members is impracticable.  This Action clearly meets that requirement: KaloBios securities were listed on the NASDAQ, a national exchange, and widely traded.  So far, over 21,400 Short-Form Notices have been mailed to potential Settlement Class Members.  Evans Dec. ¶7.  Joinder of potentially hundreds of Settlement Class Members would be impracticable. *See In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *4 (N.D. Cal. May 12, 2010).  Thus, in accord with this Court's previous holding regarding the prior Partial Settlement, the numerosity requirement is met. *See* Dkt. No. 101, at 2-3.

For commonality under Fed. R. Civ. P. 23(a)(2), there must be questions of either law or fact common to the class.  This requirement is readily met, where questions common to all Settlement Class Members include: (1) whether Shkreli violated the federal securities laws; (2) whether Shkreli's statements to the investing public during the Settlement Class Period misrepresented and/or omitted material facts; (3) whether he acted knowingly and recklessly in making them; (4) whether the prices of KaloBios securities, during the Settlement Class Period, were artificially inflated due to Shkreli's conduct; and (5) the extent of the damages suffered by the Settlement Class and the appropriate measure thereof. *See, e.g.*, *UTStarcom*, 2010 WL 1945737, at *4 (common questions of law and fact as to whether defendants engaged in fraudulent scheme, stock was artificially inflated, and misstatements caused class members to suffer economic losses). Securities

actions containing common questions, such as these, have been held to be prime candidates for class certification.  Additionally, because the core complaint of all Settlement Class Members is that they purchased KaloBios shares at artificially inflated prices, due to Shkreli's alleged fraud, and suffered losses when his alleged fraud was revealed, the commonality requirement is satisfied, just as this Court previously held regarding the Partial Settlement.  *See* Dkt. No. 101, at 2-3.  *See also e.g.*, *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002); *In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005), *order amended,* 2005 WL 226514 (N.D. Cal. Jan. 31, 2005).

Typicality under Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the representative parties must be typical of the class's claims.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (common-issues test readily met in securities cases).  Differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members." *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *5 (E.D. Cal. June 13, 2006).

Plaintiffs' claims are typical of those of the other Settlement Class Members because they are derived from the same legal theories and allege the same set of operative facts.  *See UTStarcom*, 2010 WL 1945737, at *5 (test for typicality is "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the name plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Here, Plaintiffs, like the other Settlement Class Members, purchased KaloBios shares in the same manner and pursuant to the same alleged fraud, whereby the same misstatements and omissions by Shkreli are alleged to have artificially inflated the price of KaloBios shares.  *See In re VeriSign*, 2005 WL 7877645, at *9 ("issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant.");  *In re Emulex*, 210 F.R.D. at 721.  Plaintiffs are not subject to any unique

1    defenses that could make them atypical.  Thus, as this Court previously held regarding the Partial

2    Settlement (*see* Dkt. No. 101, at 2-3), Plaintiffs' claims are typical of the claims of the Settlement

3    Class.  *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011); *In re Cooper*

4    *Cos. Sec. Litig.*, 254 F.R.D. 628, 635-36 (C.D. Cal. 2009).

5            Finally, Plaintiffs satisfy the adequacy prong of Fed. R. Civ. P. 23(a)(4), as they have fairly

6    and adequately protected the Settlement Class's interests.  To satisfy this requirement, the proposed

7    class representative must be free of interests antagonistic to other class members, and counsel

8    representing the class must be qualified, experienced, and capable of conducting the litigation.  *See*

9    *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at

10   1020.  Here, as this Court previously held in its rulings on the Partial Settlement (*see* Dkt. Nos. 75,

11   at 4-5, & 101, at 2-3), Plaintiffs' claims are typical of those of the Settlement Class, making

12   Plaintiffs' interests in obtaining a fair, reasonable, and adequate settlement of the asserted claims

13   consistent with those of the Settlement Class Members.  Additionally, Plaintiffs will receive the

14   same *pro rata* share of the Settlement Fund as the rest of the Settlement Class under the proposed

15   Plan of Allocation.  Plaintiffs are represented by highly qualified counsel with extensive experience

16   in securities class litigation.  *See* Tuccillo Dec. ¶23 Exh. 4 (Pomerantz Résumé).  Plaintiffs and Lead

17   Counsel have prosecuted this Action, including deftly navigating KaloBios's complex, fast-paced

18   bankruptcy, to obtain the prior Partial Settlement as to the non-Shkreli Defendants (when the

19   opportunity to do so remained), while simultaneously litigating against Defendant Shkreli and, later,

20   engaging in extensive negotiations with Shkreli and his insurance carrier to achieve the proposed

21   Settlement that, when combined with the recovery from the prior Partial Settlement, represents a

22   significant percentage of total aggregate damages.  Plaintiffs regularly communicated with Lead

23   Counsel throughout the Action and have fairly and adequately protected and advanced the interests

24   of the Settlement Class.  (*See* Fatema Dec. ¶¶4-9; Ingram Dec. ¶¶4-9; Gudlavenkatasiva Dec. ¶¶4-

25   9; Saifulislam Dec. ¶¶4-9; Isensee Dec. ¶¶4-9.)  Thus, Plaintiffs are adequate representatives of the

26   Settlement Class, and Lead Counsel (as this Court already held) is qualified, experienced, and

27   capable of prosecuting this Action in accordance with Fed. R. Civ. P. 23(a)(4).

28

**B.      The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

Fed. R. Civ. P. 23(b)(3) requires that the proposed class representatives establish that questions of law or fact common to the Settlement Class predominate over individual questions and that a class action is superior to other available methods of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 25 (N.D. Cal. 2009).  In accord with this Court's prior rulings regarding the prior Partial Settlement (*see* Dkt. Nos. 75, at 4-5 and 101, at 2-3), common questions of law and fact predominate, and a class action is clearly the superior method available to fairly and efficiently litigate this Action.

"[C]ommon issues need only predominate, not outnumber individual issues."  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 345 (N.D. Ohio 2001).  When certifying a class for settlement only, the standards for satisfying the class certification element of "superiority" under Rule 23(b)(3) are relaxed because the Court does not need to consider the difficulties of managing the class in future litigation or at trial.  *See, e.g.*, *Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011*), aff'd in part*, 473 F. App'x 716 (9th Cir. 2012); *Ybarrondo v. NCO Fin. Sys., Inc.*, No. 05-cv-2057 (JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 477 (E.D. Cal. 2010).

As discussed above, common questions of law and fact clearly predominate over individual questions because Shkreli's alleged conduct impacted all Settlement Class Members in the same manner.  *See e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").  Issues relating to Shkreli's liability are common to all Settlement Class Members.  *Id.*; *see also LDK Solar*, 255 F.R.D. at 530; *UTStarcom*, 2010 WL 1945737, at *9; *Emulex*, 210 F.R.D. at 721 ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the class period and are common to the class.").  These common issues of falsity, materiality, scienter, and loss causation "affect investors alike" and can be proven "on a class-wide basis" because they "affect[] investors in common."  *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).  Here, Shkreli's

1    alleged misrepresentations affected all Settlement Class Members alike and necessary proofs could

2    "be made on a class-wide basis." *Id.* at 685, 687.

3        Thus, the Settlement Class meets the requirements under Fed. R. Civ. P. 23(a) and (b), and

4    there are no issues that would prevent the Court from certifying this Settlement Class for settlement

5    purposes, appointing Plaintiffs as Class Representatives, and appointing Lead Counsel as Settlement

6    Class Counsel – just as it did in its ruling on the prior Partial Settlement. *See* Dkt. Nos. 75, at 4-5

7    and 101, at 2-3. *See also*, *e.g.*, *Gittin v. KCI USA, Inc.*, No. 09-cv-05843 RS, 2011 WL 1467360, at

8    *19 (N.D. Cal. Apr. 12, 2011).

9    **VI.    CONCLUSION**

10       The complexity of the facts at issue, the substantial expenses if this litigation were to

11   continue to trial, the risks associated with Shkreli's limited insurance coverage and his rapidly

12   diminishing personal resources, and the risks attendant in prevailing on the second motion to

13   dismiss, at summary judgment, at trial, and on subsequent appeals collectively weigh heavily in

14   favor of accepting a further recovery of $1,500,000.00 in cash, through the Settlement, on behalf of

15   the Settlement Class.  This sum, when added to the prior Partial Settlement, makes the total gross

16   settlement recovery in this Action $3,000,000.00 plus an additional $254,722.73 in proceeds from

17   the sale of 300,000 shares of KaloBios stock.  This total settlement recovery presents an exceptional,

18   sizable, immediate, and long-term benefit to Settlement Class Members and Plaintiffs.  Accordingly,

19   Plaintiffs respectfully request that this Court grant final approval to the Settlement and Plan of

20   Allocation; certify the Settlement Class for settlement; and enter an Order and Final Judgment in

21   substantially the form filed concurrently herewith.

22

23

24

25

26

27

28

1   Dated: July 5, 2018                           Respectfully submitted,

2                                                 **POMERANTZ LLP**

3                                                 By: _/s/Matthew L. Tuccillo_
                                                  Matthew L. Tuccillo
4                                                 Marc I. Gross
5                                                 Jeremy A. Lieberman
                                                  600 Third Avenue, 20th Floor
6                                                 New York, New York 10016
                                                  Telephone: (212) 661-1100
7                                                 Facsimile: (917) 463-1044
                                                  Email: migross@pomlaw.com
8                                                 jalieberman@pomlaw.com
                                                  mltuccillo@pomlaw.com
9

10                                                Jennifer Pafiti (SBN 282790)
                                                  **POMERANTZ LLP**
11                                                468 North Camden Drive
12                                                Beverly Hills, CA 90210
                                                  Telephone: (818) 532-6449
13                                                E-mail: jpafiti@pomlaw.com

14                                                Patrick V. Dahlstrom
                                                  **POMERANTZ LLP**
15                                                10 South La Salle Street, Suite 3505
16                                                Chicago, Illinois 60603
                                                  Telephone: (312) 377-1181
17                                                Facsimile: (312) 377-1184
                                                  Email: pdahlstrom@pomlaw.com
18

19                                                _Counsel for Plaintiffs and_
                                                  _Proposed Lead Counsel for the Settlement Class_

20
                                                  Lionel Z. Glancy
21                                                Robert V. Prongay
                                                  Ex Kano S. Sams II
22                                                **GLANCY PRONGAY & MURRAY LLP**
23                                                1925 Century Park East, Suite 2100
                                                  Los Angeles, CA 90067
24                                                Telephone: (310) 201-9150
                                                  Facsimile: (310) 201-9160
25                                                Email: lglancy@glancylaw.com
                                                  rprongay@glancylaw.com
26                                                esams@glancylaw.com

27                                                William B. Federman
28                                                A. Brooke Murphy

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
ALLOCATION – Case No. 5:15-cv-05841-EJD
                                    24

**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on July 5, 2018.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo

MOTION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION – Case No. 5:15-cv-05841-EJD